1   Gene Forte
2   1312 Sierra Creek Ct
    Patterson, California, 95363
3   Telephone: (209) 894-5040
    Email: geneforte@badgerflats.com

4   In Propria Persona /Plaintiff

FILED

FEB 24 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ J. HELLINGS

5

6

7

8              UNITED STATES DISTRICT COURT

9         IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

10                              1: 1 1 CV 0 0 3 1 8   AWI SMS

11  EUGENE FORTE                        Case No. _____

12

13              Plaintiff,         **VERIFIED COMPLAINT FOR**
                                   **DAMAGES  AND INJUNCTIVE**
14  vs.                            **RELIEF**

15
    COUNTY OF MERCED, LARRY MORSE,
16  JOHN PICINICH, MARK PAZIN, JAMES
    PADRON, JASKOWIAC, HILL, LEUCHNER,
17  JERRY O'BANION, CITY OF LOS BANOS,
    GARY BRIZZEE, ANTHONY PARKER,
18  CATHOLIC DIOCESE OF FRESNO,
    CONNIE MCGHEE, LOS BANOS
19  ENTERPRISE, GENE LIEB, COREY PRIDE,
    HYATT SUMMERFIELD SUITES, ANA
20  VILLA, PLEASANTON POLICE DEPT.,
    JERRY NICELY, MARDENE LASHLEY,
21  MICKLEBURGH, and DOES 1 thru 50, et al.

22                              **DEMAND FOR JURY TRIAL**
                Defendants.
23

24

25

26  Plaintiff EUGENE FORTE ("Plaintiff" or "Forte") pleads and alleges as follows:

27

28
    Forte v. County of Merced          1          Verified  Complaint  for  Damages  and
                                                  Injunctive Relief

1

## JURISDICTION

2

1. This action arises under the United States Constitution, specifically the provisions of the
   First and Fourteenth Amendments to the United States Constitution and under federal law,
   specifically under United States Code, Title 42, Section 1983 for violation of the Plaintiff's
   federal civil rights by the Defendants, whose actions were taken under color of state law.

2. Jurisdiction is conferred on this court by Title 28, United States Code §§1343(3), 1343(4),
   2201, 2202, 1331, and 1343(a)(3). Venue of this action is proper under 28 U.S.C.A. §
   1391(b).

## GENERAL ALLEGATIONS

3. Defendant COUNTY OF MERCED ( "the County") is a governmental entity located in the
   State of California.

4. Defendant LARRY MORSE ("Morse") is the elected District Attorney of the County of
   Merced.

5. Defendant JOHN PICINICH ("Picinich") is a Deputy Sheriff employed by Merced County.

6. Defendant MARK PAZIN ("Pazin") is the elected Sheriff of the County of Merced.

7. Defendant JAMES PADRON ("Padron") is a resident of the City of Merced in Merced
   County.

8. Defendant JASKOWIAC ("Jaskowiac") is a Deputy Sheriff employed by Merced County.

9. Defendant HILL ("Hill") is a Deputy Sheriff employed by Merced County.

10. Defendant LEUCHNER ("Leuchner") is a Deputy Sheriff employed by Merced County.

11. Defendant JERRY O'BANION ("O'Banion") is a Merced County Supervisor.

12. Defendant CITY OF LOS BANOS ( "Los Banos") is a municipal incorporation in the
    County of Merced in the State of California.

13. Defendant GARY BRIZZEE ("Brizzee") is the Chief of Police employed by the City of Los
    Banos.

14. Defendant ANTHONY PARKER ("Parker") is a police officer employed by the City of Los
    Banos reporting to Defendant BRIZZEE.

Forte v. County of Merced                    2            Verified Complaint for Damages and
                                                          Injunctive Relief

15. Defendant CATHOLIC DIOCESE OF FRESNO ("the Diocese") is the Catholic Churches' Diocese located in the City of Fresno, California.

16. Defendant CONNIE MCGHEE ("McGhee") is a residence of Los Banos and was an employee of the Diocese of Fresno as principal of the Our Lady of Fatima School ("OLF") at the time of the incidents described herein.

17. Defendant LOS BANOS ENTERPRISE ("LB Enterprise") is the local newspaper of the City of Los Banos, a division of McClatchy Newspapers, and located in Los Banos.

18. Defendant GENE LIEB ("Lieb") is a resident of Los Banos and the publisher and/or editor of the LB Enterprise.

19. Defendant COREY PRIDE ("Pride") is a resident of Los Banos and a reporter of the LB Enterprise.

20. Defendant HYATT SUMMERFIELD SUITES ("Hyatt") is a hotel business entity located at 4545 Chabot Cr., Pleasanton, CA, 94588.

21. Defendant ANA VILLA ("Villa") was the hotel manager and employee of the Hyatt Summerfield Suites located in Pleasanton, California.

22. Defendant PLEASANTON POLICE DEPARTMENT is a governmental entity located in the City of Pleasanton in Alameda County in the State of California.

23. Defendant JERRY NICELY ("Niceley") is a police officer employed by the City of Pleasanton, California.

24. Defendant MARDENE LASHLEY ("Lashley") is a police officer employed by the City of Pleasanton, California.

25. Defendant MICKLEBURG ("Mickleburg") is a Sergeant police officer employed by the City of Pleasanton, California.

26. Plaintiff is informed and believes, and thereon alleges, that each of the defendants named herein was, at all times relevant to this action, the agent, employee, representing partner, co-conspirator, or joint venture of the remaining defendants and was acting within the course and scope and in furtherance of that relationship as described herein. Plaintiff is further

Forte v. County of Merced                    3                    Verified Complaint for Damages and
                                                                  Injunctive Relief

informed and believes, and thereon alleges, that each of the defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining defendants.

27. Plaintiff does not know the true names of defendants DOES 1 through 50, Inclusive, and therefore sues them by those fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

28. The acts alleged in this complaint to have been done by government defendants, were done by them not as individuals, but under color of the authority for the State of California, County of Merced, under the authority of the District Attorney's Office for the County, the Sheriff's Office for the County, the Police Department for the City of Los Banos, and the Police Department for the City of Pleasanton.

29. Plaintiff is an individual and resides at 1312 Sierra Creek Ct, in the City of Patterson, County of Stanislaus, State of California. At the time of the incidents alleged herein, Plaintiff was a resident of Los Banos in Merced County, and a writer/publisher for a newspaper/magazine called the "Badger Flats Gazette."

30. Reference hereinafter to "DEFENDANTS" without further qualification, is intended by Plaintiff to refer to each of the Defendants named above, including the DOE Defendants.

## FACTUAL ALLEGATIONS

### A. THE FIRST ARREST

31. In October of 2007, Forte wrote articles in the Badger Flats Gazette issue, "The Buck Stops Here" regarding the alleged threat of criminal prosecution by the Merced DA's Office to Mr. Marion Santos ("Santos"), a businessman in the City of Los Banos who had been remediating a gas station property for underground contamination of MTBe, a toxic chemical, under the monitoring of the Merced County Department of Health for the previous 10 years.

32. On September 27, 2007, Forte filed a claim against the District Attorney's Office for their threat of criminal prosecution against Santos and subsequent defamation of Forte when Forte was asking questions on behalf of Santos.

Forte v. County of Merced                    4                    Verified  Complaint  for  Damages  and Injunctive Relief

33. In February of 2008, Forte again focused his writings on the Merced County officials handling of the Underground Storage Fund, remediation of sites, and contamination of MTBe in the Badger Flats Gazette issue, "Silence is Golden." In this issue, Forte discusses the claim which alleged that Santos had been threatened with criminal prosecution by the District Attorney's Office to cover up the malfeasance or incompetence of Merced County Department of Environmental Health in handling the remediation of the MTBe contamination to the Los Banos Food wells caused by the corporate owned Chevron station at 1164 Pacheco Blvd.

34. On or about May 13, 2008, when Forte was sued as a cross-defendant by Santos in the case of *Tetra Tech, Inc. v. Santos*, CU150938, ("Tetra Tech case") wherein Tetra Tech, Inc. was the remediation firm for the MTBe underground contamination, Forte filed a cross-complaint naming the District Attorney Larry Morse and District Attorney's Office as Cross-Defendants.

35. At all times, Forte copied all correspondence regarding the underground remediation and the acts by defendants described herein to Defendant Supervisor Jerry O'Banion.

36. In November of 2008, Forte wrote the Badger Flats Gazette issue, "Wormhole Preface", on the topic of when a private business owner such as Mr. Marion Santos asks for accountability from the Merced County Department of Environmental Health regarding the work being ordered and the money being spent, he is then threatened by the District Attorney with criminal charges in a civil issue.

37. Plaintiff Forte distributed copies of the issues to the Merced Superior Court (to the bailiffs and to the mailboxes of the public officials provided therein), to the Merced County Administration Building (all departments therein), as well as to surrounding attorneys' offices including the DA's Office Building in Merced.

38. On January 12, 2009, Forte filed an Objection to a Pro-Temp Judge in the Tetra Tech case.

39. Defendant James Padron was the pro-tem judge scheduled to preside over the February 24, 2009 case management conference in the Tetra Tech case.

Forte v. County of Merced                     5                    Verified  Complaint  for  Damages  and
                                                                   Injunctive Relief

40.  On or about January 26, 2009, Judge Kirihara, presiding judge of the Merced Superior Court, recused the entire Merced Superior Court bench from the Tetra Tech case, and California Supreme Court Justice George assigned the case to Judge William Mayhew of Stanislaus County for all purposes on or about February 2, 2009.

41.  Despite Forte's objection and the recusal of the entire Merced County bench, Defendant Padron refused to remove the case management conference from his calendar.

42.  When Forte arrived at Padron's conference room #1202 on February 24, 2009 at 9:00am, Padron refused to speak to Forte and tell him why he was hearing the case management conference. Padron was hostile to Forte, told Forte to leave, that the conference was over, and that he was going to call the Sheriffs to physically remove him.

43.  Forte had requested a sheriff to accompany him to Room 1202 for Forte's protection, so Forte called to the sheriff who was down the hallway to come back to Room 1202.

44.  From approximately 9:05am until 10:50am, Forte sat with his wife outside of Room 1202 in the hallway under a surveillance camera, asking the deputy sheriffs present to aid him in performing a citizen's arrest of Padron. The sheriffs told Forte they were discussing the matter with their superiors. At one point, Defendant Picinich and Deputy Hymiller informed Forte he could go outside and perform the citizen's arrest on Padron. Forte responded that he wanted to do it right there in front of witnesses with their assistance so that no one could accuse him of using undue force or committing assault. The subject and the words, "citizen's arrest" were constantly repeated to the deputy sheriffs present.

45.  During this time while Forte was waiting in the hallway of the courthouse, Forte called DA Morse and spoke with his secretary, informing her of the events occurring and that he wished to speak with DA Morse about it. After being told that DA Morse was not there, he left a message. DA Morse never called back.

46.  Defendant Picinich proceeded to attempt to intimidate Forte and to provoke Forte into a confrontation. At one point, Picinich approached Forte and stood in Forte's face pressing his body into Forte's until Forte was bending backward. Forte requested Defendant

Jaskowiac to step out of the way so that the people sitting on the next bench could see what Picinich was doing.  Jaskowiac refused.  Finally, Forte told Picinich that Forte was not going to fall for Picinich's trick in trying to get Forte to push Picinich away from him which would give Picinich an excuse to be able to arrest him for assault.  Forte backed away and sat on the bench.

47. At approximately 10:50am, when Padron opened the door and stepped out, Forte stood up and leaned to the side to speak around Picinich in order to inform Padron that Forte was putting Padron under citizen's arrest and that he would like Padron to come peacefully.

48. As Forte leaned to the side, Picinich grabbed Forte, spun him around while pushing him across the hallway into the courtroom door next to Room 1202.  Jaskowiac and two other deputy sheriffs grabbed Forte at the same time.  Forte was surprised and reacted by yelling to his wife to get the names of the witnesses in the hallway.

49. Forte was arrested and placed in a holding cell at the Sheriff's Department across the street from the courthouse.

50. At approximately 12:30pm, Forte's wife was contacted to pick Forte up and that he was being released on his own recognizance since he was booked for misdemeanors.

51. By approximately 1:00pm, Forte's wife was told that the charges were being changed and that Forte was no longer going to be released on his own recognizance.

52. By 2:30pm, Forte was charged with two additional felonies and bail was set at $117,500.

53. Forte's wife arranged for a bails bond person to arrive at the jail by 3:30pm.  Forte was release at approximately 5:30pm.

54. The deputy sheriffs (bailiffs) kept a copy of the external tape showing Forte being walked to the Sheriff's Department by the officers.

55. The sheriffs say that the surveillance tape in the hallway almost directly overhead the incident has been overwritten and does not exist anymore.

56. The LB Enterprise, Lieb, and Pride wrote an article two days later entitled, "Los Banos Man Arrested after reportedly Lunging at Judge" based on an email Deputy Sheriff MacKenzie

Forte v. County of Merced                    7                    Verified  Complaint  for  Damages  and Injunctive Relief

1

2

3

4

5

6

sent to them. Forte was not contacted prior to the article. The article did not mention that the Merced County Bench was recused, that Forte had previously filed an objection to Padron since the bench was recused and Forte had a right to object to a pro-tem judge but Padron refused to honor Forte's rights, and that Forte had been waiting for almost two hours to be able to peacefully perform a citizen's arrest with the help of the peace officers who said they were checking with their supervisors.

7

8

9

10

11

12

13

14

15

16

17

18

19

57. In March of 2009, Forte wrote an issue of the Badger Flats Gazette, entitled "Legend of the Lunging Badger" regarding his arrest of February 24, 2009. Also included in this issue, Forte wrote about Defendant McGhee, the principal of Our Lady of Fatima School, who attempted to forbid the distribution of this issue at the Silent Auction despite the fact that the Badger Flats Gazette was a "Platinum Sponsor", having donated $5,000 to the auction, and was allowed to distribute its brochures, samples, etc. according to the sponsorship agreement. The issue was ultimately allowed to be distributed, but McGhee was angry due to the publication in the issue of all letters regarding her attempt to refuse distribution as well as the publication of an incident in the past whereby several school families were asked to leave because they were asking questions regarding the donated computer by a faculty member that had lesbian pornographic websites listed on the favorites menu (which in actuality was donated by McGhee and her partner/roommate, the school's eighth grade teacher, Ms. Kathy Nerell).

20

21

22

58. On April 1, 2009, DA Morse wrote a letter to Forte stating that he had a conflict with Forte due to five of his Assistant DA's having been witnesses to the arrest and could not investigate or prosecute Forte.

23

24

59. Forte appeared for his arraignment set for April 6, 2009, but the DA's Office did not charge Forte with anything at that time.

25

**B.    THE SECOND ARREST AND CHARGES FILED**

26

27

60. On or about June 3, 2009, Forte attended a Los Banos City Council meeting wherein he spoke at the public forum. Forte told Mayor Jones, who had previously called Forte a

28

Forte v. County of Merced                           8                    Verified  Complaint  for  Damages  and
                                                                          Injunctive Relief

dangerous member of the KKK, that Forte was a part of a African American family, that his best man at his wedding, Clinton Galloway was African American, and that his black brothers said, that Tommy Jones was a "lying nigger" when Jones said Clinton Galloway lied in his deposition and thereby committed perjury when he testified on behalf of Forte.

61. After the meeting, Defendant Pride approached Forte, was angry, aggressive and hostile, and first grabbed Forte's wrist. Forte told him to let go. Pride jabbed Forte in the center of his chest with two rigidly extended fingers in the presence of Los Banos Police Chief Dan Fitchie. Forte requested the police to arrest Pride as Pride walked across the room and continued to yell to Forte, that he, Pride, should have decked Forte. The police did not arrest Pride, but wrote up an incident report the next day. Forte has a video of the entire incident.

62. On June 5, 2009, Defendant Lieb wrote a commentary in the LB Enterprise called, "Mayor Owed Apology". Lieb reported inaccurately, failed to report the facts, denounced Forte to the public, and demanded an apology be made by Forte to Jones for what Forte said at the public city council forum.

63. The commentary caused public obliquy and humiliation onto Forte.

64. On July 21, 2009, Forte, his wife Eileen, and his son Jordan went to the Los Banos Branch of the Merced Superior Court for a traffic ticket Jordan had gotten.

65. Forte had his audio recorder with him and informed the security guards that he was allowed to bring it in.

66. The guards refused to let him go through the security gate, and called Picinich who happened to be the sheriff in charge.

67. Picinich agreed that the recorder could be brought into the building but not into the courtroom. Forte attempted to inform him that a person was allowed to bring a recorder into the courtroom but must have permission by the judge before turning it on, but Picinich refused to allow him to complete his sentence, and refused to provide Forte with the relevant rule when requested. The conversation regarding the recorder went on for several minutes.

Forte v. County of Merced 9 Verified Complaint for Damages and Injunctive Relief

68. During this time, Forte notice Defendant Parker standing in the lobby and asked him to get LB Police Chief Fitchie. He did not.

69. Forte told Picinich that if he had had his recorder the last time, Picinich would have been in so much more trouble for assaulting Forte that day on February 24, 2009.

70. Picinich denied assaulting Forte. Picinich approached Forte as Forte told him not to encroach on his personal space, to back away. Picinich, as he did on February 24, 2009, approached Forte until he was inches away from Forte's face. Picinich told Forte that he needed to get to the courtroom. They were both standing in the lobby, which was approximately 15 feet wide and 35 feet away from the courtroom door. Forte told Picinich that he had bad breath.

71. Picinich grabbed Forte, twisting him around and proceeded to knock him down to the floor with the aid of Deputy Hill, LB Police Parker, and CHP Meldon. Leuchner was standing guard and witnessed the incident.

72. Parker placed his knee on the back of Forte's neck grinding his ear into the floor causing bleeding.

73. The entire time of the arrest, Forte did not fight back, but kept yelling at them that he would go peacefully and what were they doing. Forte also spoke loudly to the public asking them, did you see that? Did you see that?

74. Forte saw CHP Officer Erickson and another CHP fiddling with his recorder. Forte yelled to his wife to get the recorder because they were trying to delete the recording. Leuchner and other officers would not allow Forte's wife to approach.

75. Once Forte was handcuffed, Picinich, by himself, led Forte to the Sheriff's Department door which was located to the side of the lobby behind the security desk.

76. As Picinich was leading Forte by himself through the front reception area of the Sheriff's Department, he was yanking up on the handcuffs causing extreme pain in Forte's shoulders.

77. When Picinich got to the door which was just past the window to the receptionists' office on the left, Picinich opened the door a crack, grabbed Forte's head by the back of his head, and

Forte v. County of Merced                    10              Verified Complaint for Damages and
                                                             Injunctive Relief

slammed Forte's head into the door.  As Forte was getting up, Picinich kneed him in the stomach, then threw him repeatedly against the hallway wall as he moved Forte towards the back area.

78.  Forte was never told he was being placed under arrest.

79.  Forte was never told his Miranda rights.

80.  Forte's wife was told by the security guard to pick up Forte's baseball cap, sunglasses, and audio recorder which were now on the floor in a pile on the opposite side of the metal detector on the inside of the lobby.  The audio recorder was now off having been turned off by CHP Erickson.

81.  Forte was taken to the hospital for x-rays, then brought back to the station to be booked and released immediately thereafter on approximately $17,000 bail for a felony and a misdemeanor.

82.  Forte incurred in excess of approximately $10,000 in medical bills on that day.

83.  Forte has an audio recording of both the arrest and the brutality of his head being smashed into the door afterwards.

84.  The police reports contain many false statements which contradict the audio recording of the arrest.

85.  On July 24, 2009, three days after the arrest, the LB Enterprise wrote an article entitled, "Man Arrested After Courthouse Confrontation" based on a report from the Sheriff's Office. Forte was not contacted nor interviewed prior to the article.  The article was inaccurate.

86.  On July 31, 2009, Forte had a legally recorded telephone conversation with Defendant DA Morse in which Morse stated he had a conflict in investigating and/or filing charges, and that ethically he could not even investigate the charges due to Forte's cross complaint in which Morse was a cross-defendant.

87.  In the conversation with Morse on July 31, 2009, Forte requested that Morse, with Pazin, listen to the recording which Forte had of his arrest on July 21, 2009 which would show the false statements made by the police officers and reveal that Picinich had assaulted Forte.

Forte v. County of Merced                    11            Verified Complaint for Damages and Injunctive Relief

Forte asked Morse if he had the surveillance tapes that were overhead the incident of February 24, 2009. Morse did not investigate and listen to Forte's audio recording, nor investigate the surveillance tapes which would have shown that Forte did not do what the police officers said in their police reports.

88. On August 5, 2009, Forte published and wrote the Badger Flats Gazette Issue, Volume 3, No. 3, entitled, "Mystery Theatre" which discussed Forte's July 21, 2009 arrest and the LB Enterprises' misreporting of facts.

89. On August 24, 2009, Forte published and wrote the Badger Flats Gazette Issue, entitled, "Letter to DA Morse" which published in full the letter dated August 18, 2009 to DA Morse discussing his admitted conflicts in investigating and prosecuting the charges and Forte's arrests, and DA Morse's failure to come and listen to the audio tapes which Forte had.

90. On August 26, 2009, DA Morse wrote a letter to Forte saying the AG's Office "has recently indicated that they do not believe our office has a conflict in the matter and that they, too, have been involved in litigation with you and would have the same conflict that we do."

91. In this letter, DA Morse informed Forte that he had investigated the allegation that Pride battered and assaulted Forte and decided not to prosecute.

92. On August 28, 2009, Forte published and wrote the Badger Flats Gazette Issue, entitled, "Badger Bulletin," which published in full the letter dated August 3, 2009 to the LB Enterprise, including Lieb and Pride, discussing their inaccuracies in their article of July 24, 2009, and demanding a retraction.

93. On September 10, 2009, DA Morse filed five counts of misdemeanors against Forte for the two arrests of February 24, 2009 and July 21, 2009.

## C. THE THIRD ARREST

94. As of February 24, 2010 and throughout the previous year 2009, Defendant Brizzee was Commander of the Los Banos Police Department during which time the Chief was semi-retired pending the year long, nationwide interview process being conducted for a new Chief resulting in approximately 42 candidates as of approximately February of 2010.

95. Defendant Brizzee was also a parent of children who attended the Our Lady of Fatima School ("OLF") along with Plaintiff Forte who at that time had two of his children at OLF.

96. At all times, McGhee had direct and frequent contact with Brizzee.

97. On January 20, 2010, Forte wrote and published a Badger Flats Gazette Issue entitled, "Power of the Written Word" wherein Forte exposed then Mayor of Los Banos, Tommy Jones, for having been found guilty of breaking conflict of interest laws by the Fair Political Practices Commission based upon a complaint that Forte had filed with the FPPC.

98. On February 24, 2010, Forte received the following internet emails (verbatim with typos):

"I swear on my life and my honor if i see Mr. Forte in the streets i will conduct my self in a propper manner and that propper manner will be in such a manner that i knock Mr. Forte back into the past life that he spoke of in this council meeting."

"Mr. Forte you are lucky I was not at this meeting because out of respect and love for my teacher, mayor, and close family friend Tommy Jones, I would knock you so hard you would become color blind and lose your ability to speak so you can never again refer to someone in such a racial manner..."

"Mr. Forte I swear if I ever catch you in the streets, no matter where it might be I wil ask you your name, confirm your identity, and proceed, without further warning, to beat the living hell out of you with my bare hands until my fist are bruised and red from my own blood from hitting you so hard."

"I do strongly believe in the first amendment which grants all of us as Americans the freedom of speech which allows us to say what want when we want as long as it is in no way threatening to national security but I also believe in what we call in the streets a trial by fury and if I ever see you in the streets that is what you will be granted,"

"and as expected I will be tried for my "wrong doings" in of court and will be sentenced to jail time for the amount of damage I inflict upon you, but I will know I have served you justice for everyone who could not sleep on the night this council meeting took place, everyone who was present at this council meeting and had to hear it, and every young child who watched this on the community channel and was caught in a maze of confusion as our current mayor was called a "lying ******".

"I don't know if you Mr. Forte are a man of God but I do know for a fact that if Tommy Jones was not the Christian he is, and is ignorant as you make him out to be, he would have leaped from his chair and served you the beating you diserved. You have some nerve. I am not a the type of person who will make threats over the internet knowing you will never read them, or knowing I will never see you to keep up with the words I have typed in this comment box... no that's not the type of person I am."

"instead I hope everyday that I see you because my fists are burning to meet your knose, jaw, eyes, forhead, and cheak bones, and I hope for your sake that you read this or someone reveals this to you so you can prepare and be ready for the fury I will unleash upon you on sight. I put my life on it. No matter where it may be... no matter who you are with...

Forte v. County of Merced                    13            Verified Complaint for Damages and Injunctive Relief

1    no matter who is present..."

2    "I give you my word I will keep up with everything I have stated on this post and you will
     know how I feel about what has been said. After which I will turn myself in for what I have
3    done and do my time with a smile on my face.

4    Your fellow Los Banos Citizen,
     Anthony Donaldson"

5    99.   Forte immediately contacted an attorney, Shawn Mills, who informed Forte that it was a

6          violation of Penal Code §422, a felony, and that the police should arrest the perpetrator.

7          Forte then reported the incident to the police and told them he wanted Anthony Donaldson

8          arrested for Penal Code §422. He told them that he believed that Mayor Tommy Jones, as a

9          responsible adult with influence over Donaldson who was a minor at the time, was behind

10         Donaldson's threats. When the police refused to arrest Donaldson, Forte published the

11         Badger Flats Gazette issue, "Death Threats" which included information that LB Police

12         Officer Bowling was told by Defendant Brizzee not to arrest Anthony Donaldson, the

13         admitted author of the death threats. The police report falsely stated that Forte said he

14         wanted Donaldson arrested for violation of Penal Code §653M, a misdemeanor.

15   100.  On or about February 26, 2010, Forte's wife delivered a few copies of the issue, "Death

16         Threats" to the front office of the OLF school where McGhee's office as Principal of the

17         school was located.

18   101.  On February 28, 2010, the OLF School had a pancake breakfast fundraiser open to the

19         public at which Forte was a volunteer to cook breakfast.

20   102.  Prior to the hall being opened to the public, Forte proceeded to tell the cooking crew and

21         other parent volunteers of the death threat received on February 24, 2010. Forte also placed

22         copies of the "Death Threats" issue of the Badger Flats Gazette on the ends of the long

23         tables for people to take if they so wished. Forte read the threat to the volunteer parents,

24         then purchased three tickets for himself, his wife and his son Juston, just as the hall was

25         being opened to the public. The Fortes sat down at a table and proceeded to eat their

26         breakfast.

27

28
     Forte v. County of Merced                14              Verified  Complaint  for  Damages  and
                                                              Injunctive Relief

103. Defendant McGhee locked the doors, forcing the public to wait in line outside. After obtaining concurrence from the Catholic Diocese of Fresno through the pastor of the church, McGhee called the Los Banos police department, and three police officers arrived at the pancake breakfast.

104. The police officers informed Forte that there was nothing they could arrest him for, but that McGhee had signed a citizen's arrest form against Forte for trespassing. They arrested him on behalf of McGhee's citizen's arrest.

105. As soon as Forte was forced to leave, McGhee removed the Badger Flats Gazettes from the table and discarded them.

106. McGhee was in contact with Brizzee regarding this time period that the threats had been issued, and, at Brizzee's suggestion, required Forte to provide a signed statement to her that Forte did not feel there was any threat to himself or his children before McGhee would allow his children to return to school. Forte did not write such a letter because he did feel he was threatened. Forte's children were not allowed to return.

107. Even though the arrest was a citizen's arrest for trespassing alone, the police added a misdemeanor charge onto the police report and booking sheet in addition to the trespassing charge McGhee signed for.

108. On March 3, 2010 Forte had continued to receive death threats and in the early morning hours, Forte had signed and given the LB Police a request for Citizen's Arrest to arrest Mayor Tommy Jones. Not hearing anything from the police for a couple of hours, Forte then called the police and said he and Mr. Marion Santos were going to be parked a couple of houses down from Mayor Jones' house while they waited for the police to aid Forte in his citizen's arrest. Forte called and told the police that if they were not going to show up, Forte would go to Jones' house to make the arrest himself.

109. No police showed up at Jones' house. After approximately one hour and twenty minutes of waiting in the car, Forte decided to leave.

110. During that day of March 3, 2010, Forte had a telephone conversation with the temporary, semi-retired police chief Knapp. Knapp knew he was being recorded when he told Forte that the police department had not spoken to Mayor Jones about the death threats, and that even though Knapp had told Forte on or about February 25, 2010 that Donaldson had been arrested, they had not arrested Donaldson. Forte told him that he was going to the city council meeting that evening to speak to the City Council and public about the death threats and the police department's handling of the matter.

111. On March 3, 2010 at approximately 6:00pm as Forte was attempting to enter City Hall, Brizzee was there with three other officers and prevented Forte from attending the city council meeting due to a TRO that had just been issued and which was served to Forte as he was standing with the officers in front of City Hall. Brizzee told Forte that he had to stay 150 yards away from City Hall otherwise he would be arrested. Forte backed away. The incident is captured on video with Brizzee scowling at Forte and refusing to answer whether he had knowledge of the death threats Forte had received.

112. In the evening of March 5, 2010, Forte received a call from a nurse at the Merced County Department of Health. Forte was told that she had been requested by the LB Police Department to do a mental health evaluation of Forte to make sure that Forte was not a danger to himself or his children. Forte's wife and children also spoke to the nurse, and the nurse told Forte's wife that she was going to put down that Forte was not a danger to himself or anyone else on her report.

113. After this call, Forte and his wife felt that they were not safe in Los Banos, so they took their four children, went to Pleasanton, and checked into and paid for two days at the Hyatt Summerfield Suites.

114. On March 6, 2010, after Forte offered a Badger Flats Gazette issue, "Death Threats" to two men sitting in the lobby of the hotel who were reading and discussing the article in the newspaper regarding Pleasanton Police corruption. They were interested and accepted the

Badger Flats Gazette. He also offered a copy to a lady who said, "sure", and then left a copy on the front desk.

115. Defendant Villa, the hotel manager, evicted Forte with the help of the Pleasanton Police including Defendants Nicely, Lashley, and Mickleburg because she did not like the things she read in the Badger Flats Gazette.

116. Because Villa did not like what she read in the Badger Flats Gazette, she took it upon herself along with the Pleasanton Police Department defendants to attempt to break into Forte's room by jimmying the door to break the top lock while Forte and his family were in the room.

117. Defendant Brizzee spoke to the Pleasanton Police when they called him on the telephone during the eviction and suggested that Forte was potentially mentally unstable to the point of being dangerous to others or himself even though the evening before, the Merced Department of Health had determined that Forte was not.

118. The Pleasanton Police used the accusation that Forte was mentally unstable as an excuse to break into his room to remove his one daughter, remove a jacket, keys, and purse from the rooms, to remove Forte from the hotel, and to threaten Forte's wife with arrest if she did not leave with her children after Forte was taken away by force to a hospital.

119. Forte incurred medical bills for high blood pressure and hypertension in excess of $45,000.00.

120. DA Morse subsequently investigated and filed charges against Forte for the incident and citizen's arrest on February 28, 2010.

121. In May of 2010, Commander Brizzee was promoted to Chief of Police by Mayor Tommy Jones despite the 42 nationwide candidates being considered.

## FIRST CAUSE OF ACTION

### [For Violation of 42 USC §1983 Against All Defendants]

122. Plaintiff incorporates by reference the preceding allegations.

123. The actions of Defendants, as alleged above, was in retaliation for Forte's exercise of his First Amendment Rights in publishing articles critical of the District Attorney's Office, the Sheriff's Department, the Los Banos Police Department, the Los Banos Enterprise, and the Diocese of Fresno and their respective defendant employees.

124. The actions of Defendants were intentional.

125. At all relevant times, the individual Defendants acted under color of law.

126. As against the County, Plaintiff further alleges that the acts complained of are indicative and representative of its custom and policies and that said customs and policies are the direct and proximate result of the County's indifference to prosecution of individuals in retaliation for their exercise of their constitutional rights, including their rights to freedom of speech and of the press under the First Amendment of the United States Constitution and their rights to petition for redress of grievances.

127. The acts of Defendants were the cause of the deprivation of Plaintiffs rights as protected by the Constitution and the laws of the United States.

128. As a result of Defendants' actions, Plaintiff has suffered fear, anxiety, emotional distress, and loss of dignity and pride, all to his damage in an amount to be proven at trial.

129. Plaintiff also seeks an award of any attorney's fees he incurs in vindicating his rights under the law pursuant to 42 USC §1988.

130. At all times mentioned herein, the Defendants, and each of them, were engaged in an oppressive course of conduct, intentionally, maliciously, willfully and with full knowledge that such conduct was in derogation of the law and the civil rights of Plaintiff.

## SECOND CAUSE OF ACTION

**[For Violation of 42 USC §1983 Against Defendants Merced County,**

**Picinich, City of Los Banos, and Parker For Excess Force in Making Arrest]**

131. Plaintiff incorporates by reference the preceding allegations.

132. On or about July 21, 2009, Plaintiff was arrested by Defendant Picinich and charged under California Penal Code §148(A) and §415(2) with resisting, delaying or obstructing Picinich

Forte v. County of Merced                    18                Verified Complaint for Damages and Injunctive Relief

and disturbing the peace. In arresting the Plaintiff, Defendant Picinich and Defendant Parker, used physical force which was clearly excessive in light of the circumstances existing at the time of the arrest. The facts of the incident are described in Paragraphs 64 to 79 and incorporated herein as if set forth. Defendant Picinich and Parker used excessive force with the intent to inflict unnecessary harm upon the Plaintiff and such use of force caused physical and mental injuries to the Plaintiff.

133. Plaintiff alleges that his arrest by Defendant Picinich, with the use of excessive force was in violation of his right under the Fourth Amendment of the United States Constitution to be free from unreasonable arrest and his right under the Fourteenth Amendment of the United States Constitution to due process of law. Plaintiff's arrest was made under color of the authority of Defendant Picinich, as a Deputy Sheriff for the County of Merced.

134. Plaintiff further alleges that the violation of his constitutional rights was caused by implementation of a custom, policy, or official act of Defendant Merced County and Defendant City of Los Banos in their failure to train or supervise their employees.

135. Plaintiff further alleges that Defendant Pazin, Sheriff and supervisor of Picinich, was informed via claims and complaints of the excess force used by Picinich which resulted in the battery and assault of Forte, yet Pazin rewarded Picinich's actions by promoting him.

136. Plaintiff further alleges that Defendant Brizzee, Commander and supervisor of Parker, was informed via claims and complaints of the excess force used by Parker which resulted in the battery and assault of Forte, yet Brizzee failed to punish Parker.

137. Plaintiff further alleges that Defendants Hill and Leuchner aided in the excess force of Picinich and Parker by aiding in the arrest, and by Leuchner telling Forte's wife that she could not go into the front public reception area of the Sheriff's department as Picinich led Forte through there. Leuchner's statement to Forte's wife was a lie, and used to aid Picinich in battery of Forte by preventing witnesses.

138. Plaintiff has suffered damages in excess of amount of $10,000 in out-of-pocket expenses, including medical expenses, incurred as a result of his arrest with excessive force. In

addition, Plaintiff has suffered humiliation and emotional distress as a consequence of being arrested with excessive force. Pursuant to 42 U.S.C.A. § 1983, Plaintiff seeks an award of attorneys' fees and costs incurred in bringing this action.

### THIRD CAUSE OF ACTION

### [For Violation of 42 USC §1983 Against Defendants Picinich, Jaskowiac, Hill, Parker, Leuchner, and McGhee for Unlawful Arrest]

139. Plaintiff incorporates by reference the preceding allegations.

140. On or about February 24, 2009, Plaintiff was arrested by Defendant Jaskowiac and Picinich and charged under California Penal Code §148(A), §415(2), §240, §69, and §76 with resisting, disturbing the peace, assaulting, using threat or violence to interfere with an executive officer's duties, and threatening the life of or serious bodily harm to a judge, respectively. Plaintiff then was transported by Defendant Jaskowiac and other deputy sheriffs to the Sheriff's Department at 700 W. 22 Street, Merced, California where he was fingerprinted, photographed, and detained pending arraignment. Plaintiff's detention lasted approximately five to six hours.

141. At a preliminary hearing on the aforementioned criminal charge, Plaintiff was charged under California Penal Code §148(A), §415(2), and §240 with resisting, disturbing the peace, and assault, respectively, and the criminal proceedings are still pending against Plaintiff.

142. On or about July 21, 2009, Plaintiff was arrested by Defendant Picinich, Parker, Hill, and Leuchner and charged under California Penal Code §148(A) and §69 with resisting and using threat or violence to interfere with an executive officer's duties, respectively. Plaintiff then was transported by Deputy Howard to the Los Banos Police Department at 945 5th Street, Los Banos, California where he was fingerprinted, photographed, and detained until bail of $17,000 was paid. Plaintiff's detention lasted approximately one hour.

143. At a preliminary hearing on the aforementioned criminal charge, Plaintiff was charged under California Penal Code §148(A) and §415(2) in the same complaint filed for the arrest of

February 24, 2009, with resisting and disturbing the peace, respectively, and the criminal proceedings are still pending against Plaintiff.

144.  On or about February 28, 2010, Plaintiff was arrested on a citizen's arrest by Defendant Connie McGhee and charged under California Penal Code for trespassing. Plaintiff then was transported by LB Police Officers Reyna, McDonald, and another officer to the Los Banos Police Department at 945 5th Street, Los Banos, California where he was fingerprinted, photographed, and then released on his own recognizance.

145.  At a preliminary hearing on the aforementioned criminal charge, Plaintiff was charged under California Penal Code §602 with trespassing and another penal code for the misdemeanor of disturbing a function, and the criminal proceedings are still pending against Plaintiff.

146.  Plaintiff alleges that he was arrested all three times without probable cause by Defendants Picinich, Jaskowiac, Hill, Parker, Leuchner, and McGhee who, under the facts available, did not have an objective, good faith belief that Plaintiff was guilty of the offenses charged. Plaintiff further alleges that such arrest was in violation of his right under the Fourth Amendment of the United States Constitution to be free from unreasonable arrest and his right under the Fourteenth Amendment of the United States Constitution to due process of law. Plaintiff's arrest was made under color of California Penal Code §148(A), §415(2), §240, §69, §76, and §602 under the color of the authority of Defendants Picinich, Jaskowiac, Hill, and Leuchner as deputy sheriffs for the County of Merced, Defendant Parker as a police officer for the City of Los Banos, and Defendant McGhee as a citizen exercising the statutory right to perform a citizen's arrest.

147.  Plaintiff has suffered damages in the total amount of $68,400 in out-of-pocket expenses incurred as a result of his arrest and detention, and has suffered damages in the form of attorneys' fees, to be determined at the time of trial, in defending against the unwarranted charge filed against him. In addition, Plaintiff has suffered humiliation, public ridicule, loss of personal reputation, and emotional distress as a consequence of being arrested on a criminal charge.

## FOURTH CAUSE OF ACTION

### [For Violation of 42 USC §1983 Against All Defendants]

148.    Plaintiff incorporates by reference the preceding allegations.

149.    Plaintiff is informed and believes and on that basis alleges that a conspiracy existed among the Defendants herein and others to deprive Plaintiff of his civil rights through a concerted campaign to intimidate and punish Plaintiff for exercising his freedom of speech, freedom of the press, and his right to petition for redress of grievances by bringing the Criminal Cases, by wrongfully arresting Plaintiff, by using excess force in making arrests, by inflicting pain and emotional distress upon Forte whenever possible, by failing to take appropriate investigative actions in protecting Forte under the law, and taking the actions referenced above.

150.    As a result of Defendants' actions, Plaintiff has suffered fear, anxiety, emotional distress, and loss of dignity and pride, all to his damage in an amount to be proven at trial.

151.    Plaintiff also seeks an award of any attorney's fees he incurs in vindicating his rights under the law pursuant to 42 USC §1988.

152.    At all times mentioned herein, the Defendants, and each of them, were engaged in an oppressive course of conduct, intentionally, maliciously, willfully and with full knowledge that such conduct was in derogation of the law and the civil rights of Plaintiff.

153.    WHEREFORE, Plaintiff prays for relief as follows.

## JURY TRIAL

154.    Plaintiff hereby demands a trial by jury in this matter.

## PRAYER

155.    For compensatory damages, the exact amount to be determined at trial;

156.    For exemplary and punitive damages;

157.    For a preliminary and permanent injunction to be issued preventing Defendants from further depriving Plaintiff of his rights under the Constitution and the laws of the United States;

158.    For declaratory relief as to the parties respective rights and duties;

1    159.    For attorney's fees;

2    160.    For costs of suit; and

3    161.    For such other and further relief as may be ordered by the Court.

4

5    Dated: February 24, 2011

6                                                          Eugene Forte, In Propria Persona

7

8

9

10

11

12                          **VERIFICATION**

13        I, Eugene Forte, am the plaintiff in this action. I have read the foregoing VERIFIED

14    COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF and know the contents thereof. The

15    same is true of my own knowledge, except as to those matters which are therein alleged on

16    information and belief, and as to those matters, I believe it to be true.

17        I declare under penalty of perjury that the foregoing is true and correct and that this

18    declaration was executed on February 24, 2011 at Patterson, California.

19

20                                                          Eugene E. Forte

21

22

23

24

25

26

27

28