1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE FORTE )<br><br>          Plaintiff, )<br> )<br>     v. )<br> )<br> )<br>COUNTY OF MERCED; DISTRICT )<br>ATTORNEY LARRY MORSE; DEPUTY )<br>DISTRICT ATTORNEY ALAN )<br>TURNER; COUNTY COUNSEL JAMES )<br>FINCHER; MERCED COUNTY )<br>SHERIFF MARK PAZIN; MERCED )<br>COUNTY SHERIFF DEPUTIES )<br>PACINICH, JASKOWIEAC, HILL and )<br>LEUCHNER; JAMES PADRON; )<br>SUPERVISOR JERRY O'BANION; )<br>CITY OF LOS BANOS; LOS BANOS )<br>POLICE OFFICERS GARY BRIZZEE )<br>and ANTHONY PARKER; CATHOLIC )<br>DIOCESE OF FRESNO; CONNIE )<br>McGHEE; McCLATCHY )<br>NEWSPAPERS; LOS BANOS )<br>ENTERPRISE; GENE LIEB; COREY )<br>PRIDE; and DOES 1 through 100, et al., )<br>          Defendants. )<br>_____ ) | 1:11-CV-0318 AWI SKO<br><br><br>MEMORANDUM OPINION<br>AND ORDER ON<br>DEFENDANTS' MOTIONS TO<br>DISMISS PLAINTIFF'S FIRST<br>AMENDED COMPLAINT<br>PURSUANT TO F.R.C.P. 12(b),<br>MOTION TO STRIKE,<br>MOTION TO QUASH<br>SERVICE OF SUMMONS AND<br>RELATED MATTERS<br><br><br><br>Doc. #'s 24, 27, 32, 33 and 35<br>(Motions to Dismiss)<br>Doc. # 34 (Motion to Strike)<br>Doc. # 45 (Motion to Quash)<br>Doc. # 92 (Motion for Sur-Reply) |

          This is an action for damages, injunctive and declaratory relief pursuant to 42 U.S.C.

§ 1983 that arises from a series of encounters between plaintiff Eugene Forte ("Plaintiff") and

a number of both private and governmental actors.  Currently before the court are five

motions to dismiss, one motion to strike and one motion to quash service of summons and dismiss.  Because the various Defendants stand in different relationships to Plaintiff, the court will decide the motions to dismiss and related motions in separate portions of this order.  Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

## FACTUAL BACKGROUND

Plaintiff is an on-line journalist who writes a publication called the "Badger Flats Gazette."  To the extent there is anything that unifies the claims in Plaintiff's First Amended Complaint ("FAC"), it is the fact that his purpose appears to be, at least in part, to root out and make public the misdeeds and/or malfeasance of public officials.  In pursuant of this purpose, Plaintiff appears to have placed himself in positions of confrontation with both public officials and a number of private individuals, particularly journalists.  The allegations in Plaintiff's FAC center around three instances where he was allegedly arrested by police and other instances in which officials allegedly displayed indifference to death threats directed in Plaintiff's direction.  Along the way, Plaintiff appears to allege that various actors, both public and private, infringed his right to engage in protected speech and to petition for redress of his grievances.

The first of the instances of arrest occurred on February 24, 2009, when Plaintiff attended what was scheduled to be a case management conference in a case in superior court in which Plaintiff was a cross-defendant.  Plaintiff alleges he had previously objected to a pro-tem judge in that case and the case management proceedings were set before Defendant James Padron ("Padron") who was acting as judge pro tem for the purposes of that case management conference.  Apparently, a dispute developed between Plaintiff and Padron wherein Plaintiff demanded an explanation why the proceedings were to be before a pro tem judge and Padron declined to answer and told Plaintiff that the conference had been rescheduled and that Plaintiff was required to leave chambers or be removed.

According to Plaintiff's FAC, Plaintiff decided to vacate the chambers and, while waiting outside, he summoned police to help him perform a "citizen's arrest" on Padron.  The

legal basis for the contemplated citizen's arrest is not explained.   While there is a good deal of narrative in Plaintiff's FAC describing what happened in the hallway outside the judge's chambers while Plaintiff was waiting to make his citizen's arrest, the upshot is that Plaintiff was ultimately placed in custody (hereinafter, the February 24 Arrest) as soon as he attempted to confront Padron.  Plaintiff alleges that his arrest was accomplished by means of excessive force, without probable cause and in violation of his rights under the First Amendment. Plaintiff's narrative concerning the "first arrest" continues on to describe how the incident was misrepresented in the local newspaper and how distribution of copies of the Badger Flats Gazette at a school function at the local Catholic school was initially opposed, but the Gazette was later relegated to a cardboard box under a table.

Plaintiff's account of his "second arrest and charges filed" consists of two apparently unrelated events.  The first was a Los Banos city council meeting, held on or about June 3, 2009, at which Plaintiff took the opportunity to rebut what he alleges was a prior incorrect statement made by the mayor of Los Banos.  After the meeting, Plaintiff was approached by Defendant Corey Pride ("Pride") who is not an official and is alleged to be a reporter for the local Los Banos Enterprise newspaper.  Pride is alleged to have performed the "two-fingered chest poke" on Plaintiff in the presence of Los Banos Police Chief Dan Fitchie[1].  Plaintiff requested that Pride be arrested, but no arrest was forthcoming.  The following day a commentary appeared in the Enterprise that Plaintiff alleges was written by Defendant Lieb that Plaintiff alleges cast him in falsely in a negative light.

In an apparently unrelated event, Plaintiff, his wife and his son went to the Los Banos branch of the Merced County Superior Court on July 21, 2009, on a matter pertaining to his son's traffic citation.  Plaintiff had an audio recorder with him at the time and was initially barred from entry by the court guards.  Eventually, Defendant Picinich determined that Plaintiff could enter the court with the recorder but could not take the recorder into a

---

[1]    The FAC lists Defendant Gary Brizzee as the Los Banos Police Chief.  The court presumes Fitchie is being sued in his individual capacity for failure to arrest Pride.

courtroom. Plaintiff argued that he was entitled to take the recording device into a courtroom but could not turn it on without permission of the judge. Plaintiff alleges that a fairly lengthy discussion over the recording device ensued between Plaintiff and Picinich including a discussion on the idea that it would have been beneficial to have had the recording device during the time Picinich was trying to provoke Plaintiff into an altercation during his arrest on February 24, 2009. The conversation apparently ended when Plaintiff told Picinich that Picinich had bad breath. At that point Picinich forced Plaintiff to the ground and, with the aid of officers Hill and Meldon handcuffed Plaintiff (hereinafter, the "July 21 Arrest"). Plaintiff alleges excessive force was used both during the handcuffing and later as Plaintiff was taken to a holding area. Plaintiff further alleges that he was never told that he was being placed under arrest nor was he advised of his rights under Miranda. Plaintiff alleges he required hospital treatment for injuries suffered and additional medical expenses as a result of his treatment.

The remainder of Plaintiff's allegations regarding his "second arrest and charges filed" focuses on the Los Banos Enterprise's erroneous reporting of the events and its refusal to apologize or correct the story. Plaintiff's narrative also focuses on the failure of Defendants Morse and Pazin to adequately investigate the incident or to take corrective action. Plaintiff alleges that the accounts of Picinich and Leuchner contain many false statements.

Plaintiff's narrative recounting his third arrest is particularly convoluted. Apparently in response to an article written by Plaintiff in the Badger Flats Gazette concerning misdeeds of Los Banos Mayor Jones regarding conflict of interest, Plaintiff received a number of threatening e-mail correspondences from a then-minor named Anthony Donaldson ("Donaldson") who was a fan of the mayor but not of Plaintiff. Plaintiff reported the emails in an edition of the Badger Flats Gazette in an article entitled "Death Threats." Plaintiff, who had a child at Our Lady of Fatima School ("OLF") at the time, distributed some copies of the Gazette to the office of the school's principal. On February 28, 2010, Plaintiff brought a number of copies of the Gazette with him to OLF where he had volunteered to cook for a

4

pancake breakfast fund raising event.  Plaintiff placed copies of the Gazette at the ends of the long dining tables and read the article concerning the death threats to the other volunteers that were present.  OLF's principal, Defendant McGhee, apparently concerned over safety issues and/or the possibility of alarming the patrons, allegedly conferred with the Diocese of Fresno and summoned police to remove Plaintiff and his copies of the Gazette from the breakfast.  Plaintiff describes the removal as a request by McGhee for a "citizen's arrest" (hereinafter, the "February 28 Arrest")  Plaintiff also alleges that he was required to remove his children from the school and to sign a statement stating his belief that there was no threat to himself or his children before the children would be allowed to return to school. Plaintiff did not sign such a statement and his children were not allowed to attend the school.  Plaintiff alleges that police, under the direction of Brizzee, added an undisclosed "misdemeanor charge onto the police report."  So far as the court is aware, the criminal charge or charges against Plaintiff arising from his removal from the pancake breakfast are still pending.

Plaintiff alleges that he continued to receive death threats, although he does not specify whether the threats were from the same person.  Early in the morning on March 3, 2010, Plaintiff signed and delivered to the Los Banos Police Department "a request for Citizen's Arrest to arrest Mayor Tommy Jones."  FAC at ¶ 106.  Although the legal theory behind Plaintiff's attempt at a citizen's arrest is not explicit, it appears to be based on the idea that, since the party that was threatening Plaintiff was a backer of Mayor Jones, the individual was influenced by Jones and therefore Jones was somehow criminally liable for failing to intervene for the sake of Plaintiff's protection.  Plaintiff drove to Mayor Jones' residence and waited there for police to arrive and assist in the "Citizen's Arrest."  When police did not arrive, Plaintiff left.

Plaintiff alleges Los Banos police requested that Merced County Mental Health evaluate Plaintiff to determine if he was a danger to himself or others.  Allegedly, Plaintiff's wife and children talked to the mental health nurse and a determination was made that Plaintiff was not a danger to himself or others.  Plaintiff alleges that the call from Merced Mental Health convinced him that he and his family were not safe in Los Banos so the family

1    traveled to a Hyatt hotel in the town of Pleasanton, California.

2           While staying at the Hyatt in Pleasanton, Plaintiff decided to offer copies of the

3    Badger Flatts edition that contained the "Death Threats" article.  Plaintiff alleges that the

4    manager of the Hyatt Hotel objected to the content of plaintiff's speech and sought to evict

5    Plaintiff from the hotel calling Pleasanton City Police officers to aide in the eviction.

6    Plaintiff alleges that the Pleasanton Police officers spoke to Defendant Brizzee who

7    "suggested that [Plaintiff] was potentially mentally unstable to the point of being dangerous

8    to others or himself even though the evening before, the Merced Department of Health hade

9    determined that [Plaintiff] was not."  FAC at ¶ 119.  Given that the Plaintiff's FAC does not

10   name anyone from Pleasanton as a defendant, it appears that the point of Plaintiff's

11   Pleasanton narrative is to support Plaintiff's claims against Brizzee.

12          Plaintiff also alleges some "Other Events."  In sum, the "Other Events" amplify

13   Plaintiff's allegations against: (1) Defendant Morse, for filing five misdemeanor counts

14   against Plaintiff despite having notified Plaintiff that he could not prosecute because there

15   was a conflict arising from a prior case in which Morse was a defendant and for refusing to

16   prosecute Pride ; (2) Defendant Pride and the McClatchy newspapers for portraying Plaintiff

17   in a bad light; and (3) against Defendant Fincher for tampering with the proceedings of the

18   Merced County Grand Jury.

19          The foregoing is a condensed version of the allegations set forth in Plaintiff's FAC.

20   The factual detail that is omitted has been reviewed by the court.  The court concludes that

21   much of the information alleged by Plaintiff in his FAC, including the information that is not

22   present in the above summary of facts, is not legally relevant to Plaintiff's claims for relief as

23   the court understands them.  The court has excluded the material it deems not legally relevant

24   in the interests of efficient use of judicial resources.

25                                   **PROCEDURAL HISTORY**

26          The complaint in this action was filed on February 24, 2011.  The currently operative

27   FAC was filed on May 4, 2011.  The McClatchy Paper Defendants, including Defendants Los

28   Banos Enterprise, Lieb, and Pride filed their motion to dismiss on June 24, 2011.  Doc. # 24.

All other Defendants filed their motions to dismiss on June 29, 2011.  The moving parties

include: Catholic Diocese of Fresno, Doc. # 27; individual Defendant Padron, Doc. # 32; the

Los Banos Defendants including Brizzee, Parker, City of Los Banos, Doc. # 34; and the

Merced County Defendants including Defendants County of Merced, Fincher, Hill,

Jaskowiac, Leuchner, O'Banion, Morse, Pazin, Picinich, and Turner.  Doc. # 35.  On July 15,

2011, Defendant McGhee filed her motion to quash summons and to dismiss.  Doc. # 45.

Plaintiff filed opposition to all motions to dismiss or quash on September 19, 2011.  Replies

by Defendants were filed on July 26, 2011.  On September 30, 2011, the court vacated the

hearing on Defendants' motions to dismiss and to quash and took the matter under

submission as of October 3, 2011.  On January 3, 2012, Plaintiff filed a motion for leave to

file a sur-reply.  Doc. # 92.

## LEGAL STANDARD

For the most part, Defendants' motions to dismiss are pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

can be based on the failure to allege a cognizable legal theory or the failure to allege

sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc.,

749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule

12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief

above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

("Twombly").  While a court considering a motion to dismiss must accept as true the

allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425

U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party

opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v.

McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be

factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do").  The pleading standard

set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

## DISCUSSION

For purposes of analysis, Plaintiff's action will be divided into five groups of individuals or entities: (1) non-governmental individual actors and entities; (2) governmental actors sued in their individual capacities who are supervisors or who are not directly involved in acts alleged to have infringed Plaintiff's Fourth Amendment rights; (3) individual governmental actors, other than governmental entities, that are alleged to have violated Plaintiff's Fourth Amendment right against arrest without probable cause; (4) individual governmental actors, other than governmental entities, that are alleged to have violated Plaintiff's Fourth Amendment right against application of unreasonable force; and (5) governmental entities. The court will consider Defendants' motions to dismiss with regard to each group in turn.

## I. Non-Governmental Individual Actors and Entities

This group of Defendants includes the McClatchy Defendants (including McClatchy Newspapers, the Los Banos Enterprise, and individual Defendants Lieb and Pride), the Catholic Diocese of Fresno and Defendant McGhee. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting

under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  "In other words, the deprivation 'must be caused by the exercise of some right or privilege created by the [government] or a rule of conduct imposed by the [government].' [Citation.]"   Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9 Cir. 1999) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982))  "'Second, "the party charged with the deprivation must be a person who may fairly be said to be a [governmental] actor.'  The Court adopted that test because '§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong.'"  Id.  (quoting American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999)).

Both the McClatchy and the Diocese of Fresno Defendants contend that all claims alleged by Plaintiff against them must fail because neither entity or any person working for either entity was operating under color of law.  Both Defendant groups also contend that Plaintiff's FAC fails to allege the violation of any right secured by the United States Constitution or its laws.

### A.  The McClatchy Defendants

Although "[a] civil rights plaintiff suing a private individual under § 1983 must demonstrate that the private individual acted under color of state law," Franklin, 312 F.3d at 444, it is well-settled that "even a private entity can, in certain circumstances, be subject to liability under section 1983," Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 954 (9th Cir.2008) (en banc).  "A private individual may be liable under § 1983 if she conspired or entered joint action with a state actor."  Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir.2010) (internal citation and quotation marks omitted); see also Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir.2003) ("While generally not applicable to private parties, a § 1983 action can lie against a private party when he is a willful participant in joint action with the State or its agents.") (internal citation and quotation marks omitted).

In his opposition to Defendants' motions to dismiss, Plaintiff appears to invoke the conspiracy theory of private action in order to attach liability to the McClatchy Defendants' actions.

> A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" [. . .] and an actual deprivation of constitutional right [. . ..] To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."

Quezada v. Herrera, 2011 WL 794813 (E.D. Cal. 2011) at *3 (internal citations omitted).  In essence, "'[a] civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the wrongdoer's acts.'" 16 Am.Jur. 2D Conspiracy § 57 (1998).

When assessing a claim under color of law by a private actor, the court "start[s] with the presumption that private conduct does not constitute governmental action." Sutton, 192 F.3d at 835.  It is therefore Plaintiff's burden to allege facts that, if true, would constitute a conspiracy on the part of the McClatchy Defendants.  At the outset the court notes that Plaintiff's claim of conspiracy as alleged in the FAC alleges nothing but the bare existence of a conspiracy between all Defendants and is therefore not at all sufficient to state a conspiracy with regard to the actions of the McClatchy Defendants.  The court will, however, address briefly the facts and argument asserted in Plaintiff's opposition to the motion to dismiss in order to determine if leave to further amend the complaint would be warranted.

Plaintiff's opposition consists of a long and difficult to follow narrative that describes a series of instances in which Plaintiff alleges he was the victim of articles written primarily by Defendant Pride that tended to portray Plaintiff in a bad light and to falsely associate Plaintiff with acts of apparently racially motivated vandalism against Mayor Jones.  In addition, Plaintiff was apparently in contact with a committee to recall the mayor and Plaintiff alleges that the articles and bad-light-reporting was carried out at the direction of officials in the city including the city counsel and mayor to somehow disassociate Plaintiff from the recall committee.  The court has reviewed Plaintiff's allegations regarding the conspiracy or common scheme of Los Banos officials and the McClatchy reporters and finds that at its core, the allegations are based on nothing more than innuendo and rank speculation.  What Plaintiff has done is allege an elaborate narrative to explain why Los Banos officials might have wanted to manipulate news coverage of some events , cast those events as

constituting a personal vendetta by Los Banos officials and indignant McClatchy reporters against Plaintiff, and then alleging in conclusory fashion that the collusion between the McClatchy Defendants and Los Banos officials happened.  When the innuendo and characterizations of vindictive false reporting are peeled away, all that remains is the bare and frankly improbable assertion that Pride and the McClatchy Defendants wrote character assassination articles at the behest of Los Banos officials as part of a scheme to dissuade Plaintiff from the exercise of his First Amendment rights.  There are absolutely no facts alleged to indicate that such collaboration actually took place.

The court finds that Plaintiff has failed to allege facts sufficient to show that there existed a common course of action or conspiracy between the McClatchy Defendants and the Los Banos officials to constitute a showing that the McClatchy Defendants at any time were acting under color of law.

Very briefly, the court will also address the McClatchy Defendants' contention that they did not carry out acts would constitute any violation of Plaintiff's First Amendment Rights even if those actions were taken under color of law.  In this circuit a plaintiff seeking to establish a claim for violation of his First Amendment rights must allege evidence to show that the defendant took action to deter or chill the Plaintiff's protected speech and that the actions taken by the defendant were of such a nature as to "'chill or silence a person of ordinary firmness from future First Amendment Activities.' [Citation.]" Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9 Cir. 1999) (quoting Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996)).

Plaintiff contends that Defendants actions – casting Plaintiff in a bad light and failing to report on death threats to Plaintiff – would be sufficient to chill a person of ordinary firmness from Plaintiff's protected speech.  The court finds nothing particularly coercive in the reporting activities of any of the McClatchy Defendants.  Plaintiff, a reporter himself, is in the business of reporting and reflecting negatively on those who he perceives to be abusing the public's trust.  Plaintiff can rationally expect similar treatment from those who disagree deeply with his published views.  This is simply part of the give-and-take of unregulated

11

journalism.  Innuendo, salacious rumor mongering and generalized mud-slinging are part and parcel of free speech; and while a claim for slander may occasionally arise from such activity, a claim for First Amendment violation will not.  Plaintiff's FAC makes it clear that Plaintiff has gone to some lengths to insert himself into public controversies and to publish on them. Having thus availed himself of constitutionally protected free speech to the discomfort of the subjects of his writing, Plaintiff may not complain when others avail themselves of the same rights in inflicting discomforture upon him.

The court finds Plaintiff has alleged neither action under color of law or interference with a constitutionally guaranteed right against the McClatchy Defendants.  The court further finds that amendment of the pleading cannot cure the basic flaws in Plaintiff's claims against the McClatchy Defendants; they cannot be construed as operating under color of law and their reporting, no matter how biased or incomplete or inaccurate it may be, does not rise to the level of an abridgment of Plaintiff's rights under the First Amendment.  Plaintiffs FAC will therefore be dismissed in its entirety as to the McClatchy Defendants without leave to amend.

### B.  Diocese of Fresno Defendants

The Diocese of Fresno Defendants also contend that Plaintiff's FAC fails to state a claim for relief because it fails to allege facts to establish that they acted under color of law or that any of Plaintiff's constitutional rights were violated as a result of Defendants' actions.  In the case of the Diocese Defendants, there are two claims of constitutional violation; Plaintiff alleges his rights under the Fourth Amendment were violated when Plaintiff was placed under citizen's arrest by Defendant McGhee and his rights under the First Amendment were violated when he was prevented from participating in constitutionally protected speech at the pancake breakfast at Our Lady of Fatima School ("OLF").

As was the case with Plaintiff's opposition to the McClatchy Defendants' motion to dismiss, Plaintiff seeks here to extend liability under section 1983 to the actions of Defendants who are admittedly private persons by alleging the Defendants engaged in conspiracies with City of Los Banos officials.  As above, Plaintiff's claims of conspiracy are

wholly inadequate as set forth in the FAC, a fact which Plaintiff tacitly acknowledges by requesting leave to further amend the complaint by adding both alleged facts and Defendants to the complaint.  In regard to the Diocese Defendants, Plaintiff's opposition to Defendants' motion alleges conspiracy on two fronts.  With regard to the liability of McGhee and the Diocese in the violation of Plaintiff's rights under the First Amendment, Plaintiff's opposition alleges that Defendant McGhee and Defendant Brizzee were connected through the OLF where McGhee was principal and Brizzee had a child at the school.  Plaintiff goes on to explain that both McGhee and Brizzee had reason to be hostile toward Plaintiff and, in particular, to Plaintiff's activities as a reporter.  In the case of McGhee, Plaintiff alleges McGhee "had animus against [Plaintiff] and his writings in the Badger Flats Gazette due to [Plaintiff's] exposure of her past actions in previous articles."  Doc. # 57 at 4:25-27.  With regard to Brizzee, Plaintiff alleges that Brizzee was motivated to be of service to Mayor Jones since Jones had strong influence over the hiring of the new Chief of Police and that Jones's interests would be served if distribution of Plaintiff's "Death Threats" article in the Badger Flats Gazette was impeded.  From the allegations of animus, Plaintiff asserts the existence of a conspiracy between McGhee and Brizzee to violate Plaintiff's First Amendment Rights.

As discussed above, the concoction of a narrative that imagines the evil motives of other actors is insufficient to establish the conspiracy of parties to interfere in Plaintiff's First Amendment rights.  This is particularly true where a completely independent and reasonable set of facts can be derived from Plaintiff's narrative that provide a perfectly reasonable basis to support the legally-required presumption that McGhee acted independently.  The obvious conclusion that can be drawn from the facts as alleged in Plaintiff's FAC is that McGhee wanted to prevent Plaintiff from upsetting/alarming the patrons/helpers attending the pancake breakfast with his accounts of death threats and conspiracies.  In short, it can very reasonably be assumed that McGhee acted for reasons that were entirely her own.  No conspiracy is needed and none will be presumed based only on the motivations Plaintiff attempts to project on others.

1    Plaintiff's attempt to extend liability to McGhee and the Diocese Defendants for

2  violation of his First Amendment rights fails first because the actions that were taken by a

3  private actor (McGhee) acting privately and second because Plaintiff's rights under the First

4  Amendment are not implicated where his freedom to speak is limited by a private actor in a

5  private forum.  It is elementary that the First Amendment safeguards against *governmental*

6  interference in the right to public speech; it does not guarantee a forum at private expense.

7  See Pacific Gas & Elec. Co. v. Pub. Util. Comm'n of California, 475 U.S. 1, 28 (1986)

8  ("First Amendment does not itself grant a right of access to private forums").  Even public

9  schools are not generally public fora.  Nurre v. Whitehead, 580 F.3d 1087, 1093 (9th Cir

10  2009).  And where a school, public or private, does open its facilities for a particular purpose,

11  it does not infringe on the free speech rights of others where it limits expressive activity that

12  is inconsistent with the purpose of the public function.  Id. at 1094 ("In a nonpublic forum

13  opened for a limited purpose, restrictions on access 'can be based on subject matter ... so long

14  as the distinctions drawn are reasonable in light of the purpose served by the forum' and all

15  the surrounding circumstances").

16    Here, McGhee opened the school facilities for the express purpose of hosting a

17  pancake breakfast to raise funds.  There was no unconstitutional restriction on Plaintiff's

18  rights of free speech where he was prevented by McGhee from expressive activities that she

19  reasonably felt were incompatible with the purposes of the event.

20    The court finds that Plaintiff's FAC fails to state a claim for infringement of

21  Plaintiff's rights under the First Amendment as to the McGhee, nor can amendment of the

22  pleadings cure the defect in view of both McGhee's status as a private person and OLF's

23  status as a private school.  Since the Diocese of Fresno Educational Corporation, sued by

24  Plaintiff as Diocese of Fresno, is sued on a theory of respondeat superior, Plaintiff's claim

25  against them for First Amendment violation is likewise subject to dismissal without leave to

26  amend.

27    With regard to Plaintiff's Fourth Amendment claim against the Diocese Defendants, it

28  is significant that the claim is based on arrest without probable cause on February 28, 2010,

14

1   not on excessive force.  Plaintiff's claim for false arrest or arrest without probable cause fails

2   for the simple reason that the facts described by Plaintiff in his FAC establish probable cause

3   for his arrest.  While California statutory law offers a number of variations on the theme of

4   trespass, one that appears to pertain to the situation described in Plaintiff's FAC is set out in

5   California Criminal Code section 646.4.  Pursuant to that section, whenever the chief

6   administrative officer (here McGhee) of a school (defined as either public or private school)

7   has reasonable cause to believe that a person has disrupted the orderly operation of the

8   facility, the administrator may notify the person that consent to remain on the campus has

9   been withdrawn. § 626.4(a).  A person who "willfully and knowingly enters or remains on

10  such campus or facility during the period for which consent has been withdrawn is guilty of a

11  misdemeanor." § 626.4(d).

12       What Penal Code section 626.4 makes criminal is the willful refusal of a person who

13  is notified that his permission to be on campus has been revoked to leave the campus.  While

14  Plaintiff may want to argue that is actions were not disruptive to the peaceful activities of

15  OLF during the pancake breakfast, Plaintiff was obliged to leave when requested to do so and

16  to undertake any discussion about disruptive nature of his conduct at another time and place.

17  Plaintiff's FAC establishes that Plaintiff refused to promptly leave the pancake breakfast after

18  being asked by McGhee to do so and after being directed by a police officer to do so.

19  Plaintiff's protestation that he was committing no misconduct is contrary to the facts he

20  alleges; once Plaintiff was asked to leave, he committed a misdemeanor by not doing so

21  voluntarily.  Presuming for the sake of argument that McGhee's actions constituted a

22  "citizen's arrest" the court finds that the arrest was not without probable cause.  Plaintiff's

23  claim for violation of his rights under the Fourth Amendment are therefore without merit as

24  to McGhee and the Diocese of Fresno Defendants.

25       The court will order that the FAC be dismissed in its entirety with respect to the

26  Diocese of Fresno Defendants without leave to amend.  The motion of Defendant McGhee to

27  quash service of process will be denied as moot.

28

15

**II.  Defendants Sued In Their Individual Capacities Not Directly Involved in Plaintiff's**
**Arrests**

In this group of Defendants, the court includes Defendants Morse and Turner, Merced
County District Attorney, and Assistant District Attorney, respectively; Defendant Fincher,
Merced County Counsel; Defendant Pazin, Merced County Sheriff; Defendant Padron, a
private attorney sued in his capacity as judge pro tem; Defendant O'Banion, Merced County
Supervisor; and Defendant Brizzee, Los Banos Chief of Police.  Except for Defendants
Morse and Turner, the common thread that runs through this group of Defendants is the
absence of any allegation that they did anything affirmatively to violate Plaintiff's rights, but
that they failed to supervise others to prevent the violation of rights or failed to act in some
way to secure Plaintiff's constitutional rights.

*A.  Defendants Morse and Turner*

With regard to Defendants Morse and Turner, Plaintiff's FAC alleges that in 2007
Plaintiff filed a "claim" against the Merced County District Attorney's office.  Although the
exact nature of the "claim" is not specified, it appears it had to do with an investigation and
legal actions taken in regard to underground fuel storage tanks owned by a third party.  On
the occasion of the February 24 Arrest, Plaintiff placed a call to Morse's office to inform him
of the "citizen's arrest" of Defendant Padron, but the call was not returned.  Plaintiff alleges
that he was notified by Morse that, during the conduct of the February 24 Arrest, several
Assistant District Attorneys were present in the hallway and witnessed the proceedings.  The
FAC alleges that Morse told Plaintiff that, based on the presence of Assistant District
Attorneys at the scene of Plaintiff's arrest, a conflict of interest between his office and
Plaintiff would prevent prosecution by the Merced District Attorney's office of Plaintiff on
charges arising out of the February 24 Arrest.  The FAC alleges that "[o]n August 26, 2009,
Morse wrote a letter to [Plaintiff] saying the [Attorney General's] office 'has recently
indicated that they do not believe our office has a conflict in the matter and that they, too,
have been involved in litigation with you and would have the same conflict that we do.'"
Doc. # 11 at ¶ 88.  Apparently Morse's office subsequently took up the prosecution of

16

Plaintiff for charges arising from both the February 24 Arrest and the July 21 Arrest, and also filed charges stemming from the February 28 "citizen's Arrest."  The FAC alleges that Turner was continuing the prosecution of the various misdemeanor charges as of the time the FAC was filed.

Plaintiff's FAC alleges that the prosecution of Plaintiff by Morse and Turner even though an "acknowledged conflict" existed was improper and a violation of Plaintiff's constitutional rights.  The FAC also appears to allege that the failure of the District Attorney's office to respond to various of Plaintiff's concerns including, notably, the decision not to prosecute Donaldson on Felony charges is also somehow actionable as a violation of Plaintiff's rights under the First Amendment.  In his opposition to Defendants' motion to dismiss, Plaintiff tries to overcome the ambiguity in his FAC by explaining that the gravamen of his claims against Morse and Turner stem from the allegation that "Morse insisted on prosecuting [Plaintiff] himself despite acknowledged conflicts in order to retaliate against [Plaintiff] for exercising his [F]irst [A]mendment rights."  Doc. # 55 at 20:8-10.

As Defendants correctly assert, persons who fill the function of criminal prosecution as district attorneys have absolute immunity in presenting and prosecuting the state's case.  Imbler v. Pachtman, 424 U,S, 409, 427 (1976) ("We conclude that the considerations outlined above dictate the same absolute immunity under s 1983 that the prosecutor enjoys at common law").  Plaintiff, noting that Defendants interpreted the gravamen of his claims as stemming from the failure of Morse to respond to his concerns regarding Donaldson, seeks to undermine Defendant's reliance on Imbler by pointing out that his complaint actually alleges improper prosecution by Morse and Turner based on Plaintiff's arrests.  Despite Plaintiff's argument, Imbler applies with full force to this case given that in that case as in this, the Supreme Court was dealing with the issue of prosecutorial immunity in the context of a decision by the district attorney to prosecute.  Id. at 410-411.  As Defendants demonstrate, prosecutorial immunity applies in both the case of decisions to prosecute and not to prosecute.  Id; see also Roe v. City and County of San Francisco, 109 F.3d 578, 583 (9th Cir. 1997).

17

1    With regard to the alleged non-prosecution of Donaldson, Plaintiff argues that

2    absolute immunity does not apply where the prosecutor engages in unlawful conduct "not

3    intimately associated with [the] judicial phase of criminal process such as giving legal advice

4    to police." Doc. # 55 at 19:21-22. Plaintiff then proceeds to request leave to amend the

5    complaint by alleging that "Turner gave advice to the Los Banos police to charge Donaldson

6    on a misdemeanor, *Penal Code 653m*, instead of the felony *Penal Code 422*. The DA's

7    Office and Turner conspired with the police to hide that it was Turner's advice by having the

8    police report falsely state that they were charging Donaldson with a 653m at the request of

9    [Plaintiff] (which it was not) and to directly turn the report to juvenile probation bypassing

10    the DA's office." Doc. # 55 at 20:13-17. As will be discussed below, this claim fails

11    because a third party has no constitutional interest in the prosecution or non-prosecution of

12    another.

13    Plaintiff also seeks to amend the complaint to allege facts that suggest that somehow

14    Plaintiff's charge following his arrest at the pancake breakfast was the result of

15    communication between the District Attorney's office and the officer who completed the

16    arrest report. Based on the allegation that McGhee complained of "trespass" on the "citizen's

17    arrest form," and Plaintiff was ultimately charged with disturbing business operations,

18    Plaintiff surmises that someone from the DA's office caused the police report to be altered in

19    order to justify Plaintiff's arrest on the charges that were ultimately filed.

20    Plaintiff's argument, along with the proposed revisions to the complaint are absurd on

21    a number of levels. First, Plaintiff cannot transmute the normal process of criminal

22    investigation and prosecution into a conspiracy against him by simply labeling it so. It is a

23    given that the prosecutorial function involves interviews of percipient witnesses and the

24    determination of appropriate charges from the facts discovered. It is elementary that what an

25    officer writes or does not write on an arrest citation or report is not necessarily determinative

26    of what is ultimately charged in an indictment or information. Plaintiff seems to ignore the

27    fact that Plaintiff's FAC alleges that a police officer was present at the pancake breakfast for

28    at least twenty minutes before Plaintiff was finally handcuffed and removed from the

18

premises.  Whether or not Plaintiff was arrested pursuant to a "request for citizen's arrest," the arresting officer's report of what the officer witnessed in his presence is necessarily a part of the arrest record and something the District Attorney would certainly investigate.  There is absolutely nothing in the allegations, either as set forth in the FAC or as proposed by Plaintiff that would support Plaintiff's allegation that the District Attorney told the arresting officer what to write in his report.

Second, and perhaps more conclusively, Plaintiff's allegations, even if true in all respects, do not describe the infringement of any constitutional right.  Even if the District Attorney directed the arresting officer to alter the arrest report so as to accommodate a charge under Penal Code section 602.1 instead of section 602, Plaintiff suffered no cognizable harm.  Both Penal Code sections are misdemeanors and section 602.1 is simply a specification of the more generalized description of trespass under section 602.  Because the specification of Plaintiff's trespass as being more appropriately described as within the meaning of section 602.1 exposes Plaintiff to no greater criminal liability than would be the case if he were charged under the general trespass statute, there is no cognizable constitutional harm.

Plaintiff has alleges no facts in the FAC that would be sufficient to overcome the prosecutorial immunity accorded to Defendants Morse and Turner.  Plaintiff's proposed amendments to the complaint do no better.  The court concludes that Plaintiff's claims against Morse and Turner are without merit and that further amendment of the complaint would be unavailing.  Plaintiff's FAC will therefore be dismissed in its entirety as to Defendants Morse and Turner.

### B. Defendant Fincher

Plaintiff's FAC alleges Plaintiff filed a grand jury complaint with the Merced County Grand Jury concerning his treatment at the hands of various officials.  Plaintiff alleges he was initially informed that the Grand Jury would investigate his claims and take his testimony.  Plaintiff alleges that "Defendant County Counsel Fincher was at all times was aware of [Plaintiff's] allegations of public corruption, vindictive prosecution, false arrest, excess force in making arrest, etc. but failed to address them in any way."  Doc. # 11 at ¶ 131.  Plaintiff

19

alleges that the Grand Jury foreperson later informed Plaintiff "that they had re-voted to terminate the investigation due to the opinion and advice given to them by [D]efendant Fincher, who was county counsel and a subject of that same complaint they were investigating." From these facts, Plaintiff alleges that "Defendant Fincher tampered with the proceedings of the Grand Jury against himself in an effort to conceal the acts of himself and other [D]efendants herein which retaliated, persecuted, and punished Forte for exercising [Plaintiff's First Amendment rights]." Id. at 133.

In alleging grand jury tampering against Fincher, Plaintiff is repeating the by now familiar pattern of alleging facts to show that some governmental entity or person did not respond favorably to him and then alleging, without any further proof, that whatever setback he experienced was the result of a conspiracy against him. Plaintiff's claim against Fincher fails for a number of reasons. The first of these is his failure to show how the acts that Fincher is alleged to have committed could possibly amount to jury tampering. The court assumes for the sake of argument that Fincher was a subject of Plaintiff's Grand Jury Complaint. The court also assumes that, as both an official identified by Plaintiff's Grand Jury Complaint and as the person responsible to represent the County of Merced in legal proceedings, Fincher was directed by the Grand Jury to respond to Plaintiff's Complaint. See Cal. Penal Code § 939.2 (grand jury may compel witness testimony by subpeona); Cal. Penal Code § 934 ("grand jury may, at all times, ask the advice of the court, or the judge thereof, or of the district attorney, or of the county counsel"). The court presumes that Fincher did communicate with the Grand Jury, either in writing or in person or both. The court also presumes that, as a result of Fincher's input into the Grand Jury's investigation, the Grand Jury decided to not investigate Plaintiff's claims further. In sum, the facts alleged by Plaintiff tend to establish that the Grand Jury was presented with Plaintiff's Complaint, it carried out a preliminary investigation, including taking testimony from one of the subjects of the Complaint, and then came to the conclusion that further investigation was not warranted. There is nothing in any of these facts to suggest, much less establish, that the Grand Jury's decision to not investigate further was the result of unlawful jury tampering.

Second, the court agrees with Defendants that no constitutional right is implicated by any of the acts alleged by Plaintiff.  To successfully assert the deprivation of a right, Plaintiff has the burden to show the United States Constitution or federal or state statute entitled  him to a right that was denied.  In this case, the upshot of Plaintiff's claim is that Plaintiff had the right to the full consideration of his claim by the Grand Jury and that the right was infringed as a result of Fincher's input to the Grand Jury.  So far as the court can determine, there is no statutory or constitutional basis that supports the proposition that a citizen is entitled to consideration of his or her complaint by a grand jury.  Pursuant to California Penal Code section 917, "[t]he grand jury *may* inquire into all public offenses committed or triable within the county and present them to the court by indictment." Id. (italics added).  The permissive language of section 917 implies a grand jury exercises its discretion to determine what complaints to investigate, how intensely to investigate those complaints and whether to issue a indictment or not.  Plaintiff has provided no case or statutory authority to support the proposition that a right exists to any particular level of consideration by a grand jury or to any particular conclusion that may arise from such consideration as a grand jury may give to any citizen complaint.

Finally, although it is clear to the court that Plaintiff's claim against Fincher is meritless on the grounds already discussed, it also appears that Fincher is entitled to absolute immunity with regard to any evidence or information he delivered to the Grand Jury in his capacity as County Counsel.  As will be discussed in more detail below a prosecuting attorney is absolutely immune pursuant to Imbler v. Pachtman, 424 U.S. 409 (1976) for conduct that is intimately related with the judicial process.  See id. at 421 (holding district attorney who knowingly presented perjured testimony to a grand jury was entitled to absolute immunity).  Since a district attorney's presentation of evidence to a grand jury is considered "an integral part of the judicial process" under California law and therefore covered by absolute immunity, see Marlow v. Coakley, F.2d 70, 71 (9th Cir. 1968), this court sees no reason why the same immunity should not apply to a county counsel tasked with the same responsibility under California Penal Code section 934.

1   The court finds dismissal of all claims against Defendant Fincher is appropriate.

2   Again, the court cannot discern any possibility that amendment of the complaint could

3   possibly state a claim against Fincher.  Dismissal will therefore be granted with prejudice as

4   to Fincher.

5   ### C. Defendant Padron

6   Of all the claims alleged by Plaintiff against all Defendants, Plaintiff's claim against

7   Defendant Padron is by far the most obscure.  The FAC alleges that Padron was scheduled to

8   preside as a pro-tem judge over a case management conference in a separate case (the "Tetra

9   Tech Case").  Plaintiff objected on multiple occasions to the jurisdiction of a pro-tem judge

10  but the case management conference was not changed.  Plaintiff also alleges that the Merced

11  County Superior Court bench had generally recused itself from the Tetra Tech case.  Plaintiff

12  alleges that Padron refused to speak to Plaintiff to "tell him why he was hearing the case

13  management conference."  Doc. # 62 at 3:9-11.  Plaintiff alleges that Padron was hostile to

14  Plaintiff and told him to leave or be removed by police officers.  The FAC alleges that at this

15  point Plaintiff decided to wait in the hallway outside Judge Padron's chambers in order to

16  effectuate a "citizen's arrest" of Padron when he came out of chambers.  Defendants Picinich,

17  Jaskowiac "and two other deputy sheriffs" arrested Plaintiff as soon as Plaintiff stepped to

18  confront Padron and to effectuate his planned citizen's arrest.  The FAC alleges:

19  Defendant Padron presided over a Case Management Conference under the
    false pretense and under the color of law as a pro tem judge and rescheduled
20  the CMC out of [Plaintiff's] presence despite [Plaintiff's] filed objection to a
    pro tem judge, despite Presiding Judge Kirihara's Merced County bench
21  recusal from the case, and despite Case Management Conference Policy and
    Information Rules in effect on February 24, 2009, which states , "In no case
22  will CMC's be rescheduled based on the written or telephonic request from a
    single party.  PARTIES ARE TO MAKE SUCH EX PARTE REQUESTS."
23  Padron also committed perjury in a declaration he provided for the Request for
    Injunction against [Plaintiff] by ex-mayor Tommy Jones, as well as in the
24  police report which resulted in an injunction against [Plaintiff].  Padron
    violated [Plaintifff's] civil rights through his actions under color of law.
25
26  Doc. # 62 at 4:13-23.

    The court notes that Plaintiff's FAC does not even hint at any actions carried out by
27
28  Padron that could conceivably justify a citizen's arrest.  Plaintiff's description of what

22

transpired in the case management conference is evidence of the Superior Court acceding to Plaintiff's objection to proceedings before a pro tem judge.  The case management conference was rescheduled by a court officer (Padron), not by a party to the action, so there is no violation of any local rule against ex parte requests for scheduling change.  In other words, it appears from the facts alleged in the FAC that the date of the case management conference was changed by the superior court in apparent accommodation of Plaintiff's objection.

Plaintiff appears to recognize the failure of the FAC to state a claim and Plaintiff's argument in opposition to Padron's motion to dismiss is essentially a request to amend the complaint to add more facts.  One line of proposed amended facts asserts that Padron acted with hostility toward Plaintiff, that Padron refused to explain how he could assert jurisdiction over the proceedings in light of Plaintiff's objection to jurisdiction by a pro tem judge and that Plaintiff was summarily ejected from chambers under threat of arrest.  What Plaintiff fails to establish is that Padron's asserted hostility rises to the level of public offense.  Padron, having rescheduled the case management conference in deference to Plaintiff's wishes did not owe any explanation and the court will not assume that Padron displayed a criminal level of hostility.

The other group of facts that Plaintiff seeks to allege in an amended complaint enlarges on the allegation that Padron rescheduled the case management conference out of Plaintiff's presence by alleging that as Plaintiff walked into chambers, Padron was just finishing a telephone call to the opposing attorney informing him that the conference date had been changed.  Again, there is absolutely no evidence that Plaintiff's right to litigate the case that was the subject of the case management conference was impaired in any way or that it could have been impaired.  By their nature, case management conferences are non-dispositive of the claims in the action and so have no effect on the substance of an action.  A judge, pro-tem or otherwise, does not "hear" a case for jurisdictional purposes just by conducting a case management conference or rescheduling one.  Similarly, Plaintiff's unsuccessful attempt to demand a response from Padron regarding the court's ability to conduct a scheduling

conference with a pro-tem judge does not implicate any constitutional or statutory right.  The court concludes that whether the case management conference was rescheduled with or without Plaintiff's consent or participation, no underlying constitutional right was infringed as a result of Plaintiff's interchange with Padron in chambers and his ejection from chambers.

Plaintiff's proposed amendment to his FAC also attempts to enlarge the legal basis of Plaintiff's claims against Padron by alleging that Padron was a co-participant and/or co-conspirator in the arrest of Plaintiff that occurred outside Padron's chambers while Plaintiff was attempting to execute a "citizen's arrest" on Padron.  He alleges that Padron and one or more of the sheriff's deputies planned together in Padron's chambers to arrest Plaintiff in order to prevent him from exercising his "right" to perform a citizen's arrest.  In a style that echos Plaintiff's claims against most of the other Defendants, the collusion between the sheriff's deputies and Padron is alleged to be part of a pervasive conspiracy to prevent Plaintiff from the exercise of his First Amendment rights. Thus, the crux of Plaintiff's claim against Padron is that the arrest outside Padron's chambers was without probable cause and for the purpose of chilling Plaintiff's exercise of rights guaranteed by the First Amendment.

Contrary to Plaintiff's implied legal assertion, there is absolutely no support for the proposition that Penal Code section 837, which authorizes a citizen who is not a police officer to make an arrest, creates a right that is abridged when the arrest is thwarted.  The court accepts as true Plaintiff's proposed amended fact that one or more sheriff's deputies talked to Padron in chambers and discussed Plaintiff's stated intention to perform a citizen's arrest.  The court also assumes that it was as plain to Padron and the officers as it is to the court that Plaintiff had absolutely no reason to believe that a public offense had been committed.  The only reasonable conclusion that can be drawn from the scenario that Plaintiff describes in his proposed amended facts is that Padron became concerned at the prospect of being accosted by Plaintiff when he was informed of Plaintiff's plan to perform an unlawful "citizen's arrest" and that Padron enlisted the help of the deputy sheriff(s) for his own protection.  Padron had every right to do this and the sheriff's deputies had the obligation as court security officers to ensure that Padron was not accosted by what looked to them to be a

1    potential threat waiting in the hall.

2           As will be discussed in more detail below, a district court will be required to stay

3    Plaintiff's claims unlawful arrest because any adjudication of those claims would interfere

4    with the state's adjudication of criminal claims against Plaintiff currently pending in state

5    court.  However, in the case of Plaintiff's claims against Padron, the court finds that

6    Plaintiff's claims are so patently meritless that it would be unjust to leave any part of this

7    action pending as to Padron.  Defendant Padron will therefore be dismiss with prejudice as to

8    all claims alleged in this action.

9             ***D. Defendant Pazin, Brizzee, and O'Banion***

10                  ***1. Pazin***

11          Based on Plaintiff's FAC, Defendant Pazin is liable in his individual capacity to

12   Plaintiff for two reasons.  First, the FAC, as clarified by Plaintiff's opposition to the motions

13   to dismiss, alleges that Pazin was responsible for preservation of video surveillance

14   recordings of courthouse cameras and was therefore responsible for the loss/destruction of

15   the video recordings taken at the time of Plaintiff's arrest at the courthouse on February 24,

16   2009.  Thus, part of Plaintiff's claim against Pazin has to do with Pazin's role in the loss or

17   destruction of evidence that Plaintiff contends would be exculpatory in his criminal case

18   stemming from the courtroom arrest.  As will be explained in more detail below, the doctrine

19   of "Younger Abstention" requires that the court  stay consideration of any claims in this

20   action that would necessarily involve the determination of issues that would tend to interfere

21   with the adjudication of the criminal case against Plaintiff in the state court.  In order to

22   adjudicate Plaintiff's claim based on wrongful withholding of exculpatory evidence, the court

23   will need to determine whether the evidence qualifies as Brady material and whether it was

24   improperly withheld.  The court in Plaintiff's criminal case will very likely be required to

25   make the same determination.  Because this court's determination of the issue would

26   necessarily interfere with the state court's case, the court must stay any claim against Pazin

27   based on loss or destruction of the referenced video evidence until completion of the criminal

28   case.

1    The only other identifiable basis for Pazin's liability that can be found in the FAC is

2    Plaintiff's contention that Pazin is responsible as a supervisor for the misdeeds of members

3    of the Merced County Sheriff's Department who conducted the arrests of Plaintiff and who

4    participated in the alleged instance of excess force.  To establish a prima facie case of

5    supervisor liability, a plaintiff must show facts to indicate that the supervisor defendant

6    either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew

7    of the violations and failed to act to prevent them; or (3) promulgated or implemented a

8    policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the

9    moving force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th

10   Cir.1989).  A police chief is liable in his individual capacity if he "set[ ] in motion a series of

11   acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w

12   or reasonably should [have] know[n], would cause others to inflict the constitutional injury."

13   Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991) (ratification, poor

14   investigation, or failure to terminate series of events make supervisor liable).

15   With regard to liability other than as related to the alleged loss of Brady materials,

16   Plaintiff's FAC is an assemblage of conclusory allegations to support the claim that Pazin

17   was responsible for a failure to train and supervise officers to protect citizens from false

18   arrest, application of unreasonable force, and violation of First Amendment Rights.  With

19   regard to Plaintiff's arrests, it is clear that Pazin did not participate in them and did not have

20   prior knowledge of their occurrence.  Plaintiff does not allege the existence of other prior

21   examples of similar conduct that would constitute knowledge of a pattern or practice of

22   similar violations of individual rights nor does he point to any policy that would produce such

23   an outcome.

24   Basically, Plaintiff alleges – without reference to any facts other than his own arrest –

25   that his arrest was emblematic of patterns and practices that Pazin had failed to correct.  The

26   failure of Plaintiff's FAC to allege any claim for relief for failure to supervise is obvious;

27   Plaintiff has failed to allege any factual basis that would support the existence of  prior

28   knowledge of constitutionally deficient behavior by any Sheriff's Deputy.  By definition,

1   Plaintiff cannot establish the existence of an existing pattern, practice or custom by offering

2   as proof only the allegations of what happened to him.  Likewise, the mere allegation of the

3   existence of policy based on only the experience of an individual fails to establish that such a

4   policy exists.  The court concludes that the allegations set forth in the FAC are wholly

5   deficient to establish supervisory liability against Pazin.

6          ### 2. Brizzee

7          With regard to Defendant Brizzee, Plaintiff's basis for assertion of liability consists of

8   a series of presumed or actual interactions between Brizzee and third parties that Plaintiff

9   alleges resulted in either inaction by the third party to enforce a right claimed by Plaintiff or

10  action by the third party that resulted in violation of a right. Based primarily on Plaintiff's

11  opposition to Defendants' motions to dismiss, the court can discern three factual scenarios

12  that are alleged by Plaintiff to give rise to violation of Plaintiff's constitutional rights.  First,

13  Plaintiff alleges that Brizzee was involved with events that transpired at the OLF pancake

14  breakfast.  As the court has previously determined, Plaintiff suffered no Fourth Amendment

15  violation when he was arrested and removed from the premises and he suffered no First

16  Amendment violation when he was denied a forum for public speech on the private property

17  of the school.  To this the court would add that, to the extent there is any allegation of

18  constitutional harm based on the school's requirement that Plaintiff assure that the attendance

19  of his children at OLF would not result in any threat of harm to children at the school, the

20  allegation does not describe any imaginable constitutional violation.

21         Second, Plaintiff alleges a set of facts that pertain to the decision of Defendant Turner

22  to charge Donaldson[2] with a misdemeanor violation of Cal. Penal Code § 653m for the

23  threatening email, instead of charging a felony violation of section 422.  Plaintiff's

24  description of the events, both in the FAC and in his proposed amendments as set forth in his

25  opposition, are lengthy, convoluted and replete with "facts" that appear to be nothing more

26

27         [2]   In his opposition, Plaintiff alleges he later discovered Anthony Donaldson was also known as Anthony

28  Donaldson Bates.  The court will continue to use the name Donaldson for the sake of continuity.

that surmise on Plaintiff's part.  The upshot of the allegations is that, as a consequence of the collusion of Defendants Brizzee, Turner and prospective Defendant Townsley,[3] an arrest of Donaldson was avoided.  Plaintiff alleges that he was harmed because the "arrest of [Donaldson] and the questioning of him would have likely resulted in [Donaldson] admitting that [Defendant] Jones had helped write the death threats for him."  Doc. # 61 at ¶ 16.

Plaintiff admits that police confronted Donaldson at his high school and that Donaldson confessed to writing the threatening email and expressed remorse for doing so. Plaintiff also alleges Donaldson "ended up doing some hours for community service."  Doc. # 61 at ¶ 14.  Although Plaintiff seeks to amend the FAC to allege a claim for intentional infliction of emotional distress under California common law and a claim for violation of 42 U.S.C. § 1985 against Donaldson and Jones, the only constitutional harm alleged against Brizzee is that the failure to arrest Donaldson resulted in the failure to produce facts that would implicate Jones in the writing of the threatening email.  It is well established that "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  Even if the element of conspiracy between Brizzee, Jones, Townsley and Turner were adequately alleged (which it is not) there is no allegation of a constitutional harm. Since Plaintiff is a private person having no judicially cognizable interest in the prosecution of either Jones or Donaldson, he cannot claim to have suffered a constitutional harm because of how, or whether, either were prosecuted or whether facts were adequately investigated against either for that purpose.

The third possible basis for Plaintiff's claim against Brizzee arises from what the court understands to be a request to amend the FAC to add a claim pursuant to section 1983 against Brizzee and Jones for conduct relating to the procurement and enforcement of a TRO requiring Plaintiff to stay at least 150 yards away from Los Banos City Hall during the time

---

[3]    Plaintiff's opposition to the motion to dismiss requests leave to amend the FAC to add Los Banos Detective Townsley as a Defendant and to add allegations to support the claims.

of a public City Counsel meeting.  Plaintiff seeks to amend the FAC by adding allegations

that, *inter alia*:

> Chief Knapp and/or Brizzee called Jones and told him to get a TRO against
> [Plaintiff] because [Plaintiff] was going to the City Hall meeting to talk about
> the death threats and play the recording which would show that they did not
> investigate the death threats seriously. [¶] Jones got a TRO signed by Judge
> Dougherty based upon the fact that [Plaintiff] sat a few houses down from
> Jones' house awaiting the police to arrive and aid him in a citizen's arrest, and
> that Jones was afraid for his safety.

Doc. # 61 at ¶¶ 27-28.

Plaintiff alleges that the TRO was procured by false representation inasmuch as Jones

made a statement in support of the TRO to the effect that he was concerned for his safety

based on Plaintiff's behavior in attempting to carry out a "citizen's arrest."  So far as either

the FAC or Plaintiff's proposed amendments are concerned, the only connections between

the TRO and Brizzee are that Plaintiff surmises that Brizzee advised Jones to procure a TRO

if Jones wanted to keep Plaintiff away from Jones and that Brizzee acted to enforce the TRO

when it was issued.  Neither allegation describes an infringement of Plaintiff's constitutional

rights by Brizzee.  If, as Plaintiffs allegations suggest, Jones talked to Brizzee to obtain

advice on keeping Plaintiff away, Brizzee correctly informed Jones that obtaining a

restraining order was the legally proper approach.  Plaintiff alleges that Jones completed the

affidavit in support of the order and that Judge Dougherty approved the order.  To the extent

there was any untruthfulness in the affidavit, Plaintiff makes no allegation that Brizzee was

part of it.  Once the TRO was issued, Brizzee was duty-bound to enforce it.

Finally, Plaintiff alleges that Brizzee was in communication with Pleasanton police

officials and conveyed to them information indicating that Plaintiff was "potentially mentally

unstable to the point of being dangerous to himself or others even though the evening before,

the Merced Department of Health had determined that Plaintiff was not."  FAC at ¶ 119.

Plaintiff acknowledges that the hotel where Plaintiff was staying took steps to evict Plaintiff

prior to any contact between Brizzee and the Pleasanton Police but alleges that the

information provided by Brizzee was used by the police as an "excuse to break into

[Plaintiff's] room to remove his one daughter, remove a jacket, keys, and purse from the

rooms, to remove [Plaintiff] from the hotel, and to threaten [Plaintiff's wife with arrest and/or commitment to the John George Psychiatric Hospital where [Plaintiff] was being sent to if she did not leave with her children after [Plaintiff] was taken away by force." Id. at ¶ 120.

Beyond the rather tenuous link between the information Brizzee is alleged to have passed to the Pleasanton Police and the treatment Plaintiff experienced at their hands, it is clear that Brizzee cannot be liable for any constitutional infraction because Plaintiff suffered none. Just as was the case with Plaintiff's removal by police from the OLF pancake breakfast, Plaintiff suffered no constitutional harm because he was on private property and the decision to revoke Plaintiff's permission to remain on that property belonged to the manager of the premises. When that permission was revoked, Plaintiff was obliged to leave. As previously discussed, Plaintiff cannot claim any First Amendment right in connection with the property of another, and if the hotel manager did not like what Plaintiff had to say, as he alleges, then the revocation of Plaintiff's right to remain on the premises does not rise to the level of a constitutional harm. Since Plaintiff's eviction from the hotel in Plesanton does not amount to the infringement of a constitutional right, it follows that Brizzee, whatever his connection may have been to Plaintiffs removal, did not infringe any right belonging to Plaintiff.

The court concludes Plaintiff has failed to allege any claim against Defendant Brizzee upon which relief can be granted. Further, language proposed by Plaintiff to further amend the FAC with respect to Brizzee does not cure the deficit. The court will therefore dismiss Plaintiff's claims against Brizzee with prejudice.

### 3. O'Banion

The only claim against O'Banion that can be discerned from the FAC is alleged in connection with Plaintiff's first claim for relief where Plaintiff simply states that "Defendant Supervisor O'Banion was at all times informed of [Plaintiff's] grievances against Merced County officials, but O'Banion refused to act, and thereby, aided and abetted the crimes in violation of rights against [Plaintiff]." Doc. # 11 at ¶ 139. Lacking any other indication of a basis for Plaintiff's claim against O'Banion, the court presumes the claim is based on

supervisor liability.  As noted above, to state a claim for supervisor liability, a plaintiff must allege facts to show that the supervisor (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to *prevent* them; or (3) promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir.1989) (italics added).  There is no allegation of personal participation in the FAC.  There is also no allegation that O'Banion knew of the violations alleged by Plaintiff before they occurred; thus, there can be no allegation that he failed to take appropriate steps to prevent their occurrence.  Plaintiffs FAC also fails to point to policy promulgated by O'Banion that is so deficient as to be a repudiation of any constitutional right.  The court therefore concludes Plaintiff has failed to allege a claim against Defendant O'Banion based on supervisor liability.

In his opposition, Plaintiff seeks to amend the FAC to add allegations that tie O'Banion to the allegation that Fincher tampered with an ongoing grand jury investigation by alleging that O'Banion ratified Fincher's acts.  Again, because Plaintiff has no constitutionally protected interest in the investigation of his complaint by a grand jury, and because there are no facts alleged that, if found true, would establish jury tampering, Plaintiff's proposed amendment of his complaint fails to allege a claim against O'Banion for which relief can be granted.  The motion to dismiss all claims as to O'Banion will therefore be granted with prejudice.

### III.  Plaintiffs Individual Claims for Violation of Fourth Amendment Rights

#### A.  Claims for Arrest Without Probable Cause

The third claim for relief set forth in Plaintiffs' FAC alleges unlawful arrest against Defendants Picinich, Jaskowiac, Hill, Parker, Leuchner.[4]  The arrests mentioned occurred on February 24, 2009, at the Merced County Superior Court; July 21, 2009, at the Los Banos

---

[4]   Plaintiff's FAC also alleges an unlawful arrest claim against McGhee, who has been dismissed from this action as discussed above.  McGhee is not included in this portion of the discussion.

1   branch of the Merced Superior Court; and on February 28, 2010, in Los Banos in connection

2   with the pancake breakfast at OLF school.  As to each of the three arrests, Plaintiff's FAC

3   alleges that criminal charges were filed and that those charges are/were not resolved as of the

4   time of filing of the FAC.

5          Pursuant to Younger v. Harris, 401 U.S. 147 (1971), a federal court should generally

6   "abstain from granting injunctive relief that would interfere with pending state judicial

7   proceedings. Martinez v. Newport Beach City, 125 F.3d 777, 781 (9th 1997) (citing Younger,

8   401 U.S. at 40-41).  "Abstention is appropriate in favor of state proceedings if (1) the state

9   proceedings are ongoing, (2) the proceedings involve important interests, and (3) the state

10  proceedings provide the plaintiff an adequate opportunity to litigate federal constitutional

11  questions." Aiona v. Judiciary of State of Hawaii, 17 F.3d 1244, 1248 (9th Cir. 1994).  In

12  this circuit, abstention under Younger has been held appropriate where claims are asserted in

13  federal court for money damages under section 1982 where *criminal* charges are pending in

14  state court. Mann v. Jett, 781 F.2d 1448, 1449 (9th Cir. 1986).[5]

15         In the present action, the court finds that an adjudication of Plaintiff's claims for

16  arrest without probable cause will certainly interfere with the state court's criminal claims

17  against Plaintiff.  The litigation on Plaintiff's claims of arrest without probable cause

18  necessarily would require litigation of the validity of the underlying criminal claims pending

19  in state court.  While there is no doubt that litigation of Plaintiff's claims of excessive use of

20  force would not interfere with any pending proceeding in state court, there is also no doubt

21  that adjudication of the claims of arrest without probable cause would interfere.  Plaintiff's

22  claims for violation of his Fourth Amendment rights based on lack of probable cause will

23  therefore be stayed pending litigation of the state law claims as to all Defendants who are not

24  otherwise dismissed.

25

26

27         [5].   In contrast, the Ninth Circuit has held that abstention under Younger is not appropriate where the

28  proceeding pending a state court is also a proceeding under section 1983.

32

1

**IV.  Fourth Amendment Claims for Excess Force**

2       Plaintiff alleges that his arrest on July 21, 2009, by officers Picinich and Parker were

3   accomplished by means of excessive force in violation of Plaintiff's Fourth Amendment

4   rights.  Plaintiff also alleges Defendants Hill and Leuchner  "were aware of such excessive

5   force and supported the actions of Picinich and Parker."  In the facts section of the complaint,

6   Plaintiff alleges that "Picinich grabbed [Plaintiff], twisting him around and proceeded to

7   knock him down to the floor with the aid of Deputy Hill, LB Police [Officer] Parker and CHP

8   [Officer] Meldon.  Leuchner was standing guard and witnesses the incident. [¶] Parker placed

9   his knee in the back of [Plaintiff's] neck grinding his ear into the floor causing bleeding. [¶]

10  The entire time of the arrest, [Plaintiff] did not fight back, but kept yelling at them that he

11  would go peacefully and what they [were] doing."  Doc# 11 at ¶¶ 68-70.  Later, Plaintiff

12  alleges that as he was being taken to the Sheriff's Department, that Picinich "grabbed

13  [Plaintiff's] neck by the back of his head, and slammed [Plaintiff's] head into the door.  As

14  [Plaintiff] was getting up, Picinich kneed him in the stomach, then threw him repeatedly

15  against the hallway wall as he moved [Plaintiff] towards the back area."  Id. at ¶ 75.

16      "[A] Fourth Amendment seizure [occurs] ... when there is a governmental termination

17  of freedom of movement through means intentionally applied."  Brower v. County of Inyo,

18  489 U.S. 593, 596–597(1989).  "To determine the constitutionality of a seizure '[w]e must

19  balance the nature and quality of the intrusion on the individuals Fourth Amendment interests

20  against the importance of the governmental interests alleged to justify the intrusion.'

21  [Citations.]" Tennessee v. Garner, 471 U.S. 1, 8 (1985) ("Garner") (quoting United States v.

22  Place, 462 U.S. 696, 703 (1983)).  The court's analysis of the reasonableness to the force

23  employed in the seizure of a free citizen is set forth by the Supreme Court in Graham v.

24  Connor, 490 U.S. 386 (1989).  In Graham, the Court set forth "a non-exhaustive list of

25  factors to be considered in evaluating whether the force used to effect a particular seizure is

26  reasonable: we must pay careful attention to (1) the severity of the crime at issue; (2) whether

27  the suspect poses an immediate threat to the safety of the officers or others; and (3) whether

28  the suspect actively resists detention or attempts to escape."  Liston v. County of Riverside,

120 F.3d 965, 976 (9th Cir. 1997) (citing Graham, 490 U.S. at 388); see Shannon v. City of Costa Mesa, 46 F.3d 1145, 1995 WL 45723 (9th Cir. 1995) at *4 (the most important element in an excessive force claim is whether the suspect poses an immediate threat to the safety of the officers or others). In addition, where feasible, the officer must have given the suspect some warning. Garner, 471 U.S. at 12.

The court concludes that Plaintiff has alleged facts sufficient to state a claim for relief pursuant to section 1983 for violation of Plaintiff's Fourth Amendment Right against use of excessive force. Plaintiff has alleged facts sufficient to state an excessive force claim against Defendants Picinich and Parker.

For an individual officer not acting in a supervisory capacity, the officer must personally participate in the conduct causing the violation of a right for there to be liability. Jones v. Williams, 297 F.3d930, 934 (9th Cir. 2002). That other officers who were not in a supervisory capacity witnessed or knew of the violation but did nothing to cause the violation fails to state a claim as to those officers.

With regard to police officials acting in a supervisory capacity, Plaintiff alleges:

> that Defendant Pazin, Sheriff and supervisor of Picinich, was informed via claims and complaints of the excess force used by Picinich which resulted in the battery and assault of [Plaintiff], yet Pazin rewarded Picinich's actions by promoting him. ¶ Plaintiff further alleges that Defendant Brizzee, commander and supervisor of Parker, was informed via claims and complaints of the excess force used by Parker which resulted in the battery and assault of [Plaintiff], yet Brizzee failed to punish Parker.

Doc. # 11 at ¶¶ 156-157.

The Ninth Circuit "has long permitted plaintiffs to hold supervisors individually liable in § 1983 cases when culpable action, or inaction, is directly attributed to them." Starr v. Baca, 652 F.3d 1202, 1205 (9th Cir. 2011).

> In Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991), we explained that to be held liable the supervisor need not be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.' Id.. at 645. Rather, the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Id. at 646 (internal citations, quotation marks, and alterations omitted).

34

1    Starr, 652 F.3d at 1205-1206.

2         Plaintiff has alleged nothing with respect to the conduct of either Brizzee or Pazin

3    prior to the alleged application of excess force.  In addition, Plaintiff has not alleged that

4    either Brizzee or Pazin directly participated in the conduct that resulted in the alleged

5    violation.  The essence of Plaintiff's factual assertions with respect to Pazin and Brizzee are

6    that they failed to punish their respective employees *after* the occurrence at issue.  This fails

7    to state a claim for supervisorial liability under section 1983.  The requirement of a causal

8    link between the supervisors' actions and a plaintiff's harm means that, absent direct

9    involvement in the application of unreasonable force, the supervisors must have acted *ahead*

10   of the harm that occurred such that it could be said that the supervisors' actions or inactions

11   set in motion events that caused the harm.  See Lazarez, 946 F.3d at 646 (supervisor may be

12   liable if he "set in motion a series of acts by others which he kn[e]w or seasonably should

13   [have] know[n] would cause others to inflict the constitutional injury.").

14        To the extent Plaintiff has alleged anything in regard to supervision, discipline or

15   training, such allegations are completely conclusory and inadequate to state any claim for

16   relief.

17        The court concludes that Defendants' motion to dismiss as to Plaintiffs second claim

18   for relief will be denied as to Defendants Picinich and Parker only.  All other individual

19   defendants will be dismissed.

20   **V. Entity Liability Pursuant to <u>Monell v. Department of Social Services</u>**

21        The two entities at issue in this action are the County of Merced and the City of Los

22   Banos.  With respect to Plaintiffs first claim for relief, Plaintiff alleges as follows with

23   respect to the County of Merced:

24       Plaintiff further alleges that the acts complained of are indicative and
         representative of its custom and policies and that said customs and policies are
25       the direct and proximate result of the County's indifference to prsecution of
         individuals in retaliation for their exercise of their constitutional rights to
26       freedom of speech and of the press under the First Amendment of the United
         States Constitution and their rights to petition for redress of grievances.
27
28   Doc. # 11 at ¶ 141.  Plaintiff makes exactly the same allegations with regard to his claim

against the City of Los Banos.  The court cannot identify any other facts specifically alleged

against either of the entity Defendants with regard to any other of Plaintiff's claims for relief.

A municipal entity is liable only for the actions of "its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy."  Monell v. Dep't of Soc.

Services, 436 U.S. 658, 698 (1978).  "To hold a local government liable for an official's

conduct, a plaintiff must first establish that the official (1) had final policymaking authority

'concerning the action alleged to have caused the particular constitutional or statutory

violation at issue' and (2) was the policymaker for the local governing body for the purposes

of the particular act."  Weiner v. San Diego County, 210 F.3d 1025, 1028 (9th Cir.2000)

(quoting McMillian, 520 U.S. at 785, 117 S.Ct. 1734).  "A municipality is not liable for the

random acts or isolated incidents of unconstitutional action by a non-policymaking employee.

[Citations.]"  Sepatis v. City and County of San Francisco, 217 F.Supp.2d 992, 1001, 1005

(Cal. 2002).  "Rather, to impose municipal liability for a violation of constitutional rights, a

plaintiff must show: (1) that plaintiff was deprived of a constitutional right; (2) that the

municipality had a policy; (3) that this policy amounted to deliberate indifference of

plaintiff's constitutional rights; and (4) that the policy was the moving force behind the

constitutional violation."  Id. (citing Plumeau v. Sch. Dist. #40 County of Yamhill, 130 F.3d

432, 438 (9th Cir. 1997).

As before, Plaintiff has failed to cite any policy or practice except in the most

conclusory terms.  Plaintiff asserts that what the acts he alleges are "indicative  and

representative of [the entities'] custom and policies."  There is no indication what the

customs and policies are or how those policies caused Plaintiff's harm.  For the most part,

Plaintiff's first claim for relief appears to allege a violation of his rights under the First

Amendment.  That certainly appears to be the case to the extent Plaintiff's first claim for

relief is alleged against County of Merced or City of Los Banos.  The court has determined

that Plaintiff has failed to state any plausible claim for relief under the First Amendment

against any Defendant.  To the extent Plaintiff has alleged a claim under the Fourth

Amendment for excessive force, Plaintiff's FAC fails to make any connection between a

county or city-established policy or practice and the Fourth Amendment harm Plaintiff alleges he suffered.  The court has examined Plaintiff's oppositions to the motions to dismiss with regard to the entity Defendants and finds no additional facts to support Plaintiff's claims.  Plaintiff's claims against the entity defendants City of Los Banos and County of Merced will therefore be dismissed.

## VI.  Plaintiff's Fourth Claim for Relief

Plaintiff's fourth and final claim for relief alleges violation of section 1983 but the basis for his claim is ambiguous.  Plaintiff's FAC alleges as follows with regard to his fourth claim for relief:

> Plaintiff is informed and believes and on that basis alleges that a conspiracy existed among the Defendants herein and others to deprive Plaintiff of his civil rights through a concerted and agreed upon campaign to intimidate and punish Plaintiff for exercising his freedom of speech, freedom of the press, and his right to petition for redress of grievances by bringing the Criminal Cases, by wrongfully arresting Plaintiff, by using excess force in making arrests, by inflicting pain and emotional distress upon [Plaintiff] whenever possible, by failing to take appropriate actions in protecting [Plaintiff] under the law, and taking the actions as referenced above.  ¶ As a result of Defendants' actions, Plaintiff has suffered fear, anxiety, emotional distress, and loss of dignity and pride, all to his damage in an amount to be proven at trial.

Doc. # 11 at ¶¶ 170-171.

It appears to the court that Plaintiff's fourth claim for relief is essentially a condensed restatement of his first claim for relief with particular emphasis on the conspiratorial nature of the Defendants' actions.  Under section 1983, liability may be extended to a private person if it can be shown that the private person conspired with, or entered into joint action with, a state actor.  See, Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (stating elements of conspiracy implicating private actor under § 1983).  As mentioned earlier, Plaintiff's efforts to wrap all the Defendants into a conspiracy to violate his First Amendment Rights suffers two shortcomings.  First, Plaintiff has failed to allege any facts that, if proven, would tend to show the existence of an agreement between any of the state and non-state actors to violate Plaintiffs' First Amendment rights.  Plaintiff has merely made the conclusory allegation that such an agreement exists and that is not enough to state a claim for conspiracy under § 1983.

See Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)

(conclusory allegations that state and non-state actors conspired fails to support § 1983

claim).  Second, the court has concluded, and remains convinced, that Plaintiff has failed to

state facts sufficient to show there was any First Amendment violation.  Even if there was a

conspiracy, Plaintiff's first and fourth claims for relief fail for want of evidence or allegation

to support the claim for a First Amendment violation.  See id. (citing with approval Singer v.

Wadman, 595 F.Supp. 188 (D. Utah 1982) for the proposition that a "conspiracy allegation,

even if established, does not give rise to liability under § 1983 unless there is an actual

deprivation of civil rights.)

        Plaintiff's fourth Claim for relief will be dismissed in its entirety as to all Defendants.

**VII.  Leave to Amend**

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted

unless the court determines that the allegation of other facts consistent with the challenged

pleading could not possibly cure the deficiency."  Schreiber Distributing Co. v. Serv-Well

Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).  Plaintiff has requested leave to

amend with regard to each of motions to dismiss and has proposed either additional

allegations to support existing claims, additional claims under state law for non-economic

damages, and/or additional defendants.  Fundamentally, Plaintiff's action alleges the

violation of three basic rights; rights associated with free speech under the First Amendment

and rights under the Fourth Amendment against arrest without probable cause and rights

against the application of unreasonable force.

        Plaintiff's factual allegations with respect to violation of his First Amendment rights

conflate the exercise of free speech with the fall-out from his speech.  As explained above,

Plaintiff has apparently failed to grasp a number of the finer points of free speech.  Among

those are the fact that Plaintiff's rights to speak freely are not infringed if he is prevented

from speaking in a private forum by a private person.  In addition, public officials are not

liable for the negative consequences of Plaintiff's exercise of free speech rights to the extent

he is exposed to threats or the opprobrium of other private actors.  And finally Plaintiff must

38

1    come to grips with the fact that certain manifestations of his right of free speech are subject to

2    restriction.  Primary among these are the rights of public officials to manage public fora to

3    avoid disruption of the proper functions of government and the free speech rights of others,

4    and the rather significant limitations on Plaintiff's right to effectuate citizens arrests on

5    whimsical grounds.  The court has considered all the facts submitted by Plaintiff in his FAC

6    and all the facts proposed to amend the pleadings and finds that no combination of facts that

7    are presently before the court, or that are proposed for future amendments, come close to

8    setting out a claim for violation of Plaintiff's rights under the First Amendment.  Plaintiff

9    will therefore not be granted leave to amend with regard to any claims under the First

10   Amendment.

11          With regard to Plaintiff's claim for violation of his right against arrest without

12   probable cause under the Fourth Amendment, the court has explained that it is required to

13   stay any proceedings related to those claims pursuant to <u>Younger</u> and related cases.  Since the

14   court may not give consideration to any of these claims until such time as the charges

15   pending from Plaintiffs arrests are resolved, it follows that further amendment of the

16   complaint cannot be considered until that time.  Leave to further amend Plaintiff's pleadings

17   with regard to violation of rights against arrest without probable cause will therefore be

18   denied without prejudice.

19          With regard to Plaintiff's claims for violation of his Fourth Amendment rights against

20   the application of unreasonable force, the court has noted that the only individuals that can be

21   held liable under the facts as pled or as proposed are the persons who actually participated in

22   the conduct that caused the harm.  So far as the court can determine from Plaintiff's

23   pleadings, those persons are Defendants Picinich and Parker.  The court concludes that

24   Plaintiff has failed to allege any basis and has failed to propose any amendment to the

25   complaint that would expand liability to any other Defendants.  The court will deny leave to

26   amend with regard to Plaintiff's claims arising from the alleged application of excess force by

27   Defendants Picinich and Parker except that Plaintiff may amend the complaint to *clarify* his

28   claims against Picinich and Parker..

39

1    In his opposition to the motion to dismiss by the Los Banos Defendants – Brizzee,

2    Parker, McGee and the City of Los Banos – Plaintiff moves to broadly amend his claims to

3    add both new Defendants and new claims for emotion distress and for conspiracy under 42

4    U.S.C. § 1985(3).  The cornerstone of most of Plaintiff's proposed new claims and

5    defendants arises out of the allegation that then-mayor Jones conspired with Donaldson when

6    the latter wrote the threatening email to Plaintiff in apparent retaliation for comments made

7    by Plaintiff about Jones.  The only factual allegations offered by Plaintiff with regard to a

8    conspiracy consist of the observations that Donaldson knew and respected Jones and was

9    apparently mentored by him.  From that and the fact that Donaldson admittedly wrote the

10   email, Plaintiff hypothesizes conspiracy between Jones and Donaldson to write the email and

11   between Jones and Brizzee and other City of Los Banos officials to fail to respond to the

12   threats set forth in the email and to cover up the relationship between Jones and Donaldson.

13   Again, Plaintiff's claim of conspiracy is based on nothing but the bare assertion of its

14   existence.  Furthermore, the evidence Plaintiff does offer regarding Donaldson – that he was

15   questioned by police, that he confessed, that he received a term of public service and that he

16   expressed regret – all cuts against Plaintiff's allegation there was no official response or that

17   there was a cover-up.  As previously noted, Plaintiff has no constitutional interest in whether,

18   or how, Donaldson is/was prosecuted or punished.  Whether Plaintiff was emotionally injured

19   as a result of Donaldson's actions is an issue that does not give rise to a federal constitutional

20   claim and is not a part of this action.  To the extent Plaintiff was owed any level of protection

21   from Donaldson as a result of Donaldson's threats, Plaintiff received that protection because

22   there is no allegation that Donaldson ever carried out, or attempted to carry out, any of his

23   threats.

24   Plaintiff also seeks to amend the FAC to add facts pertaining to liability against Jones

25   and Brizzee relating to the TRO that was obtained against Plaintiff that resulted in his

26   exclusion from a city counsel meeting held on March 3, 2010, and to amend by adding

27   additional facts against Brizzee based on his role in the conversation that occurred between

28   Brizzee and the Pleasanton Police Department.  The proposed allegations add nothing to the

40

allegations previously discussed and are not sufficient to sustain claims for emotional

damage.  Leave to amend these claims will therefore be denied.

**VIII.  Plaintiff's Motion to File Amended Sur-Reply**

On January 3, 2012, Plaintiff filed a document titled "Amended Plaintiff's Motion for

Leave to File Sur-Reply to Merced County Defendants' Reply Brief [. . .]: Request to Amend

First Amended Complaint."  Doc. # 92 (hereinafter, Plaintiff's "Motion for Sur-Reply").  The

court has reviewed Plaintiff's Motion for Sur-Reply and the accompanying Amended

Declaration of Eugene Forte as well as the exhibits attached thereto.  In substance, Plaintiff's

proposed sur-reply consists of an assemblage of factual allegations that Plaintiff alleges were

not known and could not have been known at the time Plaintiff filed his opposition to the

motion to dismiss by the Merced County Defendants.  The facts alleged appear to fall into

three categories.  First, Plaintiff alleges a number of facts pertaining to a "Citizen's

Complaint" that was filed by Plaintiff in 2009 in response to his July 21 Arrest and the

alleged excessive force associated with it.  Plaintiff's declaration in support if his proposed

sur-reply sets for a narrative that recounts Plaintiff's efforts to inquire into Merced County's

progress or lack of progress in resolving his Complaint.  Apparently, Merced County officials

were unable to find any record of the Plaintiff's Citizen's Complaint and consequently had no

ability to resolve the underlying complaint.  Plaintiff's declaration thereafter sets forth a fairly

long and detailed account of Plaintiff's dealings with the FBI, with officials from Merced

County, and with the California Attorney General regarding, apparently, his claim of

unreasonable force and the non-response he experienced to his Citizen's Complaint.

The second category of facts alleged in Plaintiff's declaration in support of his

proposed sur-reply and the exhibits thereto deal with Plaintiff's contentions regarding the

alleged tampering of the Merced County Grand Jury.  Again, the facts alleged consist of a

recounting of Plaintiff's conversations with FBI, Merced County officials and the Attorney

General.  The court notes that Plaintiff's allegations with regard to the complaint he had

presented to the Grand Jury  have been and continue to be somewhat ambiguous.  The court

is not really clear on whether Plaintiffs Grand Jury complaint was about the alleged non-

response of officials to the "death threats" or whether it concerned Plaintiff's claims of Fourth and First Amendment violations, or both. It appears to the court that, in pursuing his allegations concerning Grand Jury tampering, Plaintiff was, or attempted to be, in contact with essentially the same people and agencies.

The third category of factual allegations set forth in Plaintiff's declaration in support of the proposed sur-reply consists of a fairly long narrative recounting communication had between Plaintiff and Mr. Leon Panetta in 2003, during which time Mr. Panetta was Attorney General of California. The narrative presented has something to do with proceedings involving Plaintiff before the Superior Court of Monterey County. The relevance of this narrative to the instant case is completely obscure.

The court has two observations regarding Plaintiff's motion to file a sur-reply. First, having thoroughly reviewed all the factual information contained in the motion, the court concludes that nothing contained in the motion, in Plaintiff's declaration or in the exhibits attached thereto, has any relevance whatsoever to the motions currently before the court. The court has concluded that Plaintiff has not alleged a First Amendment violation against any Defendant; has determined that any claim alleging violation of Plaintiff's Fourth Amendment right against arrest without probable cause must be stayed; and has concluded that Plaintiff may proceed with regard to his Fourth Amendment claim for excessive use of force only as to those Defendants who actually participated in the conduct that constituted excessive force. Nothing presented in connection with Plaintiff's motion for leave to file sur-reply give the court reason to either enlarge or narrow those determinations or conclusions.

Second, the court feels compelled to admonish Plaintiff that whatever any person or entity has, or has not, done to resolve Plaintiff's complaints regarding the alleged violation of his Fourth Amendment rights against excessive force prior to this action; such action or inaction does *not* constitute a separate infraction of Plaintiff's rights nor is it evidence of anything relevant to this action. Just as Plaintiff does not have a constitutionally guaranteed right in any conclusion reached by a grand jury concerning the conduct of third persons, Plaintiff does not suffer any separate constitutional harm if the original complaints of

42

1    constitutional harm do resolve at the local, non-judicial level.  To the extent Plaintiff may

2    seek to impose liability in this action on any person or entity because they failed to accord

3    sufficient time or consideration to Plaintiff's original claims of constitutional harm, such an

4    effort will be quickly dismissed.  Having filed his claim for violation of his constitutional

5    rights in this court, Plaintiff is entitled to a resolution of those original claims only in this

6    forum and in this forum only.

7            The court concludes that Plaintiff's motion to file sur-reply to the reply of the Merced

8    County Defendants to their motion to dismiss is without merit.  The motion will therefore be

9    denied.

10                                   **CONCLUSION AND ORDER**

11           Plaintiff has alleged several claims against a number of Defendants, but the court

12   concludes that, of these many claims, only one may go forward at this time.  Plaintiff has

13   alleged claims of unreasonable use of force under the Fourth Amendment against Defendants

14   Picinich and Parker that are sufficient to withstand Defendants' motion to dismiss.  Plaintiff

15   may proceed with this claim and no others.  While Defendants have raised substantial issues

16   regarding the sufficiency of Plaintiff's claims for violation of his rights against arrest without

17   probable cause, the court cannot consider those claims or Defendants' responses at this time.

18   Plaintiff's claims of violation of his rights under the First Amendment are completely without

19   merit as are his claims for conspiracy. At this time, Plaintiff may proceed on his claims of

20   excess use of force as to the Defendants who actually participated in the conduct that

21   constituted unconstitutional use of force against Plaintiff.  So far as the court can determine,

22   those Defendants are Picinich and Parker only.

23

24           THEREFORE, in consideration of the foregoing, it is hereby ORDERED that:

25   1.     Defendants' motions to dismiss as to Defendants McGhee, Padron, Catholic Diocese

26           of Fresno, Los Banos Enterprise, Lieb, Pride and  McClatchy Newspapers are

27           GRANTED.  These Defendants are hereby DISMISSED as to each and every claim

28           set forth in Plaintiff's FAC with prejudice.

                                                  43

2. Defendants' motions to dismiss as to Defendants Morse and Turner are hereby GRANTED. These Defendants are hereby DISMISSED as to each and every claim set forth in Plaintiff's FAC with prejudice.

3. Defendants' motions to dismiss as to Defendants County of Merced, Picinich, Pazin, Jaskowiac, Hill, Leuchner, O'Banion, City of Los Banos, Brizzee, and Parker are GRANTED as to Plaintiff's claims for relief as set forth in Plaintiff's first claim for relief for violation of his rights under the First Amendment are hereby GRANTED. These Defendants are DISMISSED as to Plaintiff's first claim for relief with prejudice.

4. Defendants' motions to dismiss as to Defendants County of Merced, Picinich, Pazin, Jaskowiac, Hill, Leuchner, O'Banion, City of Los Banos, Brizzee, and Parker are hereby STAYED as to Plaintiff's claim for unlawful arrest in violation of the Fourth Amendment as set forth in his third claim for relief. Any party having notice of the disposition of all of Plaintiff's criminal cases currently pending in state court that are relevant to this action shall provide notice of same to this court prior to, or concurrently with, any motion for decision on Defendants' motion to dismiss Plaintiff's claims for arrest without probable cause.

5. Defendants' motions to dismiss as to Defendants County of Merced, Pazin, Jaskowiac, Hill, Leuchner, O'Banion, City of Los Banos, and Brizzee are hereby GRANTED as to Plaintiff's claims for violation of his rights under the Fourth Amendment against application of unreasonable force with prejudice.

6. The Motions of Defendants Picinich and Parker to dismiss as to Plaintiff's claim for violation of his rights against unreasonable application of force under the Fourth Amendment are hereby DENIED.

7. Any claims by Plaintiff as set forth in his FAC against any Defendant that are not expressly stayed or denied as set forth in items 1 through 6, above, are hereby DISMISSED with prejudice.

8. Plaintiff's motion to further amend his First Amended Complaint is hereby DENIED

44

except that he may file an amended pleading to clarify alleged facts pertaining to his

claim for unreasonable use of force against Defendants Picinich and Parker.

9.    The motion of Connie McGhee to quash service of process is hereby DENIED as

moot.

10.   The motion to strike by Defendant City of Los Banos is hereby DENIED as moot.

11.   Plaintiff's motion to file sur-reply to the reply of the Merced Defendants to their

motion to dismiss is hereby DENIED.


IT IS SO ORDERED.

Dated:    January 10, 2012                    _____

                                        CHIEF UNITED STATES DISTRICT JUDGE

45