UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EUGENE E. FORTE,

        Plaintiff,

   v.

COUNTY OF MERCED, *et al.*,

        Defendant.

                           /

Case No. 1:11-cv-00318-AWI-BAM

**ORDER GRANTING DEFENDANTS'
MOTIONS TO COMPEL;**

**ORDER DENYING DEFENDANTS'
MOTIONS TO DISMISS, WITHOUT
PREJUDICE;**

**ORDER DENYING PLAINTIFF'S
REQUESTS FOR JUDICIAL NOTICE;**

**ORDER STAYING DISCOVERY UNTIL
OCTOBER 14, 2014**

## I.     INTRODUCTION

       Currently before the Court are Defendants' Motions to Compel further Federal Rule of Civil Procedure Rule 26 disclosures. (Doc. 227, 228.) Defendants argue that Plaintiff Eugene Forte ("Forte") failed to timely submit his disclosures, and that Forte's supplemental disclosures remain deficient.  Defendants also request Forte's complaint be dismissed as a sanction for Forte's conduct towards counsel for Defendants and the Court.  *Id.* Forte opposed the motions, and Defendants filed reply briefs. (Doc. 246, 247, 249, 250, 251.)

       The Court heard oral arguments on September 19, 2014. Eugene Forte appeared in pro per. Counsel Roger Matzkind and Rayma Church appeared for the various Defendants.  Having carefully considered the parties' briefs, arguments presented at the September 19 hearing, as well as the entire record in this case, the Court (1) GRANTS Defendants' Motions to Compel, and (2) DENIES Defendants' Motions for terminating sanctions, without prejudice.

## II.   BACKGROUND

**A.   Factual Background**

There are two discrete claims that remain in this case, both of which concern instances where Forte was arrested by the police.[1] The first arrest occurred on February 24, 2009, when Forte attended what was scheduled to be a case management conference for a case pending in superior court (the "February 24 Arrest"). The case management proceedings were set before a pro tem judge, the now dismissed defendant James Padron. Forte objected to a pro tem judge presiding over the case management conference.  A dispute developed between Forte and Judge Padron, wherein Forte demanded an explanation why the proceedings were to be before a pro tem judge. Judge Padron declined to answer and told Forte that the conference had been rescheduled and that Forte was required to leave chambers or be removed.

According to Forte's Complaint, Forte vacated the chambers and waited outside Judge Padron's chambers for Judge Padron. While waiting outside Judge Padron's, Forte summoned police to help him perform a "citizen's arrest" on Judge Padron. The legal basis for the contemplated citizen's arrest is not explained. Forte's Complaint then discribes what happened in the hallway outside the Judge Padron's chambers while Forte was waiting to make his citizen's arrest, but the result is that Forte was ultimately placed in custody as soon as he attempted to confront Judge Padron. Forte alleges that his arrest was accomplished by means of excessive force, without probable cause, and in violation of his constitutional rights.

---

[1] Forte filed a complaint alleging various Section 1983 causes of action against dozens of defendants.  These allegations concerned a myriad of factual allegations not discussed within, which Forte alleges is linked by a overarching conspiracy against Forte.  The vast majority of those claims were dismissed.  (Doc. 96.)  The only allegations discussed within concern Forte's claims that survived Defendants' Motions to dismiss. Relatedly, Forte has made five separate requests for Judicial Notice, requesting the Court take notice of forty-five exhibits.  (Doc. 252-53, 258-260.)  Those requests are DENIED. Forte does not offer any legal authority or argument as to why these exhibits should be judicially noticed, nor does Forte attempt to explain how these exhibits are in any way relevant to the two claims that remain in this case, or the two Motions before this Court. Rather, these documents are offered in support of Forte's theory that he faces a grand conspiracy involving local governments, police forces, state and federal courts, as well as non-state actors.  These theories have been squarely rejected, and are not relevant to the two discrete claims that remain in this case, nor are they relevant to Defendants' Motions.  *See generally,* Memorandum Opinion and Order on Defendants' Motion to Dismiss Plaintiff's Complaint, Doc. 96.

Forte's second arrest – wholly unrelated to the February 24 Arrest – occurred when Forte, his wife and son went to the Los Banos branch of the Merced County Superior Court on July 21, 2009, on a matter pertaining to his son's traffic citation (the "July 21 Arrest"). Forte had an audio recorder with him at the time and was initially barred from entry by the court guards. Eventually, Defendant Picinich determined that Forte could enter the court with the recorder but could not take the recorder into a courtroom. Forte argued that he was entitled to take the recording device into a courtroom, but could not turn it on without permission of the judge. Forte then narrates a fairly lengthy discussion over the recording device between Forte and Picinich. The conversation apparently ended when Forte told Picinich that Picinich had bad breath. Forte alleges at that point, Picinich forced Forte to the ground and, with the aid of officers Hill and Meldon, handcuffed Forte.  Forte alleges excessive force was used both during the handcuffing and later as Forte was taken to a holding area. Forte further alleges that he was never told that he was being placed under arrest nor was he advised of his Miranda rights. Forte alleges he required hospital treatment for injuries suffered and additional medical expenses as a result of his treatment.

**B.      Background Relevant to Defendants' Motion for Terminating Sanctions**

Generally, Forte's arguments and submissions are characterized by a familiar pattern of allegations that some governmental entity or person did not respond favorably to him, and then alleging, based on nothing more than speculation, that whatever setback he experienced was the result of a grand conspiracy against him. This theme has resulted in a pattern of behavior that, to put it mildly, has resulted in uncivil, unprofessional, insulting, and otherwise inappropriate behavior towards both opposing counsel and this Court.

For the last two years, this Court has tolerated Forte's sanctionable conduct, including ad hominem attacks on opposing counsel and this Court, and endless accusations of a fraudulent conspiracy that is completely untethered from Forte's claims.[2] The Court has repeatedly expressed its

---

[2] *See, e.g.,* Doc. 113 (questioning whether Judge Ishii's appointment to the bench, as well as his rulings in this case, demonstrates fraudulent political back dealings; questioning the Court's integrity; lambasting the Court's previous decisions) (October 1, 2012); Doc. 117 ("I used to give the court and judges respect according to their office . . . . However, after finding that instead of doing their duty, they cover up for the defendant/public officials that by all neutral accounts are engaged in a tyrannical assault upon me, I no longer afford to give such benefit of the doubt. . . . Be that now

concerns over Forte's ability to conduct himself in a manner that maintains the integrity of these proceedings.[3] Undeterred, Forte has used virtually every filing with the Court and communication with opposing counsel as another opportunity to undermine the integrity of these proceedings with his uncivil and insulting behavior.

Subsequently, Forte's conduct towards opposing counsel and this Court graduated from inappropriate to unacceptable.[4] On April 30, 2014, this Court struck Forte's most recent filing because it was "permeated with offensive commentary." (Doc. 224.) The Court reminded Forte that "Federal Rule of Civil Procedure 11(b) forbids a party from submitting a pleading, motion or other paper for 'any improper purpose, such as to harass.'" Forte was admonished that "continued use of vulgar and

---

the case, undeserved respect is no longer given. The courts and law enforcement have made a mockery of American ideals.") (November 21, 2012); Doc. 120 (referring to opposing counsel's work as "sloppy," and calling opposing counsel a "dunce.") (April 10, 2013).

[3] See, e.g., Doc. 148 ("If there was any doubt as to the merit of the court's concern regarding Plaintiff's willingness or ability to do his part to maintain the integrity of the court's proceedings, an examination of Plaintiff's motion for leave to appeal and his prior motion and requests for recusal of Judge Ishii will allay any such doubts."); Doc. 149 ("there is ample reason to have concern over Plaintiff's ability to conduct his part of the proceedings so as to assure the integrity of the court's proceeding. . . . If Plaintiff truly does have 'untethered disrespect' for all the above individuals and institutions, the court finds it is reasonable to question Plaintiff's ability to engage in the processes of this court on terms that will be non-prejudicial to the opposing party and in conformity with the court's duty to maintain decorum.")

[4] See, e.g., Doc. 144 ("Ishii was having his injudicious, prejudicial, shenanigans to obstruct justice for the herein defendants . . .It is abundantly clear that [Judge Ishii] nor his clerks have head one fricken' document filed by plaintiff . . . quite candidly, this court already stinks like rotting fish from [Judge] Ishii's conduct, and this is just some more stench that needs to be addressed on record . . . But of course, Ishii, et al., are going to lie through their teeth . . . ." Plaintiff also referred to opposing counsel as those who "float[ed] to the top of the cesspool.") (June 21, 2013); Doc. 145 ("Does the injudicious Ishii after having his tongue nailed to the floor . . . . Ishii is full of bird poop and intentionally abusing his discretion for the benefit of defendants. . . . Plaintiff should be able to stop at this point without the need for expending any more judicial resources, if this court were actually a court of law, not a kangaroo court committing intrinsic and extrinsic fraud upon the plaintiff with the defendants. . . . Plaintiff could take the three highlighted points of Ishii in his order and cram them one by one up the anal cavity of Ishii in a legal sense, along with all the other prejudicial babblings in such order . . . . There is no reason for plaintiff to afford this court one iota of respect. It deserves none. . . . This court had no integrity and therefore this plaintiff has no reason to be respectful.") (June 24, 2013); Doc. 146 ("When a purportedly experienced wise judge makes such blatantly injudicious prejudicial mistakes consistently throughout litigation, then it is known that he is not a stupid judge, but a crooked one.") (June 25, 2013); Doc. 167 ("Your honorable Judge Ishii and his wayward clerks that are orchestrating a fraud upon the court for defendants … will now have its head handed to it once more. . . . Judge Ishii is nothing more than a criminal in a black robe.") (August 26, 2013); Doc. 219 ("Magistrate McAuliffe, Magistrate Snyder will be metaphorically analogized in an upcoming book and video entitled, "Gene's Side of the Story, The Raping of America" as the judicial whores of Babylon, servicing their high priest masters Judge Ishii, Lawrence O'Neille, and Justice Stephan Kane similar to the whores that traveled with the Roman army. . . . [Judge] Snyder seems like a babbling baboon . . . . What a judicial putz.") These are just a small sampling of Forte's constant barrage of inappropriate conduct.  Virtually every single one of Forte's filings for the last two years contains some form of disrespectful commentary.

abrasive language will result, at a minimum, in those documents being stricken, and may result in sanctions up to and including dismissal of this action with prejudice." *Id.*

Yet again, Forte was undeterred.  The next day, Forte resumed his refrain of leveling inappropriate remarks at judges and opposing counsel, and accusing the judges in this Court of committing a fraud against him.[5] (Doc. 220) Forte's communications with opposing counsel also evolved from hostile to insulting, threatening and utterly unacceptable.[6] In sum, Forte has demonstrated a commitment towards undermining the integrity of this Court and these proceedings with completely unacceptable behavior directed towards the Court and opposing counsel.

**C.   Background Relevant to Defendants' Motions to Compel**

On April 29, 2014, this Court held a case management conference. (Doc. 221.)  Relevant to Defendants' Motions to Compel, the Court ordered that initial disclosures were to take place on or before June 30, 2014.  (Doc. 222.)  Forte served his Rule 26 disclosures on or about July 2-3, 2014. Aside from lateness, Defendants allege the disclosures were deficient in several respects, including a failure to state the addresses and subjects of information of the 56 witnesses listed, a failure to set forth the locations of documents, as well as a failure to set forth any of Forte's damages information.

After a series of contentious meet and confers[7] and a supplemental disclosure and the filing of

---

[5] Indeed, less than twenty-four hours after the Court struck a document Forte filed that analogized two female judges of this Court to "whores that traveled with the Roman army" Forte then followed up on that comment by "suggest[ing] that McAuliffe 'just keep following the Roman soldiers babe . . . .'" (Doc. 220, 4: 14-17.)

[6] Defendants' counsel provided several sample email communications from Forte demonstrating the extent of Forte's incorrigible behavior. *See, e.g.,* Forte's email dated July 14, 2014, Doc. 227, Attach. 5 ("BTW you might find the court a little less receptive to your horseshit bully tactics.  You've got Judge Ishii and his clerks in a whole big pile of crap.  You can't be the first any longer, but you can be the next dirt bag whose tongue I'm going to nail to the floor."); *Id.* at Attach. 6, dated July 14, 2014 ("Hiding behind Rayma's skirts while you double team me? What a man! (LOL) BTW, in an effort to help mend bridges between us I suggest you go here, it may help you." (the underlined "here" was a hyperlink to a website providing information for acne treatment)); *Id.* dated July 14, 2014 ("I consider your scummy group of officers of the court . . . unworthy of the slightest bit of respect.  You will get none from me and there will be a day when you may be running for cover from citizens who very well may want to have you metaphorically swinging from the gallows of justice. When it happens I certainly will have a popcorn and a coke while watching the show! (LOL)"); Counsel's requested, "Please stop this I do not want to be involved in this kind of communication." Doc. 228, Attach 4, p. 17, dated July 14, 2014 and in response, Forte stated: "Then don't try to double team me and keep your yap shut about how I deal with Matzkind!"

[7] For example, when Defendants' counsel, Rayma Church, sent a letter by email to Forte concerning the deficiencies in his initial disclosure, Forte sent several emails that failed to address the merits of Ms. Church's claims, instead referring to opposing counsel as "scummy" and "unworthy of respect," and expressed "laugh out loud" joy at the prospect of watching opposing counsel "metaphorically swinging from the gallows of justice." (Doc. 228, Attach. 3.)

these motions, Mr. Forte served a Second Supplemental Disclosure on September 5, 2014. The Second Supplemental Disclosure was 20 pages in length, listed 104 witnesses, 11 categories of documents, 10 persons or entities with additional documents (not in Plaintiff's possession), and vaguely explained Plaintiff's claims for damages. An accompanying document production was made by referring Defendants' counsel to a Dropbox cloud account, which consisted of 58 folders with more than 5,000 documents, all of which were represented to be the items Plaintiff listed in Rule 26 Disclosure.

Forte has made clear that the Second Supplemental Disclosure includes witnesses, documents, and damages predicated upon claims and legal theories that are not at issue, and against individuals and entities who are not parties to this case.  Indeed, the introduction to Forte's Second Supplemental Disclosure makes plain that the information referred to therein goes well beyond the claims and parties presently involved in this case.[8] Forte explains this broad inclusion of information with his stated intention to amend his complaint to add those claims, theories, and defendants that have been previously dismissed, or were never at issue.

### III.    DISCUSSION

**A.    Defendants' Motions to Compel**

####    1.    Legal Standard

The court has broad discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). The scope of discovery is governed by Rule 26, which allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure requires a party to provide to the

---

[8] The Second Supplemental Disclosure begins: "Plaintiff, Eugene E. Forte (Forte) hereby supplements his initial disclosures pursuant to Federal Rules of Civil Procedure, rule 26 (a) (1) and discloses the following based upon the present causes of action in this case and in anticipation of other causes of actions which will be added and defendants that will be named and added in a Motion to Amend the complaint . . . ." (Doc. 251, Attach. 1, 1: 18-21.) However, the time to amend his complaint, January 31, 2014, has long since expired.  (Doc. 189).  Indeed, at a scheduling conference held on November 4, 2013, Forte pleaded with the Court to afford him what the Court considered an excessive amount of time to file an amended complaint. In giving Forte every opportunity to pursue amendment, the Court did not schedule the remainder of the case and instead, granted Forte two months to amend his complaint.  By that time the case had been pending for almost three years, and the majority of the claims and defendants Forte sought to re-allege in his complaint had already been dismissed. Thus, there is no reasonable basis for Forte to believe his initial disclosures which included such claims are appropriate.

other party (i) the identity of individuals likely to have discoverable information, "along with the subjects of that information," that the disclosing party may use to support its claims or defenses; (ii) a copy, or description by category of all documents that the disclosing party has in its possession, custody or control and may use to support its claims and defenses (except for purely impeachment purposes); and (iii) a computation of each category of damages claimed by the disclosing party. This initial disclosure must be based upon information reasonably available to the disclosing party at the time of the disclosure. Fed. R. Civ. P. 26(a)(1)(E). A party is not excused from its initial disclosure obligation merely because the party has not yet fully investigated its case. *Id.*

"[D]isclosure requirements are to be applied with common sense in light of the principles of [Fed.R.Civ.P.] Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish"—"the just, speedy, and inexpensive determination of every action and proceeding." *Avage Technologies U.S., I.nc., v. Emcore Corp.,* 2009 WL 5108386 (N.D. Cal. 2009) (internal quotations omitted, citing Fed. R. Civ. P. 26(a) advisory committee's note (1993); Fed. R. Civ. P. 1.) "[G]uidance as to the adequacy of the disclosures must be gleaned from Rule 26(a)'s purpose: to accelerate the exchange of basic information that is needed in most cases to prepare for trial or make an informed decision about settlement. *City and County of San Francisco v. TutorSaliba Corp.,* 218 F.R.D. 219, 220 (N.D.Cal. 2003) (internal quotations omitted).  Ultimately, "[t]he litigants should not indulge in gamesmanship with respect to the disclosure obligations." *U.S. ex rel. Englund v. Los Angeles County,* 235 F.R.D. 675 (E.D. Cal. 2006).

 "[W]hile a party is not required to provide a detailed narrative of the potential witness' knowledge, the Rule 26(a)(1)(A) disclosure should provide enough information that would allow the opposing party to help focus the discovery that is needed and to determine whether a deposition of a particular person identified as a potential witness might be necessary." *LT Game Intern, Ltd. v. Shuffle Master, Inc.,* 2013 WL 321659 (D. Nev. 2013) (citing, *Lipari v. U.S. Bankcorp, NA,* 2008 WL 2874373, *2 (D.Kan. 2008); *See also, City and County of San Francisco v. Tutor–Saliba Corp.*, 218 F.R.D. 219, 221 (N.D.Cal. 2003) (disclosures function "to assist the parties in focusing and prioritizing their organization of discovery."); *Hertz v. Luzenac Am., Inc.,* No. 04–cv–1961–LTB–CBS, 2006 WL 994431, at *7 (D. Colo. Apr. 13, 2006) ("[D]isclosures should provide the opposing

1    party with enough useful information to make informed decisions regarding discovery and trial

2    preparation").

3              **2.        The Motion to Compel Should be Granted**

4              Defendants argue the Second Supplemental disclosure is overly burdensome. Defendants argue

5    that nearly all of the witnesses and documents disclosed by Forte do not concern claims that are at

6    issue, and it would be prejudicial to force Defendants to mine through thousands of documents, and

7    speculate on the potential relevance of over 100 potential witnesses, when the only claims at issue

8    concern two discrete events:  the February 24 and July 21 arrests.

9              Forte's response to this argument is difficult to divine. The vast majority of Forte's opposition

10   does little more than make ad hominem attacks and repeats his familiar refrain of fraudulent conduct

11   by the Court and a universe of other private and state actors. To the extent the Court can discern legal

12   substance in Forte's opposition, Forte suggests that he provided the information he had available to

13   him at the time, and that Forte has provided supplemental disclosures. At oral argument, Forte argued

14   the vast number of witnesses and documents pertain to the overarching conspiracy theory he

15   continuously advances as to the dismissed claims and to rebut what he contends Defendants will

16   present as defenses.

17             Plaintiff has used the Rule 26(a)(1)(A) disclosures to expand, confuse, and multiply the claims

18   at issue in this litigation.  Defendants properly have sought the Court's intervention of compel plaintiff

19   to cull his disclosure.  The Court GRANTS Defendants' Motions to Compel further Rule 26

20   disclosures. Forte's first initial disclosures were globally defective.  The disclosures were not timely

21   pursuant to the Court's case management order.  Forte's witness disclosure did not provide an address

22   or telephone number for any of his 56 witnesses, nor did Forte disclose the subjects of the witnesses'

23   information. Moreover, much of Forte's initial disclosures included a universe of information

24   irrelevant to the claims at issue; therefore, the initial disclosure obfuscated the information relevant to

25   Forte's claims. *See,* Fed. R. Civ. P. 26(b)(1); *See also, Ollier v. Sweetwater Union High School Dist.,* -

26   --F.3d---, 2014 WL 4654472 (9th Cir. 2014) ("An adverse party should not have to guess which

27   undisclosed witness may be called to testify.")*; Jimena v. UBS AG Bank.,* 2010 WL 4363193 (E.D.

28   Cal. 2010) ("Disclosure such as this would require the parties to be omniscient and create the type of

                                                    8

litigation gamesmanship that initial disclosures were designed to eliminate."); *City of Colton v. American Promotional Events, Inc.,* 277 F.R.D. 578 (C.D. Cal. 2011) (discovery rules are "generally designed to facilitate discovery of relevant information by preventing 'attempts to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents.' ") (quoting *Armor Screen Corp. v. Storm Catcher, Inc*., 2009 WL 291160 (S.D. Fla. Feb.5, 2009); *see also, American Floral Services, Inc. v. Florists Transworld Delivery Ass'n*., 107 F.R.D. 258, 260-61 (N.D. Ill. 1985) (The court concluded that requiring defendant to sort through 200 individuals "smack[ed] of a needle-in-haystack search: time consuming, wasteful and expensive.") Lastly, Forte wholly failed to offer a damages computation both in his initial disclosures as well as his first supplemental disclosures.  (Doc. 228, Attach. 3.)

Forte's Second Supplemental Disclosure represented an improvement over his previous efforts, but remains noncompliant with Rule 26. Specifically, Forte's Second Supplemental Disclosure willfully ignores the narrow scope of this case.  This case is not about an alleged conspiracy.  Forte's conspiracy theories are explicitly not at issue, and have been summarily rejected.[9] This case is about two discrete arrests. Like the majority of Forte's court filings, Forte's initial disclosures and their supplements conceal meaningful information within an ocean of speculative and irrelevant information.  Requiring Defendants to mine through thousands of irrelevant documents and over 100 irrelevant witnesses is overly burdensome and contrary to the spirit of discovery, which is designed to promote the orderly and expedient resolution of claims.

---

[9] (Doc. 96, 10: 24-26) ("The court has reviewed Plaintiff's allegations  regarding the conspiracy or common scheme … and finds that at its core, the allegations are based on nothing more than innuendo and rank speculation."); Doc. 96, 12:12 – 13:1 ("Plaintiff's claims of conspiracy are wholly inadequate . . . ."); Doc. 96, 13: 18-20 ("the concoction of a narrative that imagines the evil motives of other actors is insufficient to establish the conspiracy . . . ."); Doc. 96, 13: 26-28 ("No conspiracy is needed and none will be presumed based only on the motivations Plaintiff attempts to project on others."); Doc. 96, 18: 21-22 ("Plaintiff cannot transmute the normal process of criminal investigation and prosecution into a conspiracy against him by simply labeling it so."); Doc. 96, 20: 8-11 ("Plaintiff is repeating the by now familiar pattern of alleging facts to show that some governmental entity or person did not respond favorably to him and then alleging, without any further proof, that whatever setback he experienced was the result of a conspiracy against him.") Doc. 96, 24: 10-13 ("In a style that echos Plaintiff's claims against most of the other Defendants, the collusion between the sheriff's deputies and Padron is alleged to be part of a pervasive conspiracy to prevent Plaintiff from the exercise of his First Amendment rights."); Doc. 96, 40: 13-14 ("Again, Plaintiff's claim of conspiracy is based on nothing but the bare assertion of its existence." Doc. 96, 43: 18-19) ("Plaintiff's claims of violation of his rights under the First Amendment are completely without merit as are his claims for conspiracy")  Moreover, even if Forte's conspiracy theories were not already explicitly rejected, this Court again finds there is no relationship between the myriad of unrelated wrongs Forte complains of, and the two remaining claims at issue.

9

For instance, in his Second Supplemental Disclosure, Forte listed "case documents" in numerous state and federal proceedings in which Forte is or has been involved.[10] This list includes cases and events outside the subject arrests, and the documents disclosed comprise 44 GB of documents unrelated to these arrests. Forte also lists 104 witnesses, most of whom he identifies as "impeachment" witnesses. Rule 26 does not require impeachment witnesses to be identified, and including them among Forte's properly disclosed witnesses is overly burdensome and smacks of a needle-in-a-haystack approach to discovery. Indeed, when coupled with Forte's increasingly hostile conduct towards Defendants' counsel, Forte's initial disclosures appear to be a deliberate effort to overburden Defendants and stymie the orderly resolution of this case.

Similarly, Forte's damages calculation ignores the scope of this case. Forte claims entitlement to compensation for having to deal with every corrupt individual involved in the overarching conspiracy for the last fifteen years. Doc. 251, Attach. 1 (Forte's "starting point" for his damage estimate requires Defendants to compensate him for "every interaction, conversation, document (court filed or otherwise, letter, email, or telephone call with law peace officers, custodial officers and/or any other public officials [that] evince a loss of income, an emotional cost of pain and suffering, etc., and a loss of time which he could have been spent [sic] in the 'pursuant of happiness, life and liberty," over the last fifteen years (or 2003 to present, as the damage estimate is internally contradictory)). Forte's damage estimate concludes with the suggestion that because at some point in the past, Forte made $585,000.00 a year in salary, Defendants should compensate him in that amount for the past fifteen years that Forte has been subjected to the alleged conspiracy – totaling over $8,000,000.00. This disclosure is not tethered to the discrete claims and parties at issue in this case. Forte may not claim damages that bear no relationship to the subject arrests, and there is no possibility that Forte can claim any damages that predates the February 24, 2009 arrest. This disclosure in and of itself borders on bad faith.

Forte also argues he will be amending his complaint to place those theories and individuals at issue. Whether Forte is later permitted to expand this litigation beyond its current scope does not

[10] See for example, Doc. 250-1 p. 38 ("3. Case documents in Eastern Federal Case Forte v. Jones, 1:11-00718 AWI; 4. Case documents in Forte v. Albov, M54914.")

inform the Court's inquiry into whether Forte's disclosures comply with Rule 26 as the claims and issues in this case are currently set. The claims before this Court do not hinge on whether there is a conspiracy against Forte, and the Court will not indulge Forte's improper efforts to expand the scope of this litigation.  Whether there was probable cause to make the subject arrests, and whether excessive force was used in affecting those arrests, bears no relationship to an alleged conspiracy against Forte spanning fifteen years and involving dozens of individuals and entities.

Forte also argues that because Defendants have disclosed all of the fifteen years of "smut" against Forte, Forte's inclusion of his "rebuttal" information was relevant and appropriate under Rule 26. (Doc. 251-1, p. 22-23.) To the contrary, Rule 26 requires Forte to disclose witnesses, documents and damages for his claims. Fed. R. Civ. P. 26(a)(1)(A). Forte's claims are for excessive force and unlawful arrest concerning the February 24 and July 21 Arrests. Forte's claims do not implicate a grand conspiracy in any way.  This Court has not been provided with Defendants' disclosures, but even assuming they included these past cases and issues, those circumstances relate to Defendants' defenses. Defendants are obligated to disclose their defenses.  Fed. R. Civ. P. 26(a)(1)(A). Nonetheless, Defendants are entitled to know, through Forte's initial disclosures, what Forte intends to use to prove his case in chief.  Disclosing voluminous and irrelevant "rebuttal" information in anticipation of a defense does not satisfy Forte's Rule 26(a)(1) burden.

Forte will be required to provide a supplemental disclosure. The supplemental disclosure should identify documents, witnesses, and damages for Forte's case in chief concerning the February 24 and July 21 Arrests. In other words, the witness disclosures and document disclosures will include only those individuals or documents Forte may call or rely upon to *prove his claims, i.e.,* in making his prima facie case, for lack of probable cause and excessive force, with respect to the February 24 and July 21 Arrests.  Witness disclosure shall include the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information. The supplemental disclosure will not include witnesses Forte plans to use for impeachment purposes. Document disclosure will include documents for Forte's case in chief concerning the February 24 and July 21 Arrests. The supplemental disclosure will also provide a new damages calculation. The damages calculation will relate to the February 24 and July 21 Arrests only.

Finally, the Court orders that discovery – with the exception of Forte's supplemental disclosure – is hereby STAYED until Forte serves his supplemental disclosures on October 14, 2014. Under Rule 26(c) of the Federal Rules of Civil Procedure, a district court may, for good cause shown, issue a protective order regarding discovery. A court may enter such an order sua sponte. *See e.g., McCoy v. Southwest Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002); *Coleman v. Schwarzenegger,* 2007 WL 4276554 (E.D. Cal. Nov.29, 2007) ("Under Federal Rule of Civil Procedure 26(c), and in the inherent discretion of a court to manage its own discovery, a court may sua sponte enter a protective order for good cause shown. A protective order may include an order that "discovery not be had.") The Court is staying all further discovery in order to afford Forte every opportunity to comply with this Order, without interference from the many other vicissitudes of litigation. [11]

Forte shall disclose the names, addresses, and telephone numbers of witnesses Forte may use to support his unlawful arrest and excessive force claims. Forte shall disclose documents witnesses Forte may use to support his unlawful arrest and excessive force claims. Forte shall disclose his damages estimate based on the February 24 and July 21 Arrests only. Forte shall provide serve his supplemental disclosures on Defendants on or before **October 14, 2014.** Failure to provide a supplemental disclosure that complies with this Order will result in sanctions, up to and including dismissal of Forte's claims with prejudice.

### 3. Monetary Sanctions

Defendants move for reasonable attorneys' fees and costs incurred to bring this motion. "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3)(A). "If the motion is granted—or if the disclosure ... is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney fees." Fed.R.Civ.P. 37(a)(5)(A).

The failure to comply with Rule 26(a) disclosure requirements may result in the imposition of

---

[11] If at some point later in the litigation this limited stay impacts the schedule of the case, the Court will take up that issue at that time.

sanctions pursuant to Rule 37. In relevant part, Rule 37(c)(1) provides as follows: If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard ... may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(iv).

This Court has considered Defendants' request for monetary sanctions. The Court has significant doubts that Forte has acted in good faith in making his Rule 26 disclosures. However, because Forte is proceeding in pro per and may not have fully understood the appropriate scope of his initial disclosures (i.e., limited to the false arrest and excessive force without "impeachments"), the Court will afford him the benefit of the doubt, and decline to exercise its discretion to award attorneys' fees.

**B.    Defendants' Motions for Terminating Sanctions**

Based on Forte's conduct towards opposing counsel and this Court, Defendants move for terminating sanctions against Forte pursuant to Federal Rules of Civil Procedure 16, 37, the Local Rules for the Eastern District of California, and the Court's inherent authority to sanction conduct abusive of the judicial process.[12]

**1.    This Court Has the Authority to Dismiss Forte's Claims**

There are a myriad of authority at the Court's disposal to curtail improper behavior by litigants and conduct detrimental to the integrity of judicial proceedings. The Court begins with Fed. R. Civ. P. 11. Rule 11(b) provides that "[b]y presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party

---

[12] At oral argument, Defendant requested that this matter be considered under The All Writs Act. "The All Writs Act, 28 U.S.C. § 1651(a), provides district courts with the inherent power to enter pre-filing orders against vexatious litigants." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). A district court must examine four factors, known as the *De Long* factors, before entering a pre-filing order: "First, the litigant must be given notice and a chance to be heard before the order is entered. Second, the district court must compile an adequate record for review. Third, the district court must make substantive findings about the frivolous or harassing nature of the plaintiff's litigation. Finally, the vexatious litigant order must be narrowly tailored to closely fit the specific vice encountered." *Id*. The motions before the Court were not noticed under The All Writs Act, and therefore, it will not be considered in this order.

certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: … (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." When evaluating the imposition of sanctions, Rule 11 requires the Court to consider not whether the party demonstrated subjective good faith in filing the document, but whether the party acted objectively reasonably in doing so. *G.C. & K.B. Investments v. Wilson,* 326 F.3d 1096, 1109 (9th Cir. 2003).

This Court also has the authority to sanction litigants who fail to comply with court orders. Specifically, Fed. R. Civ. P. Rule 41(b) authorizes courts to dismiss an action for failure to comply with a court order. Although that rule appears to contemplate that dismissal will be precipitated by a motion from the opposing party, a court may act sua sponte under Rule 41(b). *Link v. Wabash R. Co.*, 370 U.S. 626, 630, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962).

Pursuant to the Court's Local Rules, this Court has the authority impose any appropriate sanction to curtail abusive litigation tactics.  *See* E.D. Cal. L.R. 110 ("Failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("Failure to follow a district court's local rules is a proper ground for dismissal."); *Delange v. Dutra Constr. Co., Inc.,* 183 F.3d 916, 919 n. 2 (9th Cir.1999) (per curiam) (district courts enjoy "broad discretion in interpreting and applying their local rules"). Individuals proceeding in pro per are bound the Court's Local Rules just the same as licensed attorneys. *See* E.D. Cal. L.R. 183 ("Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law. All obligations placed on "counsel" by these Rules apply to individuals appearing in propria persona.")

Finally, this Court is authorized to sanction parties for improper conduct pursuant to its inherent power. *See Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence and submission to their lawful mandates." *Chambers v. NASCO*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting *Anderson v. Dunn*, 6 Wheat. 204, 277, 5

14

L.Ed. 242 (1821). A court's inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers,* 501 U.S. at 43, 111 S.Ct. at 2132. Accordingly, Federal courts have the inherent authority to sanction conduct abusive of the judicial process. *Chambers,* 501 U.S. at 43–45. Federal district courts have "inherent authority to sanction parties appearing before [them] for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower v. Field*, 973 F.2d 75, 81–82 (2d Cir. 1992). One available sanction is dismissal with prejudice of a plaintiff's claims. *Chambers,* 501 U.S. at 44–45 (citing *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31 (1962); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08 (1947)). District courts may exercise this power sua sponte. *Id.* (citing *Link,* 370 U.S. at 630–31).

However, because of their very potency, inherent powers must be exercised with restraint and discretion. *Chambers,* 501 U.S. at 44, 111 S.Ct. 2123 (quotation marks omitted). To be sanctionable under the Court's inherent power, the conduct must have constituted, or been tantamount to, bad faith. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Miller v. City of Los Angeles,* 661 F.3d 1024, 1036 (9th Cir. 2011); *Gomez v. Vernon,* 255 F.3d 1118, 1134 (9th Cir. 2001); *Fink v. Gomez,* 239 F.3d 989, 993–94 (9th Cir. 2001). Recklessness, when combined with an additional factor such as frivolousness, harassment, or an improper purpose, may also support sanctions. *See, Vernon*, 255 F.3d at 1134; *Fink,* 239 F.3d at 994. The extreme sanction of "dismissal is warranted where ... a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Anheuser–Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (citation omitted); *Leon v. IDX Systems, Corp.,* 464 F.3d 951, 958 (9th Cir. 2006).

"Bad faith" means a party or counsel acted "vexatiously, wantonly or for oppressive reasons." *Chambers,* 501 U.S. at 45-46, 111 S.Ct. at 2133.  Bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar assessment of attorneys' fees." *Mark Ind., Ltd. v. Sea Captain's Choice, Inc*., 50 F.3d 730, 732 (9th Cir. 1995) (internal quotation marks and citations omitted). Sanctions, then, are justified "when a party acts for an improper purpose—even if the act consists of making a truthful statement or a non-frivolous argument

1    or objection." *Fink v. Gomez,* 239 F.3d 989 (9th Cir. 2001).

2            **2.      Forte's Conduct Warrants Dismissal**

3            Forte's conduct in this case is deplorable, and warrants dismissal under Rule 11(b), 41(b),

4    Eastern District of California Local Rules, as well as the Court's inherent authority.[13]   The vast

5    majority of Forte's filings over the last two years violates Rule 11(b), which prohibits submitting

6    materials to the Court for an improper purpose.   As the Court has previously recognized, Forte is more

7    than capable of confining his submissions to relevant legal arguments that exclude ad hominem attacks

8    and vitriolic allegations of conspiracy.   Doc. 224, n. 1. Forte's decision to substitute insulting and

9    offensive commentary for legal argument appears a deliberate decision to harass, impugn, and to

10   otherwise disrupt the orderly resolution of this case.

11           Forte's conduct also warrants dismissal under Rule 41(b). Forte was previously admonished

12   "that continued use of vulgar and abrasive language will result, at a minimum, in those documents

13   being stricken, and may result in sanctions up to and including dismissal of this action with prejudice."

14   Doc. 224, 2: 3-5. The next day, and continuing with virtually every filing thereafter, Forte continued to

15   insult and disparage this Court, every judicial officer, and opposing counsel.   Forte appears to believe

16   that he is in compliance with the Court's admonishment so long as he refrains from hurling his most

17   disturbing insults towards judges, e.g., referring to judges as "criminals," "whores," or "baboons."

18   Forte is mistaken.   <u>The Court's previous admonishment was intended to correct all of Forte's</u>

19   <u>inappropriate behavior, including his malicious conduct towards opposing counsel. If there is any</u>

20   <u>confusion as to the Court's April 30, 2014 Order, it is cleared up here.   That Order applies to all of</u>

21   <u>Forte's conduct.</u>

22           Lastly, the Court would also be acting within its considerable discretion to dismiss Forte's

23   claims pursuant to its inherent authority to combat conduct abusive of the judicial process. Forte's

24   name calling, mudslinging, scandalous pleadings, and hostility towards opposing counsel undermine

25   the integrity of judicial proceedings. *See also, Sokolsky v. Rostron,* 2009 WL 2705881 (E.D. Cal.

26   2009) ("plaintiff engages in name-calling and hyperbole, which the court does not tolerate");

27   ────────────────

28   [13] The Court's authority to dismiss Forte's case under the Court's Local Rules would be for the same for the same reasons provided under Fed. R. Civ. P. 11(b) and 41(b).

*Alvarado Morales v. Digital Equipment Corporation*, 669 F.Supp. 1173, 1187 (D.Puerto Rico 1987) ("The federal courts do not provide a forum for mudslinging, name calling and 'privileged' defamation."); *Adams v. Nankervis*, 902 F.2d 1578 (9th Cir. 1990) ("Although dismissal was a drastic sanction, it was clearly appropriate . . . . [N]o court need tolerate the use of obscene, indecent, and scandalous pleadings"); *Wilkerson v. Butler,* 229 F.R.D. 166, 170 (E.D. Cal. 2005) (allegation is "impertinent" if it is not responsive or relevant to the issues; it is "scandalous" if it improperly casts a derogatory light on someone).

Aside from Forte's more egregious conduct, Forte fails to comprehend the role of the Court and the parties to litigation in a way that undermines the integrity of judicial proceedings. In proceedings before this or any court, the court acts as arbiter of disputes as to the law that governs the proceeding and acts as gatekeeper with regard to the relevance of facts that parties present to the court or seek to introduce into evidence. Courts have inherent authority to assure that the parties before the court abide by the court's determinations of law and decisions of relevance and that the parties adhere to norms of conduct that demonstrate respect for its orders. *See Halaco Engineering C. v. Costle*, 843 F.2d 376, 380 (9th Cir.1988) (court's inherent power of sanction exist to "insure the orderly administration of justice and the integrity of the court's orders"). Forte has ignored and disparaged every order of this Court, and continues to do so long after the issue is settled, as a matter of course.

Conduct undermining the integrity of judicial proceedings – name calling, accusing the Court of fraud, disparaging previous Court orders, a refusal to acknowledge previous court orders, over-the-top hostility and abusive tactics towards opposing counsel -- will not be tolerated.  Discussed above, and with dozens of other unmentioned examples in the Court's docket, Forte has engaged in conduct which disrupts the orderly administration of justice. While a court gives pro se litigants special consideration, pro se filings do not serve as an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already over-loaded court dockets.  "Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1057 (9th Cir. 2007)

The Tenth Circuit Court of Appeals has aptly described the Court's authority to deal with these

sorts of flagrant abuses:

> Plaintiff's briefs on appeal do little more than attempt to impugn (without basis) the integrity of the district judge. Such writings are intolerable, and we will not tolerate them. "Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates. This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." *United States v. Shaffer Equip. Co.,* 11 F.3d 450, 461 (4th Cir.1993). "[I]f the complaint or other pleadings are abusive or contain offensive language, they may be stricken sua sponte under the inherent powers of the court." *Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir.1981) (citing Fed.R.Civ.P. 12(f) ("[U]pon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.")). In *Theriault v. Silber,* 579 F.2d 302 (5th Cir.1978), the court dismissed an appeal with prejudice because the appellant's notice of appeal contained "vile and insulting references to the trial judge." Although recognizing the leniency typically given to pro se plaintiffs, the court stated: "This court simply will not allow liberal pleading rules and pro se practice to be a vehicle for abusive documents. Our pro se practice is a shield against the technical requirements of a past age; it is not a sword with which to insult a trial judge." *Id*. at 303.

*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005).

Based on the frequency and egregiousness of Forte's conduct, the Court would be well within its rights to dismiss Forte's claims with prejudice. However, the Court will decline to dismiss Forte's case, subject to the admonition below.

### 3. Forte's Final Warning

Forte's conduct has substantially interfered with the judicial process. Forte's refusal to focus his arguments on the claims that are *in fact* involved in this case has required the court to expend extra time and resources to deal with a constant flow of irrelevant, unnecessary and disparaging filings. This order is a perfect example, demonstrating the substantial time and expense required to perform the legal research, analysis, and writing to craft this document. The court's extremely heavy caseload simply does not afford the time that this motion and other dealings with Forte has taken.

Furthermore, this type of conduct interferes with one of the principal purposes of our court systems—to provide a safe, effective forum for resolving disputes that is characterized by civility. The courts are supposed to be a place where litigants can avoid the sort of vitriolic means of dispute resolution that occur outside of courtrooms. Likewise, parties resorting to the courts should not be required to endure the sort of verbal abuse that often renders ineffective and degrading efforts to

resolve disputes. Here, the court, court personnel, defense counsel and others have had to suffer Forte's foul language, ranting, accusations, and the like, all of which undermines the judicial process by rendering it little more than an unprincipled shouting or name calling match. No party, attorney or employees affiliated with them should have to put up with being disparaged, shouted at, or called names in order to accomplish their daily duties. The Court will not indulge this behavior by Forte or anyone else litigating a case on its docket.[14]  Prior orders which cautioned that pleadings will be struck have not curbed Forte's conduct.

There is one reason, and one reason only, that the Court affords Forte one final opportunity to cure and moderate his behavior.  This Court has not lost sight of the strong interest in resolving cases on the merits. By all indications, Forte will not permit this.  Rather, Forte has chosen to prove that he is a victim of the judicial process rather than a victim on the substantive merits.[15] Nonetheless, the Court will afford Forte one final opportunity to demonstrate he can treat the Court, opposing counsel, and these proceedings with the respect and decorum demanded by this Order, applicable statutes, the Court's Local Rules, and relevant case law.

Any further accusations by Forte aimed at impugning the integrity of opposing counsel or the Court will not be overlooked and will result in the dismissal of Forte's complaint. Ad hominem attacks by Forte leveled at opposing counsel or this Court will result in the dismissal of Forte's complaint.[16]

---

[14] The Court has received thousands of submissions from hundreds of pro se plaintiffs. None has even remotely approached the level of invective wielded by Forte in this action. As a self-proclaimed experienced litigator, Forte undoubtedly has been aware for many years of the proper conduct he must employ with respect to the Court and adversaries.

[15] Despite Forte's contentions to the contrary, Forte's pro se status has netted him leniency with respect to the timing and contents of his filings, and the Court has been lenient in overlooking the accusatory tone and unsubstantiated allegations of misconduct and unfairness leveled by Forte in virtually all of his filings, including the instant motion. Further, this Court has taken care to explain its rulings to plaintiff in plain language, provide plaintiff with some guidance regarding proper procedure, and provide plaintiff with a sufficient opportunity to obtain discovery in light of his pro se status.  Forte's assertions that he has been treated unfairly are meritless.

[16] Forte argues he free to speak to opposing counsel, outside of this Court, in any manner he pleases, because the First Amendment permits him to do so.  Forte fails to grasp a number of the finer points of free speech.  Primary among these are the rights of public officials to manage public fora to avoid disruption of the proper functions of government and the free speech rights of others. Courts, and their proceedings, are not a public forum to espouse whatever is desired. Forte is reminded that it is he who has forced the Defendants into this Court.  Defendants did not volunteer to subject themselves to Forte's conduct.  Forte cannot, having now forced Defendants to interact with him, claim he is free to disparage, insult, bully, and otherwise disrespect them in any way he pleases.  The Court is well aware Forte disagrees with this conclusion.

Future filings by Forte disparaging the orders of this Court <u>will</u> result in the dismissal of Forte's complaint. Finally, Forte's refusal to accept the orders of this Court, including his constant conspiracy theory refrains, <u>will</u> result in the dismissal of Forte's complaint. Forte will confine his filings, arguments, and communications with opposing counsel to the two claims that are *in fact* at issue: the February 24 and July 21 Arrest.

Forte is free to disagree with rulings of this Court. Forte is free to disagree with the positions taken by opposing counsel. Forte is even free to believe this Court and opposing counsel are involved in a grand conspiracy against him. However, the time for Forte to permeate his filings and commentary with offensive statements expressing his displeasure over the Court's treatment of him and over counsel's treatment of him, as well as his grand conspiracy theories, are over. The Court fully understands Forte does not believe the Court has the authority to curtail such accusations against the judicial process, judicial officers, parties, and counsel.  The Court also realizes Forte does not believe the Court has the authority to modify his communications to opposing counsel.  Nevertheless, Forte is hereby warned that failure to comply with the terms of this Order will result in dismissal of his case, with prejudice.

///
///
///
///
///
///
///
///
///

However, like many of the Court's previous orders Forte disagrees with, he is free to raise the issue to an appropriate appellate court at an appropriate time.  In the meantime, Forte will conduct himself civilly, and in a professional, courteous manner towards opposing counsel.  He will refrain from hurling insults towards opposing counsel.  He will refrain from accusing them of participating in a conspiracy against him.  Forte will limit his communications to opposing counsel to the two claims that are at issue in this case: The February 24, and July 21 Arrests.

**CONCLUSION**

Based on the foregoing, the Court ORDERS as follows:

1.      Defendants' Motions to Compel a supplemental Rule 26 disclosure is GRANTED. Plaintiff Eugene Forte's supplemental disclosures shall be served on or before **October 14, 2014;**

2.      Defendants' Motions to Dismiss are DENIED, without prejudice;

3.      Discovery is STAYED pending Plaintiff Eugene Forte's production of a supplemental Rule 26 disclosure; and

4.      Failure to comply with the terms of this Order will result in a recommendation of dismissal of the case, with prejudice.

IT IS SO ORDERED.

Dated:   __**September 23, 2014**__          ___/s/ _Barbara A. McAuliffe_____
UNITED STATES MAGISTRATE JUDGE

21