1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7            FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   EUGENE E. FORTE,                          Case No. 1:11-cv-00318-AWI-BAM

10              Plaintiff,                     **ORDER DENYING MOTION TO
                                              SUPPLEMENT COMPLAINT**

11      v.
                                              **FINDINGS AND RECOMMENDATIONS
12  COUNTY OF MERCED, *et al.*,               RECOMMENDING DISMISSAL FOR
                                              BAD FAITH CONDUCT**
13              Defendants.

14                                            TWENTY-ONE DAY DEADLINE
                                        /     (Docs. 280-282)
15

16
17          On January 5, 2015, Plaintiff Eugene Forte ("Forte" or "Plaintiff") filed a Motion to

18  Supplement Complaint (Doc. 280-282), in which he seeks to supplement to add new claims and add

19  new defendants.  (Doc. 281.)  Defendants filed oppositions to the motions.  (Docs. 288, 289.) Plaintiff

20  filed a reply brief on January 30, 2015.  (Doc. 297.)  The Court finds the matter suitable for decision

21  without oral argument pursuant to Local rule 230(g), and VACATES the hearing set for February 6,

22  2015.  Having reviewed the moving, opposition, and reply briefs, and the entirety of the file, the Court

     rules as a follows.

23                  **BRIEF FACTUAL AND PROCEDURAL BACKGROUND**

24          Numerous prior orders have outlined the factual and procedural history of this case, and

25  therefore, the Court provides only a brief outline here.

26  **A.  Prior Dismissal of the Claims Alleging a Conspiracy**

27          Following extensive law and motion on Plaintiff's original complaint, this action is proceeding

28  on claims related to two arrests of plaintiff: one on February 24, 2009 and the other on July 21, 2009.

                                              1

(See e.g., Doc. 32-37, 49-52, 55-57, 59-62, 68-76.) Plaintiff's original complaint alleged various 42 U.S.C. §1983 causes of action against numerous governmental and non-governmental entities.[1]  These allegations concerned a myriad of factual assertions linked by an overarching conspiracy against Plaintiff to deprive him of his rights in the underlying prosecutions related to the arrests, among other things.  The conspiracy and alleged violation of Constitutional rights centered on complaints made by Forte to various governmental officials about his arrests, which went unanswered, and then more specifically, to the prosecution of the criminal actions which resulted from his two arrests.  Plaintiff asserted that the prosecutions unconstitutionally declared him mentally incompetent when he was not, and as a result, denied Plaintiff a fair criminal trial.

After defendants moved to dismiss the original complaint, the Court dismissed the vast majority of those claims with prejudice.  (Doc. 96.)  The only allegations which survived Defendants' Motions to Dismiss are the two unlawful arrest/excessive force claims for the two discrete claims that remain in this case; the first arrest on February 24, 2009 and the second arrest—wholly unrelated to the February 24 arrest—on July 21, 2009.  (See Doc. 96.)  By order on January 11, 2012, the Court dismissed many of the defendants and claims with prejudice.[2]

**B.   Proposed Supplemental Complaint**

Now before this Court is Plaintiff's motion to "supplement" the First Amended Complaint. Forte's proposed supplemental complaint seeks to re-allege many of the same conspiracy allegations as were previously dismissed, with updates as to events occurring since the date the claims were dismissed, and seeks to bring in many of the same actors who were dismissed with prejudice.  Forte also seeks to bring new individual defendants, including opposing counsel.  (See Doc. 282-2.)  For example, Forte seeks to re-allege claims against the District Attorney and his officers for the conduct of the criminal proceedings and the purported violation of his constitutional rights.  (See e.g., Doc. 282-2, para. 38: ("Dumars with Dr. Blak, Judge James Cadle, ADA Turner and DA Morse enacted

---

[1]  Defendants from the original complaint are:  County of Merced, District Attorney Larry Morse, Deputy District Attorney Alan Turner, County Counsel James Fincher, Merced County Sheriff Mark Pazin, Merced County Sheriff Deputies Pacininch, Jaskowieac, Hill and Leuchner, James Pardon, Supervisor Jerry O'Banion, City of Los Banos, Los Banos Police Officer Gary Brizee and Anthony parker, Catholic Diocese of Fresno, Connie McGhee, McClatchy NewsPapers, Los Banos Enterprise, Gene Lieb, Corey Pride and Does 1-100.

[2]  Various of the defendants were dismissed with prejudice.  (See Doc. 96 p. 43-44.)

2

what is called the political abuse of psychology upon Forte, a former candidate who ran for Governor of California running on the platform of exposing judicial/public official corruption, and was known, and is known as the Attorney Buster in order to discriminate against him for exercising his Freedom of Speech and to deny him due process by having him improperly declared mentally incompetent when he was not."); para. 42 ("On January 28th, 2013 at what was an un-noticed competency trial, Dumars accused Forte of being delusional by saying that Forte was making wild accusations against people of important stature, such as accusing Dumars of being addicted to cocaine and assaulting underage daughters of clients. Dr. Blak testified on January 28th, 2013 that Forte could not aid his attorney (Dumars) when Forte accused Dumars of such nefarious acts."); para. 56: ("Merced County Counsel Roger Matzkind and James Fincher while defending Morse, Turner, and Merced County deputy defendants conspired with them to misuse and abuse the criminal process in the cases of CRL 001412 and CRL003409 by having Forte declared mentally incompetent when he was not in an effort to have the case dismissed, and by doing so, enacted a fraud upon the court  . . .").)[3]

**C. Prior Court Cautions Against Attempting to Amend the Complaint**

Over a time period of many, many months, and through numerous Court orders, Plaintiff has been told that these purported claims he seeks to allege in this supplemental complaint are not cognizable or timely.

Shortly after ruling on the motions to dismiss the conspiracy allegations, the Court, responding to Plaintiff's motion, explained that the claims were not cognizable:

> First, Plaintiff alleges a number of "facts" pertaining to the handling (or mis-handling) of Plaintiff's 2009 "citizen's complaint" which purports to set forth the factual basis for his claims of unlawful arrest and unlawful use of force arising out of the 2009 arrest that is the subject of his claim for unlawful use of force in violation of

---

[3] In the Supplemental Complaint, Plaintiff seeks to add new defendants: Merced County, Eric Dumars, Merced County Public Defenders' Office, Jerry O'Banion, Merced County Board of Supervisors, Herman Prock, Geoffrey Rogers, David Scott, James Padron, Larry Morse, Alan Turner, Merced County District Attorneys' Office, Merced County Counsel's Office, James Fincher, Roger Matzkind, Merced County Administration Office, Merced County Defense Association, Cindy Morse, Thomas Pfeiff, Dave Capron, Jeff Berger, Dr. Richard A. Blak, Merced County Sherriff Thomas Cavalerro, Larry Combs.  (Doc. 281-2.)  Plaintiff sees to add claims:  Fraudulent investigation, Withholding and/or failure to disclose exculpatory material, Conspiracy to Violate Civil Rights, Negligence resulting in wrongful incarceration and detention, Abuse of Process, Intentional Infliction of Emotional Distress.  (Doc. 281-2.) Further factual detail of the proposed supplemental complaint that is omitted has been reviewed by the Court.

his Fourth Amendment rights in this action. . . . [The Fourth Amendment] does not provide for any particular disposition or handling or consideration of any citizen complaints or claims he may submit directly to the offending police agency. (Doc. 106, p. 3.)

The Court explained that the only cognizable claims were the arrests:

Finally, Plaintiff's Opposition misquotes the court's January 11 Order to suggest that the court has forbade Plaintiff from pursuing other avenues of redress of his grievances. This is emphatically not the case. The court's January 11 Order concludes that "Plaintiff has alleged claims of unreasonable use of force under the Fourth Amendment against Defendants Picinich and Parker that are sufficient to withstand Defendants' motion to dismiss. Plaintiff may proceed with this claim and no others." (Doc. 106, p.5.)

At the initial scheduling conference in 2013, and after the conspiracy claims had been dismissed, Plaintiff was given time to seek to file an amended complaint. On November 4, 2013, this Court held a scheduling conference where Forte requested leave to amend his complaint. The Court set a briefing schedule for Plaintiff's anticipated motion for leave to file an amended complaint. (Doc. 188.) Forte indicated the he sought to re-allege the dismissed allegations noted above and other allegations. Plaintiff stated he required a significant amount of time to prepare his motion to amend his complaint due to other litigation commitments and the holidays. Defendants argued that they would be prejudiced from further delay, noting the prior dismissal among other arguments. Accordingly, after weighing the delay and prejudice to defendants with Plaintiff's request, the Court granted Plaintiff's request for an extended amount of time to file his motion to amend his complaint and provided Plaintiff with approximately three months to file the motion. The Court set a deadline for filing a motion to amend by January 31, 2014.

Before the January 31, 2014 motion filing deadline, Plaintiff filed a request to extend the deadline. (Doc. 196.) Plaintiff sought an extension of time to file his motion to amend to March 3, 2014. Plaintiff stated he required this time because he has been "inundated" with legal work (not in this case) in an effort to counter what he has described as "the run-away train wreck" that is the Merced Superior Court, and the "fraud upon the court" occurring in this Court. [4] (Doc. 196, 1:20-26.)

---

[4] As a result of this court's rulings, Plaintiff sought to have the court excused for bias and on multiple occasions, Plaintiff claimed judicial bias as a result of the court's rulings. Plaintiff contends nearly every judicial officer of this Court is

4

The Court denied the request for extension based upon the lack of good cause shown by Plaintiff and the prejudice to defendants from further continued delay by Plaintiff.  Plaintiff did not bring a motion to amend the complaint by the January 31, 2014 deadline.

At the regularly set April 30, 2014 scheduled conference, Plaintiff again stated his desire to amend or supplement his complaint.  Plaintiff argued that the resignation and subsequent death of his former attorney in a separate criminal action supports his current claims, and gives rise to new claims that should be incorporated in this case.  By order on April 30, 2014, the Court denied the request to Amend or Supplement his complaint.  (Doc. 223.)  The Court again found that the amendment and/or supplement to the complaint was untimely, not related to the claims at issue, prejudicial to defendants, and that Plaintiff had not been diligent.  (Doc. 223.)

After discovery began, this Court addressed intolerable litigation conduct by Forte, in an order on September 23, 2014, and again addressed Forte's intimation that he would amend his complaint to bring in dismissed claims and defendants:

> The claims before this Court do not hinge on whether there is a conspiracy against Forte, and the Court will not indulge Forte's improper efforts to expand the scope of this litigation. Whether there was probable cause to make the subject arrests, and whether excessive force was used in affecting those arrests, bears no relationship to an alleged conspiracy against Forte spanning fifteen years and involving dozens of individuals and entities.

(Doc. 263,p. 11; Doc. 263, n.9, "Moreover, even if Forte's conspiracy theories were not already explicitly rejected, this Court again finds there is no relationship between the myriad of unrelated wrongs Forte complains of, and the two remaining claims at issue.")

Despite this Court's explicit admonition against these exact kinds of allegations and filing additional requests to amend, Forte filed a Motion to Stay on October 23, 2014 to stay this action and yet again attempt to bring in the alleged conspiracy allegations against prosecutors in Merced County for declaring him mentally incompetent.  In his motion to stay, Forte asserted as follows:

---

committing "fraud on the court."  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147 (1994)).

[Plaintiff seeks to] substitute in the Merced County District Attorney Offices, DA Larry Morse, DDA Alan Turner, their Merced County Counsel Offices' defense attorneys James Fincher, Roger Matzkind, Richard Flores, and add another layer of the most egregious fraud perpetrated by the state prosecutors/defendants including the conspiracy to deprive plaintiff of his constitutional rights the evidence of the Merced County Public Defenders' Office Eric Dumars and Merced County Superior Court Judge James Cadle who conspired to have plaintiff scathed and labeled as being declared mentally incompetent in the underlying criminal prosecution … (Doc. 269, p. 3-4.)

By order on October 28, 2014, the Court denied Plaintiff's request to stay the proceedings, noting that Plaintiff improperly was persisting in attempting to re-allege the long ago dismissed conspiracy allegations:

Specifically, Plaintiff seeks to "supplement" the complaint to allege essentially the same claims that were previously dismissed on prior Defendants Morse, Turner, Fincher and others that Plaintiff alleges were behind the "fraud on the court" that resulted in the dismissal of the criminal charges that had been pending against Plaintiff in Merced County Superior Court. Despite repeated denials of similar motions in the past – most recently in the Magistrate Judge's order of September 23 – and despite repeated explanations of why the claims Plaintiff seeks to supplement are not cognizable in this court; Plaintiff persists. (Doc. 271, p.2.)

As noted in the Court's order of October 28, 2014, denying Forte's Motion to Stay so he could file supplemental pleadings to re-allege the conspiracy allegations, the Court stated the conspiracy allegations labelling him mentally incompetent are not cognizable:

Plaintiff's major contention with regard to the proceedings in the Merced Superior Court is that the previously dismissed Defendants conspired to commit fraud on the court by implementing a scheme to use incompetent or "jury-rigged" testimony to persuade the Superior Court to dismiss the criminal charges against Plaintiff based on a false finding that Plaintiff was not competent to defend himself in a criminal proceeding pursuant to Cal. Pen. Code § 1370.2. The court has previously explained that a defendant in a criminal case has no constitutional right to the continuation of a prosecution against him. In the court's order of January 31, 2014, the court made clear that, for purposes of the Constitution or federal statute, there is no requirement that a criminal prosecution, once instituted, be continued to and through trial. See Doc. # 202 at 4-5. In the same order, the court also explained the limitations and narrowness of the Superior Court's ruling that Plaintiff was incompetent to stand trial as a defendant in a criminal matter and further explained that this determination, like the discontinuance of his criminal prosecution, does not raise any issue harm under the Constitution or under federal statute. Id.. The court has previously explained, and now reiterates, that of all

the harms that Plaintiff has alleged, the ones that are cognizable in this court are current claims under the Fourth Amendment for arrest without probable cause and unreasonable seizure. (Doc. 271, p. 3.)

The Court denied the motion to stay, and once again reiterated that the claims were not cognizable and the Court was without jurisdiction to address the claims:

> The court has previously informed Plaintiff, and now does so again, that this court cannot address Plaintiff's claims arising from the dismissal of the criminal cases against him in Superior Court because this court lacks the jurisdiction to do so. Whether this court is in agreement with, or utterly outraged by, the decisions of the Superior Court makes no difference at all. This court cannot go where its jurisdictional powers do not exist.

> Because further supplementation or amendment of Plaintiff's First Amended Complaint to add the claims and the defendants that Plaintiff has specified in his Motion to Stay is futile for the reasons discussed above, the court will deny the motion. (Doc. 271, 4.)

Undeterred by any Court order or admonition, Forte now seeks leave, once again, to add the allegations he has been told too many times he may not assert.

## DISCUSSION

### A. Legal Standards for a Supplemental Complaint

A supplemental pleading sets out events that happened after the filing of the original pleading. Fed.R.Civ.P. 15(d). Conversely, an amended pleading is used to allege facts in existence when the original pleading was filed; but title is not determinative. *United States ex rel. Wulff v. CMA, Inc*., 890 F.2d 1070, 1073 (9th Cir.1989.) An erroneous characterization of a supplemental pleading as an amended pleading is immaterial. *See United States ex rel. Atkins v. Reiten*, 313 F.2d 673, 674 (9th Cir.1963.)  Supplemental pleadings may be permitted on motion and reasonable notice at the court's discretion—parties do not have a right to supplement. Fed.R.Civ.P. 15(d). The standard for deciding a motion to supplement under Rule 15(d) is the same as deciding a motion to amend under Rule 15(a). *Id.*

Under Rule 15(d), a court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." "The rule is a tool of judicial economy and convenience. Its use is therefore favored." *Keith v. Volp*e, 858 F.2d 467, 473 (9th Cir.1988), *cert. denied*, 493 U.S. 813 (1989); *see also San Luis*

7

& *Delta–Mendota Water Authority v. U.S. Dept. of Interior*, 236 F.R.D. 491, 497 (E.D.Cal.2006) (identifying nine factors that the Supreme Court and Ninth Circuit have applied in determining the appropriateness of supplementation).

The U.S. Supreme Court has held that federal courts should freely grant leave to amend absent special circumstances, such as: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies with previous amendment; (4) prejudice to the opposing party; and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

The Court finds that Forte's proposed supplemental complaint is not a proper supplement. The "supplemental" allegations stem from the underlying criminal prosecutions and purported violations of Plaintiff's rights by declaring him mentally incompetent during or as a result of those prosecutions. The proposed allegations stem from actions, inactions, conduct, or decisions made during, in the course of, or related to the underlying criminal prosecutions. These events, which occurred after the arrests, do not make the events supplemental to the complaint in this case. Indeed, as Plaintiff acknowledges in his Motion to Supplement, the proposed allegations arise from the criminal prosecutions:

> Criminal proceedings (CRL001412 & CRL003409) were filed against Forte in September 2009 by Merced County DA Larry Morse. The First Amended Complaint was filed on February 24th, 2011 against the arresting officers Defendants' for false arrest and use of excessive force.
>
> Morse, DDA Alan Turner, Merced County Counsels' Office James Fincher and Merced County Supervisor Jerry O'Banion were dismissed on January 11th, 2012
>
> There was no criminal verdict obtained against plaintiff and the underlying criminal charges were dismissed by motion of plaintiff's attorney on January 25th, 2013, and on February 11th, 2013, a judgment was entered against plaintiff for $9,333.00 for the cost of his criminal defense. Plaintiff now seeks leave to file supplemental pleadings and add new defendants (previously dismissed) to address the abuse of process of the criminal proceedings that have materialized since the filing of the First Amended Complaint. (Doc. 282-1, p.3)

The institution of the criminal prosecutions predated any time for Forte to amend the complaint in this case. Declaring Plaintiff incompetent predated anytime for Forte to amend the complaint in this case. Plaintiff's proposed supplemental pleading lists facts describing Plaintiff's numerous interactions with

government officials and employees over many years. The new allegations are made against new proposed Defendants, including against opposing counsel.  Even if the events are "after" the arrests, these purported subsequent events do not form a legitimate basis of a supplemental complaint because they are all tied to declaring him mentally incompetent in the criminal prosecutions.  Thus, the events are not a "supplement."

The case pending before the Court involves probable cause and excessive force in the two arrests; the case does not involve the prosecutions or events linked to the prosecution.  Forte has been repeatedly told that the criminal mental competency claims are not cognizable claims.  Therefore, the Court finds that the proposed supplemental complaint is not "supplemental" entitled to any liberal interpretation under Rule 15(d).

Plaintiff relies upon *Griffin v. County Sch. Bd.,* 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), among other cases, for the proposition that a supplemental pleading may properly allege events occurring after the original complaint was filed.  (Doc. 297.)

*Griffin*, however, is not on point to the procedural history in this case.  In *Griffin,* the actions of the defendants which the plaintiffs sought to challenge through supplemental pleadings were alleged to be specific attempts by the defendants to contravene the courts' earlier rulings. *Griffin*, 377 U.S. at 226, 84 S.Ct. at 1230–31 (alleging that defendant's refusal to levy taxes and open the schools "occurred as a part of continued, persistent efforts to circumvent ... [the Court's] 1955 holding that Prince Edward County could not continue to operate, maintain, and support a system of schools in which students were segregated on a racial basis").  Forte's supplemental complaint does not involve this Court's jurisdiction or enforcing this Court's prior orders.  Permitting or denying leave to file a supplemental pleading or claim is left to the sound discretion of the court. *Keith v. Volpe*, 858 F.2d 467, 475 (9th Cir.1988).  Leave to file a supplemental pleading will be denied, however, where the supplemental pleading asserts new and distinct claims unrelated to the original complaint and that should be the subject of a separate lawsuit. A supplemental complaint would not promote judicial efficiency in such cases because the entire controversy between the parties may not be settled in a single action. *See Planned Parenthood of So. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir.1997).

9

This Court has said too many times that the claims are not cognizable, and Plaintiff simply refuses to accept the Court's orders.

**B.  Modification of the Scheduling Order Requires Good Cause**

The request to amend the complaint requires modifying the Scheduling Order.  The Scheduling Order in this case provides that any amendment to the pleading must have been filed by January 31, 2014.  (Doc. 189.)  The request to amend is not brought within the time frame of the Scheduling Order.

Any relief ordered by this Court would require a modification of the scheduling order. District courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed.R.Civ.P. 16(b)(3). Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed.R.Civ.P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir.1992). A scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.,* 795 F.2d 15, 18 (3rd Cir.1986).  A "scheduling conference order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Johnson*, 975 F.2d at 610.

The Ninth Circuit has clarified why the Rule 16 deadlines should be taken seriously:

> In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence.

*Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir.2005); *see also, Singh v. Arrow Truck Sales, Inc.*, 2006 U.S. Dist. LEXIS 47917, 2006 WL 1867540, at * 2 (E.D.Cal., July 5, 2006) ("Rules are rules-and the parties must play by them. In the final analysis, the judicial process depends heavily on the judge's credibility. To ensure such credibility, a district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines. If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the

foreseeable consequences of noncompliance"), citing *Legault v. Zambarano*, 105 F.3d 24, 28–29 (1st Cir.1997).

The Ninth Circuit is protective of this particular rule, as it deems Rule 16 to be an essential tool in controlling heavy trial court dockets by recognizing the importance of a "district court's ability to control its docket by enforcing a discovery termination date, even in the face of requested supplemental discovery that might have revealed highly probative evidence, when the [party's] prior discovery efforts were not diligent." *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1027 (9th Cir.2006). "The use of orders establishing a firm discovery cutoff date is commonplace, and has impacts generally helpful to the orderly progress of litigation, so that the enforcement of such an order should come as a surprise to no one." *Id.* As the Ninth Circuit has emphasized, "[d]istrict courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion." *Id.* (citation and internal quotation marks omitted).

The time to amend his complaint, January 31, 2014, has long since expired.  (Doc. 189). Indeed, at the original scheduling conference held on November 4, 2013, Forte pleaded with the Court to afford him what the Court considered an excessive amount of time to file an amended complaint.  In giving Forte every opportunity to pursue amendment, the Court granted Forte three months to amend his complaint, until January 31, 2014, despite the fact that the case had been pending for almost three years at that point,[5] and the majority of the claims and defendants Forte sought to re-allege in his complaint had already been dismissed, with prejudice. Thus, there is no reasonable basis for Forte to believe his request to amend to add defendants or claims, a year after the deadline in the Scheduling Order, is appropriate.

Here, Plaintiff has not argued good cause for modifying the Scheduling Order under Rule 16. Modification of a scheduling order requires a showing of good cause, Fed.R.Civ.P. 16(b), and good cause requires a showing of due diligence, *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992). Rather, Plaintiff relies upon Rule 15 and its liberal standard for amendments to pleading.  However, since a Scheduling Order has issued setting a specific deadline for filing a motion

---

[5] The stay was lifted on September 3, 2013.

to amend, good cause must be shown to modify the schedule. Forte has not established diligence in bringing the motion to supplement and failed to comply with the Court's orders.

Indeed, good cause does not exist to modify the Scheduling Order in this case.  The allegations are a repeat of the alleged conspiracy related to handling of Forte's prosecution.  Once again, these allegations are irrelevant to the two arrests at issue in this litigation.   All other allegations were previously dismissed with prejudice; the events subsequent to the dismissal are not cognizable because they stem from events occurring during the prosecution.  The Court need not and will not rehash the reasons that these claims are not cognizable, as Forte has been told time and again.

Significantly, this amendment will prejudice defendants.  This case has been proceeding upon limited, discrete claims.  The proposed amendment attempts to bring in numerous unrelated parties, claims, events, etc., needlessly expanding the scope and complexity of the pending claims.  A year ago, this Court noted the prejudice to defendants for any delay in amendment:

> At the November 4, 2013 scheduling conference, defendants made legitimate and compelling arguments that they would be prejudiced by further delay in moving this case forward. Indeed, the Court was informed that the proposed amendment may bring in, again, dismissed parties and may name counsel of record as defendants. At the November 4 hearing, the Court balanced the Plaintiff's need to seek leave to amend with the prejudice to the defendants. In accommodating plaintiff, the Court stretched the bounds of what it felt was an adequate time to prepare Plaintiff's motion. Any further delay is entirely unreasonable and prejudicial.  (Doc. 201, p. 3.)

Good cause does not exist for amending the Scheduling Order.

### C.  The Court Finds Bad Faith in Forte's Conduct[6]

Throughout the history of this case, and as explained more particularly in the Court's September 23, 2014 order (Doc. 263), Forte has had either a cavalier attitude or a not subtle contempt of the Court's orders and continues to refuse to abide with Court directives.

#### 1.  The Court's Sanction Authority

Courts are invested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and

---

[6] A separate motion for terminating sanctions filed by defendants for Forte's conduct, unrelated to the instant motion, is currently pending before Hon. Anthony Ishii, District Judge.

expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).  The Court may exercise its inherent powers to "protect[ ] the due and orderly administration[ ] of justice and maintain[ ] the authority and dignity of the court." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.1997) (internal quotation marks omitted).  That power includes the power to sanction conduct.  *See Fink v. Gomez*, 239 F.3d 989 (9th Cir.2001) (("Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct (1) Federal Rule of Civil Procedure 11 ... (2) 28 U.S.C. § 1927 ... and (3) the court's inherent power.").  Sanctions "are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 993–94. Courts have "broad fact-finding powers to grant or decline sanctions" warranting "great deference." *Smith v. Lenches*, 263 F.3d 972, 978 (9th Cir.2001) (citing *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir.1997)).

Fed. R. Civ. P. 11(b) provides that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: … (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." When evaluating the imposition of sanctions, Rule 11 requires the Court to consider not whether the party demonstrated subjective good faith in filing the document, but whether the party acted objectively reasonably in doing so. *G.C. & K.B. Investments v. Wilson,* 326 F.3d 1096, 1109 (9th Cir. 2003).

This Court also has the authority to sanction litigants who fail to comply with court orders. Specifically, Fed. R. Civ. P. Rule 41(b) authorizes courts to dismiss an action for failure to comply with a court order. Although that rule appears to contemplate that dismissal will be precipitated by a motion from the opposing party, a court may act sua sponte under Rule 41(b). *Link v. Wabash R. Co*., 370 U.S. 626, 630, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962); *Pagtalunan v. Galaza*, 291 F.3d 639, 640–43 (9th Cir. 2002) (affirming district court's sua sponte dismissal of habeas petition with prejudice "for failure to prosecute and failure to comply with a court order"), *cert. denied*, 538 U.S.

909 (2003).

In addition, pursuant to the Court's Local Rules, this Court has the authority to impose any appropriate sanction to curtail abusive litigation tactics.  *See* E.D. Cal. L.R. 110 ("Failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("Failure to follow a district court's local rules is a proper ground for dismissal"), *cert. denied*, 516 U.S. 838 (1995); *Delange v. Dutra Constr. Co., Inc.,* 183 F.3d 916, 919 n. 2 (9th Cir.1999) (per curiam) (district courts enjoy "broad discretion in interpreting and applying their local rules"). Individuals proceeding in pro per are bound by the Court's Local Rules just the same as licensed attorneys. *See* E.D. Cal. L.R. 183 ("Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law. All obligations placed on "counsel" by these Rules apply to individuals appearing in propria persona.").

Federal courts have the inherent authority to sanction conduct abusive of the judicial process. *Chambers,* 501 U.S. at 43–45. Federal district courts have "inherent authority to sanction parties appearing before [them] for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower v. Field*, 973 F.2d 75, 81–82 (2d Cir. 1992), *cert. denied*, 507 U.S. 1043 (1993). To award sanctions under the Court's inherent powers, the Court must make an explicit finding of bad faith or conduct tantamount to bad faith. *Fink* 239 F.3d at 994. Whether termed "willful misconduct" or conduct "tantamount to bad faith," such sanctionable conduct is "something more egregious than mere negligence or recklessness." *In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009) (quoting *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003)).  Upon a finding of bad faith, courts can levy an assortment of sanctions under their inherent power, including monetary awards, attorneys' fees, adverse inference jury instructions, and even dismissal of claims. *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 881 F.Supp.2d 1132, 1135 (N.D.Cal.2012) (collecting cases), *as modified in Apple Inc. v. Samsung Elec. Co., Ltd*., 888 F.Supp.2d 976, 1000 (N.D.Cal.2012).  One available sanction is dismissal with prejudice of a plaintiff's claims. *Chambers,* 501 U.S. at 44–45 (citing *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31 (1962).  District courts may exercise this power sua sponte. *Id*. (citing *Link,* 370 U.S. at 630–31).

However, because of their very potency, inherent powers must be exercised with restraint and discretion. *Chambers,* 501 U.S. at 44, 111 S.Ct. 2123 (quotation marks omitted). To be sanctionable under the Court's inherent power, the conduct must have constituted, or been tantamount to, bad faith. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Miller v. City of Los Angeles,* 661 F.3d 1024, 1036 (9th Cir. 2011) ("The court's determination that Arias's conduct constituted bad faith was not illogical or implausible and had ample support in the record; we are therefore bound to uphold it."); *Gomez v. Vernon,* 255 F.3d 1118, 1134 (9th Cir. 2001), *cert. denied,* 534 U.S. 1066 (2001); *Fink v. Gomez,* 239 F.3d 989, 993–94 (9th Cir. 2001). Recklessness, when combined with an additional factor such as frivolousness, harassment, or an improper purpose, may also support sanctions. *See, Vernon,* 255 F.3d at 1134; *Fink,* 239 F.3d at 994. The extreme sanction of "dismissal is warranted where ... a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Anheuser–Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (citation omitted); *Leon v. IDX Systems, Corp.,* 464 F.3d 951, 958 (9th Cir. 2006).

"Bad faith" means a party or counsel acted "vexatiously, wantonly or for oppressive reasons." *Chambers,* 501 U.S. at 45-46, 111 S.Ct. at 2133.  Bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar assessment of attorneys' fees." *Mark Ind., Ltd. v. Sea Captain's Choice, Inc*., 50 F.3d 730, 732 (9th Cir. 1995) (internal quotation marks and citations omitted). Sanctions, then, are justified "when a party acts for an improper purpose—even if the act consists of making a truthful statement or a non-frivolous argument or objection." *Fink v. Gomez,* 239 F.3d 989 (9th Cir. 2001).

## 2.  Bad Faith Conduct

Forte has been warned, cautioned, and admonished on numerous occasions, in multiple court orders, that continual assertion of his conspiracy theories related to his prosecution and subsequent events were not cognizable and are untimely.  Forte was on notice, for over two years, that his conspiracy claims for the prosecution declaring him mentally incompetent failed to state cognizable constitutional claims.  (See Doc. 96.)  Forte repeatedly has been told that this case is limited to the two

discrete arrests. See e.g., Doc. 106 ("[I]n this case, the question is whether Plaintiff can adduce facts sufficient to show that he suffered the application of excessive force by police officers."); Doc. 223 ("as explained above, Plaintiff proposes an amendment unrelated to the specific, discrete claims before the Court. Here, the claims are unlawful arrest and excessive force. As explained by Plaintiff at the April 29, 2014 hearing, the proposed new claims, if permitted, would violate Rule 18.")  Forte argues in his reply brief that he has not acted in bad faith.  (Doc. 297.) But, Forte was told again and again that the claims could not be expanded to purported constitutional violations arising out of the manner in which the underlying criminal prosecutions were handled. Yet, despite these repeated admonitions, Forte has steadfastly refused to abide by these orders, continually requesting and attempting to re-allege claims dismissed with prejudice and has needlessly multiplied these proceedings. *Estate of Blue*, 120 F.3d 982, 985 (9th Cir.1997) (Frivolous filings are "those that are both baseless and made without a reasonable and competent inquiry."), *cert. denied*, 522 U.S. 1111 (1998).  The repeated reframe of constitutional violations for declaring him incompetent in his criminal proceeding is a drain on and waste of judicial recourses.  Repetitious presentation of the same unsuccessful legal arguments needlessly delays the resolution of a case and wastes limited judicial resources.  Requests from Forte to reinstate those claims are frivolous.  Further, frivolous motions impose substantial costs upon the litigants.  Plaintiff simply is pursuing a vexatious pattern of frivolous litigation activity.

There is no objective reasonable basis for Forte to conclude that he was justified in pursuing causes of action lacking a cognizable legal basis.  *See Bhambra v. True*, No. 09–cv–4685–CRB, 2010 WL 1758895, at *3 (N.D.Cal. Apr.30, 2010) (where a party "pursues causes of action for which there is no legal basis whatsoever," sanctions may be warranted.)  The continual assertion of these claims is frivolous, and the Court concludes not filed for a proper purpose. *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987) (Groundless claims included in a pleading for purpose of harassment justify sanctions ... even if the entire pleading is not for an improper purpose.)  Forte's conduct has been vexatious and designed to improperly expand, prolong and complicate this case.  Accordingly, the Court finds that Forte has acted in bad faith.

While this most recent Forte filing provides a final basis for the Court's finding of bad faith, this Court, as noted in this order, also has considered the entirety of the case, Forte's filings in this

case, and the wide range of willful misconduct by Forte.  This Court, by no means, has summarized in this order all of the events, filings, and conduct in the case which have been tolerated by the Court, in which Forte has acted improperly, even maliciously, towards court staff, the Court, and counsel.  In its final warning issued to Forte on September 23, 2014, the Court recognized that there is a strong interest in deciding cases on its merits (Doc. 263): "There is one reason, and one reason only, that the Court affords Forte one final opportunity to cure and moderate his behavior. This Court has not lost sight of the strong interest in resolving cases on the merits. By all indications, Forte will not permit this. Rather, Forte has chosen to prove that he is a victim of the judicial process rather than a victim on the substantive merits.   Nonetheless, the Court will afford Forte one final opportunity to demonstrate he can treat the Court, opposing counsel, and these proceedings with the respect and decorum demanded by this Order, applicable statutes, the Court's Local Rules, and relevant case law."  (Doc. 263, p. 19 (footnote omitted.))  But even this strong interest in deciding cases on the merits cannot override a litigant's conduct in refusing to abide by court orders, insisting on disregarding legally proper limitations on pleadings, insisting on multiplying the proceedings, and wasting judicial resources.  The Court concludes Forte's conduct is continuing the bad faith conduct shown throughout the litigation. [7]

### 3.   Consideration of Factors Warranting Dismissal

In exercising Rule 41(b), Local Rule powers, and in the Court's inherent authority, the Court recommends that this action be dismissed. In considering whether to dismiss an action for failure to comply with a court order, the court must weigh five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *See Pagtalunan v. Galaza*, 291 F.3d at 642 (*Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir.1992), *cert. denied*, 506 U.S. 915 (1992)).

The Public's interest in expeditious resolution of litigation weighs in favor of dismissal. The

---

[7] Even if Forte were to withdraw his motion to supplement, the Court would find bad faith.  Forte refuses to comply with Court limitations and abuses the limited judicial resources.  As noted in this order, and as seen in this docket, Forte does not heed Court orders and such conduct cannot be rectified even if he were to withdraw the motion.  This Court has consumed enormous amounts of time on this case, and this motion is but one instance of such waste.

Ninth Circuit has explained that "[t]he public's interest in expeditious resolution of litigation always favors dismissal." *Pagtalunan*, 291 F.3d at 642 (emphasis added).  Here, at every turn, Forte attempts to delay proceedings, and expand claims far beyond the issues found to be cognizable.

The Court's need to manage is docket also weighs in favor of dismissal.  The second factor focuses on whether a particular case has "consumed large amounts of [a district] court's valuable time that it could have devoted to other major and serious criminal and civil cases on its docket." See *Ferdik*, 963 F.2d at 1261 ("It is incumbent upon us to preserve the district courts' power to manage their dockets without being subject to the endless vexatious noncompliance of litigants like *Ferdik*.")

As detailed throughout this Order, and as is located throughout the docket in the case, the Court has devoted inordinate amounts of time to deal with what should be limited-in-scope claims.  And, once again, because of his conduct in bringing this motion, the Court is required to devote substantial time to reviewing the totality of the case and assessing whether dismissal is appropriate.  Forte's conduct has diverted the Court from the voluminous number of other cases pending which are competing for its limited resources.  Thus, the factor of the Court's need to manage its docket weighs strongly in favor of dismissal.

The third factor—prejudice to the Defendants—also favors dismissal.  "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *In re Phenylpropanolamine Prods. Liab. Litig*., 460 F.3d 1217, 1227 (9th Cir. 2006) (quoting *Adriana Int'l Corp. v. Thoerren*, 913 F.2d 1406, 1412 (9th Cir.1990)).  As previously stated, Forte's conduct prejudices defendants.

The fourth factor – less drastic alternatives – also weighs in favor of dismissal.  Less drastic alternatives to dismissal include, inter alia, a warning to a party that dismissal could result from failure to obey a court order. *See Malone v. U.S. Postal Serv*., 833 F.2d 128, 132 n.1 (9th Cir.1987), *cert. denied,* 488 U.S. 819 (1988).  The Court considered lesser sanctions, but no lesser sanction is warranted.  Monetary sanctions are worthless because money cannot rectify or moderate Forte's conduct.  He has shown little willingness to abide by court orders.  Indeed, Forte has stated in these proceedings that he is indigent, even though he is not proceeding in forma pauperis in this

proceeding.[8]  Evidentiary sanctions would not correct the conduct because they would not halt Forte from attempting to multiply proceedings or force him to comply with Court orders, as he has shown little prior regard to do so.  The Ninth Circuit has explained that "[a] district court need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives." *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir.1986).  Furthermore, "a district court's warning to a party that his [or her] failure to obey the court's order will result in dismissal can satisfy the 'consideration of alternatives' requirement." *Ferdik,* 963 F.2d at 1262.  As explained below, Forte was adequately warned his case would be dismissed.

The fifth factor—the public policy favoring the disposition of cases on their merits—ordinarily weighs against dismissal. *See In re Phenylpropanolamine Prods. Liab. Litig*., 460 F.3d 1217, 1228 (9th Cir. 2006).  But as explained above, in this case, Plaintiff has now repeatedly disregarded the Court's orders and local rules.  This factor weighs only slightly against dismissal.

In sum, the five factor analysis supports a recommendation for dismissal of this case.

### 4.  Prior Warnings were Given in Clear and Explicit Terms

Before ordering a terminating sanction, a court must warn the offending parties and try other sanctions first. For example, a district court's failure to warn a party that dismissal is being considered as a sanction weighs heavily against the sanction. *U.S. for Use and Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 605 (9th Cir.1988).

Here, Forte was warned in the Court's September 23, 2014 order in the most adamant of terms that his continued conduct risked dismissal.  (Doc. 263, p. 11 ("The claims before this Court do not hinge on whether there is a conspiracy against Forte, and the Court will not indulge Forte's improper efforts to expand the scope of this litigation."); Doc. 263, p. 11, ("Forte's claims are for excessive force and unlawful arrest concerning the February 24 and July 21 Arrests. Forte's claims do not implicate a grand conspiracy in any way.") The Court explained, over four pages, the conduct which

---

[8]  In subsequently filed actions, Forte claims indigency.  In an action filed on December 3, 2013, *Forte v. Hughes*, 13-cv-1980, Forte is proceeding in forma pauperis.  In an action filed on January 28, 2015, 15-cv-147, Forte has applied to proceed in forma pauperis.  (The case has not yet been screened pursuant to 28 U.S.C. §1915.)

warranted dismissal and concluded with a "Forte's Final Warning" that further conduct would result in

a recommendation of dismissal.

> Finally, Forte's refusal to accept the orders of this Court, including his constant conspiracy theory refrains, <u>will</u> result in the dismissal of Forte's complaint. Forte will confine his filings, arguments, and communications with opposing counsel to the two claims that are in fact at issue: the February 24 and July 21 Arrest." Doc. 263, p. 20 (emphasis in original).

As the Court explained:

> Forte's refusal to focus his arguments on the claims that are *in fact* involved in this case has required the court to expend extra time and resources to deal with a constant flow of irrelevant, unnecessary and disparaging filings. This order is a perfect example, demonstrating the substantial time and expense required to perform the legal research, analysis, and writing to craft this document. The court's extremely heavy caseload simply does not afford the time that this motion and other dealings with Forte has taken.  (Doc. 263, p. 18.)

The Court specifically warned Forte that the next instance would result in dismissal:

> Forte is hereby warned that failure to comply with the terms of this Order will result in dismissal of his case, with prejudice. (Doc. 263 p. 20.)

Indeed, the concluding line of the Court's September 29, 2015 order stated:

> 4. Failure to comply with the terms of this Order will result in a recommendation of dismissal of the case, with prejudice. (Doc. 263 p. 21.)

Therefore, Forte has been repeatedly and adequately warned that his conduct risked dismissal of his

case.

Here, the Court also considers Forte's bad faith in light of concerns of judicial economy.

Forte's conduct imposes an unnecessary and extreme burden on the Court's limited resources.[9]  By

failing to abide by Court orders and heeding the limitations imposed by law, Forte's disregard of

---

[9]  The Supreme Court has stated, "[E]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *Day v. Day*, 510 U.S. 1, 2, 114 S.Ct. 4, 126 L.Ed.2d 1 (1993), citing *In re McDonald*, 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989) (per curiam). "The goal of fairly dispensing justice ... is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous requests." *Whitaker v. Superior Court of San Francisco*, 514 U.S. 208, 210, 115 S.Ct. 1446, 131 L.Ed.2d 324 (1995), citing *In re Whitaker*, 513 U.S. 1,2, 115 S.Ct. 2, 130 L.Ed.2d 1 (1994).

judicial rulings imposes a significant burden on limited resources to review and decide meritless, repetitious and voluminous filings. Accordingly, this Court recommends that this case be DISMISSED as a terminating sanction.

### CONCLUSION

Based on the foregoing, the Court FINDS and HEREBY RECOMMENDS as follows:

1. DENY Plaintiff's request to supplement the complaint;

2. DISMISS this action with prejudice pursuant to Federal Rule of Civil Procedure 41(b), Local Rules, and the Court's inherent authority and enter judgment in favor of Defendants and against Plaintiff; and

3. STAY all proceedings in this case pending resolution of these Findings and Recommendations.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1) (B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

Dated:   __February 3, 2015__        ___/s/ Barbara A. McAuliffe___
                                      UNITED STATES MAGISTRATE JUDGE

21