1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**EASTERN DISTRICT OF CALIFORNIA**

6

7  EUGENE E. FORTE,                                    CASE NO. 1:11-cv-0318  AWI BAM

8                        **Plaintiff**              **MEMORANDUM OPINION AND ORDER**
                                                    **DENYING RECONSIDERATION OF**
9            v.                                     **MAGISTRATE JUDGE'S ORDER**
                                                    **DENYING LEAVE TO SUPPLEMENT**
10  COUNTY OF MERCED, et al.,                       **AND ORDER ADOPTING**
                                                    **RECOMMENDATION TO APPLY**
11                       **Defendants.**            **TERMINATING SANCTIONS AND**
                                                    **RELATED ORDERS**
12
                                                    **Doc. #'s 279 & 300**
13

14

15        On January 5, 2015, plaintiff Eugene Forte ("Plaintiff") filed a motion to supplement his

16  First Amended Complaint ("FAC") to add defendant parties and claims based on facts and

17  circumstances that allegedly came to light after the FAC was filed (hereinafter, the "Motion to

18  Supplement").  The proposed supplement added, among others, defendants and claims that had

19  been previously dismissed with prejudice by the court by an order issued on January 11, 2012,

20  Doc. # 96.  On February 3, 2015, the Magistrate Judge issued an order, (the "February 3 Order")

21  denying Plaintiff's motion to supplement.  The same order also recommended that Defendants'

22  motion for terminating sanctions for bad faith conduct, Document Number 279 be granted.

23  Plaintiff filed an objection to the portion of the February 3 Order denying the motion for leave to

24  supplement the complaint on February 9, 2015.  Doc. # 303.  Plaintiff later filed an objection to

25  the portion of the February 3 Order recommending the application of terminating sanctions on

26  April 16, 2015.  Doc. # 322.  For the reasons that follow, the court will adopt in whole the

27  Magistrate Judge's February 3 order denying leave to supplement the complaint and will order

28  terminating sanctions.

# PLAINTIFF'S *EX PARTE* REQUESTS

During the pendency of this court's decision on the Magistrate Judge's February 3 Order, Plaintiff filed two *ex parte* requests. These are set forth at Docket Numbers 337 and 338. The first of these, Doc. # 337, involves a minor skirmish that erupted over Plaintiff's efforts to order transcript excerpts from the court's stenographic reporter ("Reporter"). At one point the Reporter informed Plaintiff that payment by certified check would be required because "you have provided me with a check in the past that did not have enough funds to cover it." Doc. # 337 at 4:12-13 (quoting email from Reporter to Plaintiff). The first *ex parte* request is titled, "EX PARTE APPLICATION REQUESTING MODIFICATIONS, CORRECTIONS AND CLARIFICATION OF AMBIGUITIES CONTAINED IN ORDER, DOC. #336." Document Number 336, which is the subject of Plaintiff's first *ex parte* request, is the court's order deeming Plaintiff's application to supplement his objection to be the supplement itself, denying any further motion to supplement and taking the matter under submission.

The gist of Plaintiff's concern with regard to his first *ex parte* request is that he feels he was "accused by [Recorder] of having given her a 'bad check' which would be in criminal violation of California Penal Code 476(a) which is a wobbler (felony or misdemeanor)" Doc, # 337 at 17-18 (quoting a letter to Judge Ishii, Docket Number 318). On April 28, 2015, Plaintiff filed a request for continuance of consideration of the February 3 Order so that Plaintiff could file a supplement to his opposition explaining how he was unfairly reprimanded by the Magistrate Judge for filing the above-captioned document. Plaintiff's first attempt to obtain a judicial ruling on his conflict with Recorder was filed on April 7, 2015, and was titled:

> REQUEST for JUDGE ISHII TO OBTAIN PROOF FROM COURT REPORTER GAIL THOMAS THAT PLAINTIFF GAVE THOMAS A "BAD CHECK" FOR COURT TRANSCRIPTS AS STATED BY THOMAS IN HER EMAIL OF 4/07/2015 AND PROVIDE SUCH EVIDENCE TO PLAINTIFF IMMEDIATELY. IF PROOF CANNOT BE PROVIDED, PLAINTIFF REQUESTS THAT THE COURT ACKNOWLEDGE THAT THOMAS HAS MADE AN INTENTIONAL MATERIAL FALSE STATEMENT TO MALIGN PLAINTIFF SO THAT PLAINTIFF MAY ARGUE SUCH IN HIS OBJECTIONS TO MAGISTRATE MCAULIFFE'S F & R (DOC. #300) RECOMMENDING DISMISSAL OF THE COMPLAINT IN PART TO PLAINTIFF'S ALLEGED BAD TREATMENT OF COURT STAFF (WHICH PLAINTIFF HAS NEVER DONE, JUST AS HE HAS NEVER ISSUED A BAD CHECK TO THOMAS). PLAINTIFF REQUESTS THE INFORMATION FROM THE

1
2
3
4

COURT TO ESTABLISH THAT THE E.D. CLERKS AND COURT STAFF ARE PREJUDICED AGAINST PLAINTIFFS INTERESTS TO THE POINT OF FALSELY ACCUSING HIM OF CRIMINAL CONDUCT (VIOLATION OF PENAL CODE 476 (a) WHICH IS A WOBBLER FELONY OR MISDEMEANOR) WHEN THERE WAS NONE, TO TAUNT, PROVOKE AND HUMILIATE PLAINTIFF WITH THE KNOWLEDGE AND/OR DIRECTION, AND/OR RATIFICATION OF JUDGE ISHII AND MAGISTRATE MCAULIFFE.

5   Doc. # 318.  On April 9, 2015, the Magistrate Judge issued an order striking the pleading,

6   admonishing Plaintiff against the use of argument in docket titles and directing Plaintiff to file

7   future requests to the court in proper "motion format."  Doc. # 319.

8        The "modifications, corrections and clarifications" Plaintiff refers to in his *ex* parte request

9   pertain mostly to his desire to obtain a judicial determination and thereby to avoid the prejudice of

10  having been accused of a crime.  Plaintiff quotes the text of Criminal Code 467(a), which means

11  that he is fully aware that the drafting of a check with insufficient funds is a criminal act *only*

12  where the check is uttered "*willfully, with intent to defraud*:" Id. (italics added).  There is

13  absolutely no indication that Recorder alleged or intended to allege that Plaintiff ever issued a

14  check with insufficient funds intentionally or with intent to defraud.  Plaintiff has shown he can

15  read the text of a statute as well as anyone and yet he has done his best to inflate a requirement for

16  a cashier's check into an imagined accusation of criminal conduct.

17       Plaintiff's propensity to impart nefarious purposes into the actions of others with whom

18  Plaintiff disagrees will be discussed *infra*.  For the present it is sufficient to note that the court's

19  stenographic recorders are not court employees but are contractors who are free to set terms of

20  payment as they see fit within the price schedule specified by local rule.   It is common for court

21  reporters to require certified checks for payment for production of transcripts ordered by *pro se*

22  litigants.  Plaintiff has not been accused of wrongdoing nor has he suffered any imaginable harm

23  from Recorder's request for payment by certified check.  He is obliged, when ordering transcripts,

24  to pay the court-determined fee in the manner determined by the recorder who produced the

25  transcripts. The court will not entertain further argument on the matter.

26       The remainder of Plaintiff's first *ex parte* request for modifications, corrections and

27  clarification is mostly argument that the court's exclusion of certain facts or use of certain words

28  or phrases should be changed or edited to avoid making suggestions or leaving inaccurate

1   impressions that Plaintiff imagines a reader unfamiliar with the procedural history of this case

2   would make.  Plaintiff does not allege that *he* is confused as to what the court ordered, only that

3   someone else might get the wrong impression.  The court drafts its orders in consideration of what

4   it determines is relevant.  A party may ask for clarification when confusion actually exists.  The

5   court will not craft its orders according to the stylistic whims of the parties.  Plaintiff's first *ex*

6   *parte* request is denied.

7          Plaintiff's second *ex parte* request, Document Number 338, request clarification on Docket

8   entries numbered 320 and 321.  These two Docket entries do not show up when Plaintiff accesses

9   the Docket Report because they are "court only" entries.  In this case the two entries are copies of

10   emails sent by Plaintiff to Reporter on April 7, 2015, and April 13, 2015, respectively.  Plaintiff is

11   presumed to have these emails since he originated them.  These copies of Plaintiff's emails are not

12   available to other parties so that prejudice to Plaintiff is avoided.  The court considers this

13   explanation adequate to satisfy Plaintiff's second *ex parte* request.

14

15                          **MAGISTRATE JUDGES FEBRUARY 3 ORDER**

16   **I. Motion for Reconsideration of Denial of Leave to Amend or Supplement**

17          Motions to reconsider are committed to the discretion of the trial court.  <u>Rodgers v. Watt</u>,

18   722 F.2d 456, 460 (9th Cir. 1983) (en banc); <u>Combs v. Nick Garin Trucking</u>, 825 F.2d 437, 441

19   (D.C.Cir. 1987).   To succeed, a party must set forth facts or law of a strongly convincing nature to

20   induce the court to reverse its prior decision.  <u>See, e.g.</u>, <u>Kern Tulare Water Dist. v. City of</u>

21   <u>Bakersfield</u>, 634 F.Supp. 656, 665 (E.D.Cal. 1986), aff'd in part and rev'd in part on other

22   grounds, 828 F.2d 514 (9th Cir. 1987).  When filing a motion for reconsideration, Local Rule

23   230(k) requires a party to show the new or different facts or circumstances claimed to exist which

24   did not exist or were not shown upon such prior motion, or what other grounds exist for the

25   motion.  The court reviews a motion to reconsider a Magistrate Judge's ruling under the "clearly

26   erroneous or contrary to law" standard set forth in 28 U.S.C.  636(b)(1)(A); Fed. R. Civ. P. 72(a).

27   As such, the court may only set aside those portions of the Magistrate Judge's order that are either

28   clearly erroneous or contrary to law.  Fed.R.Civ.P. 72(a); <u>see also</u> <u>Grimes v. City and County of</u>

1  San Francisco, 951 F.2d 236, 240 (9th Cir.1991) (discovery sanctions are non-dispositive pretrial

2  matters that are reviewed for clear error under Rule 72(a)).

3      As the Magistrate Judge's Order of February 3 notes, Plaintiff's proposed

4  "supplementation" of the FAC seeks substantially to re-allege claims pertaining to the institution

5  and prosecution of criminal charges against Plaintiff in the Superior Court of Merced County.  The

6  February 3 Order provides a comprehensive review of the instances in which either this court or

7  the Magistrate Judge has informed Plaintiff, through orders or otherwise, that any claims

8  pertaining to the Superior Court's conduct in "misusing psychology" or any irregularities

9  pertaining to the performance of his defense attorney are not cognizable in this court because there

10  was no trial and no conviction of criminal charges.  As this court has repeatedly stated, the Fourth

11  Amendment claims for violation of his rights against arrest without probable cause and against the

12  application of excessive force mark the outer boundary of what is cognizable in this court.  This

13  court has also informed Plaintiff on any number of occasions that expansion of his current claims

14  against the arresting officers to district attorneys, opposing attorneys, judges or anyone other than

15  the arresting officers on a theory of conspiracy will not be permitted.

16      As Plaintiff has recognized, this court's Order of January 11, 2012, granting in part and

17  dismissing in part Defendant's motion to dismiss, Docket Number 96, is the primary document

18  delineating the claims and parties remaining in this action.  Notwithstanding the court's dismissal

19  with prejudice of all of the originally named Defendants who are not the arresting officers in that

20  January 11 Order, Plaintiff has formally moved twice to reassert claims against the dismissed

21  parties and others.  The first motion to "amend" was initiated, so far as the court can tell, in a

22  scheduling report filed by Plaintiff on October 28, 2013. Doc. # 181.  The Magistrate Judge

23  recognized the motion to amend and set a schedule requiring a filing of the proposed amendments

24  by January 31, 2014.  Doc. # 189.  Plaintiff's motion to amend was denied on April 30, 2014, by

25  Docket Number 223 because Plaintiff failed to file a proposed amended pleading by the time

26  ordered.  It is noteworthy that the Magistrate Judge's order denying leave to amend specifically

27  notes that the proposed amended complaint "seeks to add a grand conspiracy theory, possibly

28  involving the entirety of Merced County officials, former counsel, defense counsel and many

1    others, none of which is at issue in this case." Doc. # 223 at 4:4-8.

2          Plaintiff's second formal attempt to amend or supplement his pleadings was filed on

3    January 5, 2015, in his Motion to Supplement, Doc. # 282.  Plaintiff's "supplemented" complaint

4    omits the private party Defendants (newspaper and private party Defendants connected to Our

5    Lady of Fatima School) that were dismissed by Document Number 96, but adds back all the

6    Merced County officials that were originally dismissed plus a number of other proposed

7    defendants that were connected with the proceedings in the criminal cases in the Superior Court.

8    The proposed supplemented complaint attempts to resurrect, among other things, Plaintiff's claims

9    of grand jury tampering and a wide ranging conspiracy to silence Plaintiff involving mainly his

10   defense attorneys, the Superior Court and the District Attorney's office.  The proposed

11   "supplemented complaint" added a good deal of allegations regarding the conduct of his then-

12   appointed attorney Eric Dumars, and specifies Dumars' role in having Plaintiff "labeled and

13   scathed" in the Superior Court proceeding that found Plaintiff incompetent to stand trial in the

14   criminal proceedings against him.  The motion to supplement set forth at Doc. # 282 is the subject

15   of the Magistrate Judge's February 3 Order.

16         The court has reviewed Plaintiff's arguments for leave to supplement and against the

17   Magistrate Judge's denial of leave to supplement.  Putting aside the invective and impertinent

18   language, Plaintiff appears to allege three circumstances justifying his motion to supplement the

19   complaint.  First, Plaintiff points out that his criminal cases were terminated short of trial when he

20   was found incompetent to stand trial in his criminal *after* the FAC was filed in this case.  While it

21   is true that the dismissal of Plaintiff's criminal cases in the Superior Court did not occur until after

22   this case was filed, the court has addressed Plaintiff's claims concerning the dismissal of his

23   criminal cases in Superior Court any number of times, informing Plaintiff each time that the

24   dismissal of those cases on the ground of Plaintiff's alleged mental incompetence does not give

25   rise to a federal claim for relief.  No amount of factual embellishment makes a difference; there is

26   no federal claim for dismissing a criminal prosecution for any reason whatsoever.  Stated another

27   way, there is no such thing as a claim for misuse of psychology when the endpoint of the alleged

28   misuse is dismissal of criminal charges.  See Doc. # 202 at 4:13-6:8 (explaining the court's

6

1    position on this issue).

2            Plaintiff's second apparent ground for supplementation consists of additional evidence that

3    his assigned attorney for the criminal cases, Dumars, was found to have problems with alcohol

4    and/or drug abuse, and had other mental/emotional problems.  Again, no federal claim arises from

5    this fact because Plaintiff did not suffer a criminal conviction.  By definition, there can be no

6    claim of ineffective assistance of counsel if Plaintiff's attorney was able to achieve the non-

7    prosecution of the charges against him. As the court has frequently stated, the fact that Plaintiff

8    wanted to go to trial and was denied the opportunity to do so does not give rise to a claim for relief

9    under the Constitution or under federal law.  To the extent Plaintiff's proposed "supplement" to

10   his complaint may have intended to suggest that Dumars' alleged problems with drugs, alcohol or

11   his forced resignation are evidence of his participation in a "conspiracy," the court finds the

12   suggestion unpersuasive.

13           Third, Plaintiff alleged that the criminal prosecution against him in the Superior Court was

14   carried out despite an alleged "conflict of interest" that existed between Plaintiff and the District

15   Attorney of Merced County who had been sued by Plaintiff in a counter-claim in a Superior Court

16   case titled "Tetra Tech, Inc. v. Marion Santos."  This allegation is not new.  It was reviewed at

17   some length in Doc. # 96.  See Doc. # 96 at 16:13 – 17:28.  The court's conclusion then, as now, is

18   that irrespective of any conflict that may exist between a district attorney and an individual as a

19   result of a civil claim against the district attorney, a district attorney is entitled to absolute

20   immunity with respect to the decision whether to prosecute an alleged crime.  Imbler v. Pachtman,

21   404 U.S. 429, 427 (1976).  In any event, the record of communication that Plaintiff presents

22   between himself and the District Attorney, Larry Morse, indicates that Morse was diligent in

23   examining the issue and received an opinion from the state indicating that it was permissible to

24   proceed with the criminal prosecutions.  The court continues to be of the opinion that no federal

25   claim is available against Morse in his role as district attorney for his decision to prosecute or

26   discontinue the prosecution of Plaintiff.  If Plaintiff disagrees, the proper course is appeal, not the

27   continuing submission of pleadings and arguments to the contrary.  The court also restates its

28   earlier opinion that the absolute protection of a district attorney to civil suit under Imbler extends

1  to claims of violation of First Amendment rights because the prosecutions are retaliatory.  See

2  Doc. # 96 at 17:15-28.

3      There is also the suggestion in Plaintiff's proposed supplemented complaint that Morse

4  and Fincher are liable for violation of Plaintiff's Fourth Amendment rights because they somehow

5  were involved in or directed the *arrest* of Plaintiff without probable cause on February 24, 2009.

6  To the extent this allegation is new, the court agrees that it is not a "supplement" to any existing

7  claim.  Even if Plaintiff's FAC could be *amended*, the addition of a claim against Morse and/or

8  Fincher for somehow *causing* Plaintiff's arrest on February 24 would fail because the claim is

9  nothing more than speculation fueled primarily by Plaintiff's belief in a grand conspiracy against

10 him.

11     The Magistrate Judge's February 3 Order correctly sets forth facts and law pertaining to

12 Plaintiff's efforts to "supplement" the FAC.  The February 3 Order correctly notes that the

13 proposed supplementation is another attempt to add persons and entities long dismissed based on

14 claims likewise dismissed or previously held to be non-viable.  As such, the motion was not a

15 proper supplementation of the complaint at all, but was instead an out-of-time attempt to

16 substantially amend the complaint.  The court has reviewed the law and facts as set forth by the

17 February 3 Order and has reviewed all of Plaintiff's filings that set forth arguments for further

18 amendment or supplementation of the complaint.  The court finds that Plaintiff has failed to show

19 that the Magistrate Judge's order denying leave to further amend or supplement was in any way

20 erroneous or contrary law.  Plaintiff's motion for reconsideration of the portion of the February 3

21 Order denying leave to amend or supplement will therefore be denied.

22

23 **II.  Recommendation for Application of Terminating Sanctions**

24     *A.  Court's Observations*

25     The Magistrate Judge's February 3 Order also made the recommendation that the court

26 grant Defendant's motion for terminating sanctions, Document Number 279.  The February 3

27 Order accurately stated the sources of the court's authority to impose sanctions, including

28 terminating sanctions, and the legal standards for the application of those sanctions.  See Doc. #

300 at 12:24-15:22.  The court incorporates the standards set forth in the February 3 Order by reference.

At the outset, the court feels compelled to make an observation that prefaces its ultimate finding with regard to Defendants' motion for sanctions: Plaintiff, insofar as his dealings with this court are concerned, has conducted himself in a manner that leaves the court no option but to conclude that he suffers from compelling misplaced ideation that prevents his further proceedings in this action.  Up to this point in the proceedings, the court has done its best to keep any comments to this aspect of Plaintiff's conduct to a minimum and has tried to minimize the significance of Plaintiff's belief in a vast conspiracy against him so that the claims the court considers viable can go forward.  Now, however, the court can no longer overlook Plaintiff's claims of conspiracy because the court has taken a central position in Plaintiff's mind in those claims.  A few passages from "Plaintiff's Objections to [the Magistrate Judge's] Findings and Recommendations Recommending Dismissal for Bad Faith Conduct" (hereinafter "Plaintiff's Opposition") will suffice to illustrate the point.

> The purported "**Factual Background**" [in Doc. # 96] is overtly false and a lie by omission in that the "**case in superior court in which Plaintiff was a cross-defendant**" was in fact the case of *Tetra Tech, Inc. vs. Marion Santos*, wherein [P]laintiff was a cross defendant **and a cross complainant against Merced County District Attorney Larry Morse, Merced County District Attorneys' Office that had been ongoing since 5/13/08**.  [¶]  The importance of such crucial fact being omitted cannot be overstated as being the key component in advancing the conspiratorial plot to obstruct justice and perpetuate a "fraud upon the court" with the defense counsels.  [¶]  [This] "FIRST BIG LIE" permitted Judge Ishii after rambling inaccurate pontifications based upon additional omissions of true facts substituted with manufactured false facts engineered by Judge Ishii throughout the 45 page ORDER to falsely assert that Defendants DA Morse and ADA Alan Turner (and thereby their civil co-conspirators) were entitled to absolute immunity, and deny [P]laintiff not even one opportunity to amend his FAC.

Doc. 322 at 6:3-17 (footnote omitted).

> Therefore, [P]laintiff can only argue against the F&R (Doc.300) by showing that Judge Ishii and Magistrate McAuliffe have been involved in a conspiracy to obstruct justice with the [D]efendants counsels, Roger Matzkind, James Fincher, James Weakley, Brande Gustafson, Rayma Church and Ryan Libke against [P]laintiff since their "FIRST BIG LIE" by omission in the MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [Doc. # 96], filed 01/11/12 to prejudicially dismiss Merced County Larry Morse.

1  Doc. # 322 at 15:2-9.

2          [Reviewing orders and opinions from cases numbered 11cv0718, 13cv1980,
3   N.D. Case 11cv2568 – CW, 15cv0147, this case and the underlying criminal cases,
   State of California v. Eugene Forte, CRL001412 & CRL003409] was not an easy
4   task, but it resulted in over 800 pages of evidence that irrefutably proves that Judge
   Ishii and Magistrate McAuliffe with tacit consent have engaged in a conspiracy to
5   obstruct justice in order to violate [P]laintiff's constitutional rights within this
   subject case (at minimum).   [¶] It started with their first ORDER (Doc. # 96 [. . .]),
6   up to and including [Doc. # 300].  Judge Ishii and Magistrate McAuliffe's
   despicable conduct spilled over into *Forte v. Jones*, 1:11-00781, and, with the gang
7   mentality of judicial rapists, have been adopted by Judge Lawrence O'Neil and
   Magistrate Sandra Snyder in the case of *Forte v. Schwartz*, 1:13-001980 LJO-SMS.

8  Doc. # 322 at 16:3-10 (footnotes and references omitted)

9          Plaintiff submits that if it weren't so heinous of an affront to the integrity of
   the judiciary, it would be laughable to think that Judge Ishii, the ring master of the
10   conspiracy, is now in the position to pass on the veracity of the compilation of lies
   by his co-conspirator Magistrate McAuliffe that accuses [P]laintiff of bad conduct
11   for putting on the record their crimes in this case.

12  Doc. # 322 at17:6-10.

13          Magistrate McAuliffe's Order Doc. 263 was a 21-page (30 pages when footnotes
   were expanded) overt piece of nonsensical trash revealing gross prejudicial
14   statements by her, prompting [Plaintiff] to go to her co-conspirator Judge Ishii
   requesting review (Doc. # 264) [. . . .]  Plaintiff, after receiving a nonsensical
15   response (Doc. 271) that only a co-conspirator like Judge Ishii could give who is
   adept at omitting facts and contorting what was asked to be done, [Plaintiff] then
16   filed REPORTING FRAUD UPON THE U.S. EASTERN DISTRICT COURT TO
   PRESIDING JUDGE MORRISON ENGLAND, JR.  (Doc. #273).  Judge
17   Morrison's email response was almost more nonsensical than Judge Ishii (Doc.
   283-3).

18  Doc. # 322 at 19:25-20:10.

19
20          The list of governmental co-conspirator and private actors in the conspiracy to
   conceal the obstruction of justice by Judge Ishii in this case is extensive and

21          overwhelming.  They include the Fresno Office of the FBI, United States
   Attorney Benjamin Wagner, Governor Jerry Brown, past attorney general Bill
22   Lockyer, Justice Conrad Rushing of the [California] Sixth Appellate Court, Justice
   Stephan Kane of the [California] Fifth Appellate Court, California Attorney
23   General Kamala Harris, the majority of the Merced Superior Court Bench, Judge
   James Cadle, the Merced County Board of Supervisors, Congressman Dennis
24   Cardoza, E.D Court Presiding Judge Morison England, E.D. Eastern District Judge
   Lawrence O'Neill, Magistrate Sandra Snyder (Doc. 191) and McClatchy
25   Newspapers to name only a few.

26  Doc. # 322 at 35:22-36:5.

27  And finally:

28          Plaintiff submits in his opinion based upon the record that Judge Ishii and

1    Magistrate McAuliffe for their despicable conduct should be publicly stripped of
     their robes so that they can never again bring such disrepute to the integrity of the
2    judiciary or respectable jurists that abide by the CODE OF CONDUCT FOR
     UNITED STATES JUDGES.
3    [¶ . . .¶]
     There is absolutely no reason in [P]laintiff's opinion based on the evidence as to
4    why [P]laintiff should pay undeserved respect to Judge Ishii and Magistrate
     McAuliffe that have urinated over the rule of law and the American Justice system.
5    [¶] When their acts are publicly exposed, they will have single-handedly destroyed
     the integrity of the Eastern District Federal Court.

6    Doc. # 322 at 37:11-15, 21-26.

7         When the court considers the foregoing quoted segments of Plaintiff's Opposition, several

8    conclusions immediately suggest themselves.  First, Plaintiff's addition of the Judges and

9    personnel of this court to his list of co-conspirators bent on silencing Plaintiff is consistent with a

10   longstanding pattern beginning in Monterey County and continuing to the present of labeling

11   everyone who has dealt Plaintiff a setback in his effort to expose judicial mendacity as a

12   "conspirator," member of a "cabal," "dupe," "judicial lackey" or the like.  Similarly, Plaintiff's

13   penchant for applying pejorative labels to facts or persons with whom he disagrees is nothing new.

14   Finally, Plaintiff's practice of justifying invective, name-calling and pejorative labeling as being

15   nothing short of incontrovertible truth and therefore beyond criticism is well within his past

16   practice.  Plaintiff has been admonished any number of times to cease the use of language that is

17   harassing, irrelevant and disrespectful.  His "final warning" was issued on September 23, 2014, by

18   the Magistrate Judge denying without prejudice Defendants' motion for terminating sanctions.

19   Doc. # 263.  The Magistrate Judge's September 23 Order contains an extensive review of

20   Plaintiff's past conduct, see Doc. # 263 at 3:15-5:8, and provides both law and facts to support the

21   expressed conclusion that Plaintiff's conduct evinces bad faith.  Id. at 13:13-18:16.

22        From the foregoing, the court must conclude that Plaintiff is clearly incapable of

23   modifying his behavior to any significant extent.  A court gives orders and issues admonishments

24   in the expectation that any litigant who has been directed to "clean up his language – or else"

25   would be able to do so; particularly when the admonishments have been given as frequently and as

26   clearly as is the case here.  Given that Plaintiff has been unable to comply is strong evidence that

27   he simply lacks the ability to apply the sort of restraints on irrelevant and abusive comments that

28   any party to any proceeding should be able to expect.

A more generalized way of reaching the same conclusion is to observe that a substantial part of Plaintiff's effort in seeking to expand the scope of this action has been to seek redress for the proceeding in Superior Court that found him incompetent to stand trial in a criminal matter. Plaintiff has objected strenuously to the opinion of Dr. Blak, who opined during the competency hearing in Superior Court that Plaintiff suffers from a "delusional disorder" involving delusions with both persecutory and grandiose aspects.  See Doc. # 121-2 at 53:9-54:16.  If it were Plaintiff's goal to discredit Dr. Blak's opinion, then he would have assiduously avoided conduct that is consistent with Dr. Blak's opinion.

The court also concludes that Plaintiff is unable to understand the rational inconsistency of seeking to go forward in this action – with or without the expansion of claims that have been previously dismissed – while at the same time accusing the court of conspiracy against him. Plaintiff has alleged this court, its judges and court staff, are part of the conspiracy whose existence Plaintiff is struggling to expose.  No litigant capable of rational reflection would purposefully seek to attack or discredit the forum in which he or she is required to try their claims. Courts in general are aware of the reasons and purposes behind their orders.  And this court in particular has set forth its reasons and purposes in the various orders filed in this case.  When a court is accused by a litigant of having motives and purposes that are contrary to those the court expresses, a court cannot reasonably be expected to give credence to the litigant's viewpoint in that regard.  This court can only conclude that whatever benefit Plaintiff feels he could gain by seeing this action through to completion by following the court's orders has been overwhelmed by Plaintiff's belief that the court is an adversary to be attacked.

Finally, and perhaps most disturbing, the court notes that Plaintiff's writings, including his Opposition to the February 3 Order, continue to be laced with references to the sorts of vindictive and frankly sadistic fantasies he envisions will be visited upon those who have aggrieved him once justice is finally done.[1]  Phrases such as "nailing [a miscreant's] tongue to the floor" or having an adversary "hauled away in handcuffs" evince a badly distorted notion of the purposes of civil law.

---

[1]   See, e.g., Dr. Blak's observation of similar behavior at Doc. # 121-2 at 55:5-18;  Doc. # 322 at 37:11-14 (public de-robing of Judges McAuliffe and Ishii; Doc. # 263 at 4 n.4 (compiling abusive remarks made by Plaintiff and directed at the court and others).

1    The most recent example of Plaintiff's extraordinarily vindictive ideation is found in his filing in

2    *this* case of an objection to the Magistrate Judge's denial of Plaintiff's motion in <u>Forte v. Jones</u>,

3    11cv0718 that seeks court-imposed criminal and civil penalties against Jones and his attorney for

4    allegedly false statements made during a hearing in that case. <u>See</u> Doc. # 341 ("Notice of Intent to

5    File Opposition to [Magistrate Judge's] Order on Plaintiff's Request for Order to Show Cause"

6    with Opposition and other documents attached). Plaintiff, having apparently gotten an answer to a

7    question during a judgment debtor's examination in <u>Forte v. Jones</u> that he believes was untruthful

8    now seeks the court to impose criminal sanctions against defendant Jones and his attorney even

9    though the answers that Plaintiff feels were untruthful were tangential to the issue of the

10    defendant's source of funds to pay the judgment against him. By filing such motions and using

11    such extraordinarily punitive language, Plaintiff has created a powerful impression that he is a

12    litigant in search of vengeance, not mere compensation for the wrongs done to him. Plaintiff's

13    inability to curb his evidently vindictively motivated filings and language is a particularly strong

14    motivation for the court to terminate this action to prevent further misuse of the proceedings to

15    harass and vex the Defendants.

16        ***B. Plaintiff's Contentions***

17           ***1. <u>Defendant Morse was Wrongfully Dismissed</u>***

18        Plaintiff's first contention is that he was justified in attempting to expand the scope of this

19    action against Morse because the court had wrongfully dismissed Morse based on what he alleges

20    are the wrongful or erroneous or conspiratorial efforts of the court to obfuscate or lie by omission.

21    Plaintiff contends that in doing so, the court joined the conspiracy to cover up Morse's improper

22    prosecution of Plaintiff in retaliation against Plaintiff for having sued Morse over the <u>Tetra Tech</u>

23    case. Basically, Plaintiff contends he adequately alleged a claim against Morse when he alleged

24    that Morse had Plaintiff arrested on February 24, 2009, in retaliation for exercise by Plaintiff of

25    his First Amendment rights. In addition to the reasons expressed above on this subject, Plaintiff's

26    Opposition fails on this point because Plaintiff's own pleadings show that probable cause existed

27    for his arrest on February 24, 2009. This point has not been litigated up to this point because of

28    what the court considers an oversight on the part of the Defense; but it is obvious from Plaintiff's

own alleged facts that he stated his intent to perform an unlawful assault on Judge *pro tem* Padron. In short, Plaintiff stood in front of law enforcement officers and stated his purpose to place Padron under "citizen's arrest" for "impersonating a judicial officer." Plaintiff had absolutely no right to perform such an arrest and, as a consequence, any attempt by Plaintiff to restrict Padron would have been an attempted assault. At the time, Plaintiff appeared to be going through a "citizen's arrest phase" and did not understand the legal risks of performing such an act where no crime had been committed. Even in the very unlikely event that Morse was aware that Plaintiff was sitting in front of Padron's chambers waiting to perform an unlawful seizure, it would not have mattered since Plaintiff provided the cause for his own arrest.

### 2. *Dismissal of Corey Pride and McClatchy Newspapers*

A second, although rather minor contention Plaintiff asserts in his opposition is the contention that the court wrongfully dismissed Corey Pride, McClatchy Newspapers and possibly others who Plaintiff alleges were a part of "public officials of Los Banos spearheaded by African-American mayor Jones and Pride to falsely associate [P]laintiff with racially motivated attacks on Jones to portray [P]laintiff in a bad light and have citizens disassociate themselves from [Plaintiff]." Doc. # 322 at 33:2-4. Plaintiff had alleged unlawful retaliation for exercise of his First Amendment rights in the original FAC. As Plaintiff points out, the court dismissed Pride and others with the observation that the allegation that Pride or McClatchy Newspapers had published unfavorable coverage of Plaintiff's activities as part of a governmentally-directed conspiracy to silence Plaintiff was "improbable." As the court understands Plaintiff's argument, he contends he is justified in seeking to expand the current complaint to include Pride and others because his allegations of their conspiratorial conduct against Plaintiff were vindicated in by the verdict in Forte v. Jones, 11cv0718, wherein Plaintiff was awarded punitive and actual damages.

The court finds this argument without merit. Although Pride did testify at the trial in Forte v. Jones, and did state that he "hated" Plaintiff; the issue tried to the jury was whether the defendant in that case, Jones, purposefully shut off a microphone into which Plaintiff was speaking during a comment period at a public meeting. The jury so found, and also awarded punitive damages for reasons that were not disclosed in the verdict. What was not at issue in that

1  trial or contemplated by the jury in reaching a verdict was anything to do with Pride, McClatchy

2  Newspapers or any of the former or proposed new Defendants.  Plaintiff's interpretation of the

3  outcome of <u>Forte v. Jones</u> as being a vindication of issues not tried by the jury is a product of his

4  own imagination and is not supported by the actual outcome of the case.

5           *3. __Permission to Expand Litigation Not Suggested by Magistrate Judge__*

6        In reviewing Plaintiff's various arguments in opposition to the recommendation to apply

7  terminating sanctions, the court has been able to identify only one that relies on anything other

8  than Plaintiff's insistence that the conspiratorial actions he projects on others justify his efforts to

9  expand the scope of this action.  In is *ex parte* "Application for Leave to File a Supplement to File

10  Objections" to the Magistrate Judge's February 3 Order, Doc. # 327, Plaintiff argues for the first

11  and only time that he was given to understand that whether he could expand the litigation "was

12  still an open question."  Doc. # 327 at 3:3.  Plaintiff's argument that he was informed the

13  possibility continues to exist that he could expand this action to include theories of conspiracy and

14  all the potential Defendants involved therein is based on the following excerpt from the Magistrate

15  Judge's order of September 23 2014, granting Defendant's motion to compel and denying

16  Defendant's motion for sanctions without prejudice:

17
18      Forte also argues he will be amending his complaint to place those theories [of
     wide-spread conspiracy] and individuals at issue.  *Whether* Forte is later permitted
     to expand this litigation beyond its current scope does not inform the inquiry into
19  whether Forte's disclosures Comply with Rule 26 as the claims and issues in this
     case are currently set.

20  Doc. # 263 at 10:25-112 (italics added).  Plaintiff contends the Magistrate Judge's use of the word

21  "whether" is tantamount to permission to seek expansion of the scope of his complaint.  Plaintiff's

22  request for extension of time to supplement his objections accuses the court of conduct akin to

23  "playing tricks and traps upon Plaintiff" by luring him into moving to supplement his complaint

24  by dropping a hint that the issue of asserting claims against Morse and the other proposed

25  additional defendants was an "open question" and then accusing him of bad faith conduct when

26  the motion to supplement was made.  In reaching his tortured interpretation of the Magistrate

27  Judge's order, Plaintiff apparently ignored the sentence that followed the two quoted above which

28  stated, "The claims before this Court do not hinge on whether there is a conspiracy against Forte,

1  and the court will not indulge Forte's improper efforts to expand the scope of this litigation." Doc.

2  # 263 at 11: 2-4.

3       Whether Plaintiff felt genuinely justified in seeking to expand the scope of litigation in this

4  action because of the Magistrate Judge's statement or whether that statement was just a convenient

5  post-hoc rationale for the attempt does not matter.  Taken in context, the notion that the quoted

6  passage from the Magistrate Judge's order grants permission to do what both that order and

7  numerous orders from this court forbid is clearly irrational.  Plaintiff saw what he wanted to see in

8  the Magistrate Judge's order, not what was actually there.  His interpretation that he had been

9  granted leave to seek further expansion of both the claims and the parties in this action was

10  patently unreasonable.

11                               **CONCLSUION AND ORDER**

12       The one constant theme in this action has been that Plaintiff imagines he has suffered

13  grievous harm when he was arrested and subsequently prosecuted for attempting to arrest a pro-

14  tem judge and then had the prosecution dismissed because the parties to the criminal actions

15  agreed that Plaintiff was not competent to stand trial under California statute.  The impression the

16  court has gathered from Plaintiff's conduct and his pleadings is that the claims for relief the court

17  did *not* dismiss in Document Number 96 are of rather lesser importance to Plaintiff than the

18  opportunity to vindicate his theory that he is a victim of a 15-year long conspiracy to thwart his

19  efforts to expose corruption in government and in the judiciary.  It is apparent to this court that

20  Plaintiff will not settle for anything less than the opportunity to present to a jury his claims of

21  conspiracy against nearly everyone who Plaintiff believes has tried to subject him to retaliation by

22  means of "fraud on the court."  It is also evident to the court that, given the chance, Plaintiff will

23  continue to express his claims of persecution and his desire for revenge and will continue to seek

24  to vindicate his claims against all who he imagines have wronged him.

25       Given the apparent importance Plaintiff has placed on proceeding on issues this court has

26  clearly stated cannot be raised, and given the extent to which Plaintiff will go to abuse, accuse,

27  harass and badger the court, its personnel and the dismissed parties in his effort to try to expand

28  the scope of the complaint, the court has no confidence that Plaintiff will be able to conduct

1   himself in accordance with the rules of conduct imposed by the court and by the Federal Rules of

2   Civil Procedure in the future.  Throughout these proceedings, Plaintiff has consistently cast

3   himself as a victim, and has consistently cast anyone who opposes him, including the Defendants,

4   the prospective Defendants, the Defendants' attorneys and the court, as being his abusers.  The

5   result is, as the Magistrate Judge observed in the order of September 23, 2014, is a long and

6   consistent history in this action of conduct that demonstrates bad faith.  As the Magistrate Judge

7   pointed out, the standard for the assessment of "bad faith" is objective, not subjective.  See Doc. #

8   300 at 13:18-21 (citing G.C. & K.B. Investments v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003).

9   Thus, the "bad faith" the court finds in not a reflection on Plaintiff's sincerity, it is an assessment

10  of the practical effects of his conduct.

11          The Magistrate Judge's Order of September 23, 2014, noted that the legal authority to

12  impose terminating sanctions is found in many sources including Rules 11(b) and 41(b), Local

13  Rule 110, and under the inherent powers of the court.  Doc. # 263 at 14:24-25.  As noted above,

14  the Magistrate Judge's Findings and Recommendations in the February 3 Order found that the

15  application of terminating sanctions is appropriate in this case under any and each of the sources

16  of authority listed.  This court concurs and incorporates the Magistrate Judge's finding here by

17  reference.  The court notes that terminating sanctions are warranted by the facts of this case under

18  Rule 41(b) of the Federal Rules of Civil Procedure for Plaintiff's consistent failure to obey an

19  order of the court.

20          Finally, the court wishes to emphasize that its conclusion that Plaintiff's consistently

21  abusive conduct derives from compelling misplaced ideation is a conclusion that is derived in

22  reference to this case and the other actions Plaintiff has filed in this court and is limited very

23  specifically to explain Plaintiff's conduct in this court.  The court is convinced that Plaintiff is

24  absolutely sincere in his beliefs and that he does not intend to deceive or mislead.  The conclusion

25  that Plaintiff's actions are driven by misplaced ideation is strictly a product of the court's

26  knowledge of its own reasons and purposes, and Plaintiff's consistently voiced belief that those

27  reasons and purposes are other than what the court knows them to be.  The court makes no

28  conclusions regarding Plaintiff's ability to function in other areas of activity.

1

2        THEREFORE, in consideration of the foregoing, it is hereby ORDERED that Defendants'

3    motion for terminating sanctions, Doc. # 279, is hereby GRANTED.  This action is hereby

4    DISMISSED WITH PREJUDICE as to all claims and all Defendants.  Any other pending motions

5    are hereby DENIED as MOOT.  The Clerk of the Court shall ENTER JUDGMENT in favor of

6    Defendants and against Plaintiff.

7        Plaintiff is hereby informed that in order to proceed to the appeal of this order, he must

8    timely file a Notice of Appeal pursuant to Rule 4 of the Federal Rules of Appellate Procedure.

9

10   IT IS SO ORDERED.

11   Dated:   June 5, 2015        _____

12                                 SENIOR  DISTRICT  JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28